1    Stephen M. Garcia, State Bar No. 123338
     sgarcia@lawgarcia.com
2    David M. Medby, State Bar No. 227401
     dmedby@lawgarcia.com
3    THE GARCIA LAW FIRM
     One World Trade Center, Suite 1950
4    Long Beach, California 90831
     Telephone: (562) 216-5270
5    Facsimile: (562) 216-5271

6    Bruce L. Simon, State Bar No. 96241
     bsimon@psswplaw.com
7    Esther L. Klisura, State Bar No. 221171
     eklisura@psswplaw.com
8    PEARSON, SIMON, SOTER, WARSHAW & PENNY LLP
     44 Montgomery Street, Suite 1200.
9    San Francisco, California  94104
     Telephone: (415) 433-9000
10   Facsimile: (415) 433-9008

11   *Co-Lead Counsel for Plaintiffs and the Putative Class*
     *[Other Counsel for Plaintiffs listed on signature page]*
12

13                 **UNITED STATES DISTRICT COURT**

14                 **CENTRAL DISTRICT OF CALIFORNIA**

15                        **(WESTERN DIVISION)**

16

17   In re:                              )  CASE NO. 07-ML-01822 DSF
                                         )  MDL No. 1822
18   Bluetooth Headset Products Liability )
     Litigation                          )  **CONSOLIDATED CLASS**
19                                        )  **ACTION COMPLAINT**
                                         )
20                                        )  **DEMAND FOR JURY TRIAL**
                                         )
21                                        )
                                         )
22                                        )
                                         )
23                                        )
                                         )
24   _____ )
25
26
27
28

                                    1

1    Plaintiffs, Michael Jones, Amy Karle, Aleksandra Spevacek, Betty Dumas,

2    Betsee Finlee, and Lori Raines, ("Plaintiffs"), on their own behalf and as

3    representatives of a putative class of similarly situated parties, complain and allege on

4    information and belief as follows:

5                                    **INTRODUCTION**

6        1.    This action arises from the marketing, manufacture, and distribution of

7    devices commonly known as "Bluetooth headsets" (hereinafter referred to as

8    "Bluetooth Headsets" or the "Headsets"), which permit the use of a mobile phone

9    without the necessity of holding the phone next to the face and without the necessity

10   of wires connecting the phone to the Headset.

11       2.    Bluetooth technology is a short-range wireless radio technology that

12   allows electronic devices to connect to another. The term "Bluetooth" refers to a

13   standardized wireless specification that was established in September 1998 by a trade

14   association and has since been adopted by many electronics manufacturers in

15   different industries. The first Bluetooth enabled mobile phone hit the market in

16   2000. By 2001, each of the Defendants had Bluetooth enabled products on the

17   market. Since then, use of Bluetooth Headsets has become increasingly popular

18   among consumers because of the ease of use and convenience associated with the

19   technology. Over 100 million Bluetooth Headsets have been sold since they first hit

20   the market.

21       3.    Each Headset is sold with affirmative representations that it may be used

22   for extensive periods of time, however the product is sold without any warning as to

23   its propensity to cause noise induced hearing loss, a condition that has no cure or

24   treatment and which may result from normal use of the Headsets over time.

25       4.    These Headsets produce sounds exceeding the identified danger zone of

26   85 decibels, with sound often peaking in excess of 100 decibels. Exposure to sounds

27   emitted from the Headsets at these decibel levels, may cause serious and permanent

28   hearing loss over an extended period as herein below alleged. Thus, by design, the

Consolidated Class Action Complaint
M \Bluetooth In Re (06-063)\Pleadings\Complaint Consolidated doc

1   Defendants have put consumers at risk of suffering serious hearing loss when the

2   Headsets are put to their normal and intended use.

3        5.    Millions of consumers have had their hearing put at risk by the

4   Defendants' Headsets.  Consumers have detrimentally relied upon the uniform

5   affirmative misrepresentations, omissions, and concealments made by Defendants

6   regarding the permissible use of their products. Consumers have further relied upon

7   the Defendants' skill and judgment to furnish suitable goods, which would not cause

8   harm to the consumer, and to warn the consumer of any information known by

9   Defendants, or which should reasonably have been known by Defendants, relating to

10  the safe operation of their products.

## JURISDICTION AND VENUE

     6.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)
This is a putative class action involving more than 100 class members, at least one
member of the putative class is a citizen of a state different from one defendant, and
the aggregate amount in controversy exceeds $5 million, exclusive of interest and
costs.

     7.    Each defendant has conducted business in this District and is subject to
personal jurisdiction.  Accordingly, venue in this District is proper under 28 U.S.C. §
1391.

## PARTIES

### A.    Plaintiffs

     8.    Plaintiff Lori Raines is a resident of the County of Los Angeles,
California who purchased a Bluetooth headset from Defendant Plantronics during the
relevant time period.  Plaintiff Raines brings this action on behalf of putative Sub-
Class A, defined below.

3

9. Plaintiff Betsee Finlee is a resident of Los Angeles County, California who purchased a Jabra-brand Bluetooth headset during the relevant time period. Plaintiff Finlee brings this action on behalf of putative Sub-Class B, defined below.

10. Plaintiff Michael Jones is a resident of Los Angeles County, California who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Jones brings this action on behalf of putative Sub-Class C, defined below.

11. Plaintiff Amy Karle is a resident of Los Angeles County, California who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Karle brings this action on behalf of putative Sub-Class C, defined below.

12. Plaintiff Evan Nass is a resident of Cook County, Illinois who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Nass brings this action on behalf of putative Sub-Class D, defined below.

13. Plaintiff Aleksandra Spevacek is a resident of Cook County, Illinois who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Spevacek brings this action on behalf of putative Sub-Class D, defined below.

14. Plaintiff Betty Dumas is a resident of the Eastern District of Texas who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Dumas brings this action on behalf of putative Sub-Class D, defined below.

15. Plaintiff Kimberly Ryan is a resident of Grant County, Kentucky who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Ryan brings this action on behalf of putative Sub-Class D, defined below.

**B.    Defendants**

16. Defendant Plantronics, Inc. is a Delaware Corporation with its principal

4

place of business in California. Plantronics, Inc. maintains its corporate headquarters and principal executive offices in Santa Cruz, California. Plantronics employs engineering, marketing, information technology, finance, operations, quality assistance, and technical assistance personnel in its Santa Cruz headquarters. Plantronics is authorized to do business in California, has sufficient minimum contacts with California, and intentionally avails itself of the markets in California through the promotion, marketing and sale of its products in California, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17.    Defendant GN Netcom, Inc. manufacturers, distributes, and markets Bluetooth Headsets sold under the "Jabra" brand. GN Netcom, Inc. is the successor in interest to Jabra Corporation, a San Diego, California based company that was purchased by GN Netcom's foreign parent company in 2000. GN Netcom, Inc. maintained its corporate headquarters and operations in San Diego, including engineering and marketing functions, up until at least May, 2004. Thereafter, GN Netcom moved its operations to Illinois, then again to its current offices in New Hampshire. As used herein, "Jabra" refers to GN Netcom, Inc. and all predecessor entities.

18.    Defendant Motorola, Inc. is a Delaware Corporation with its principal place of business in Schaumburg, Illinois.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19.    This action arises from Defendants' marketing, manufacture, and distribution of devices known as "Bluetooth Headsets" which permit wearers to utilize a mobile phone without holding the phone next to the face and without the necessity of wires connecting the phone to the Headset.

20.    On the respective packaging of these Bluetooth Headsets, Defendants have made false representations, omissions and concealments to consumers in order to induce them to purchase the product. Each Headset is sold with affirmative

1    representations that it can be used for extensive time periods, and the packaging lacks

2    any warnings regarding noise induced hearing loss, a condition which has no cure or

3    treatment, which may result from use of the Headsets over time.

4        21.    Use of Bluetooth Headsets is becoming increasingly popular among the

5    consuming public because of the ease and convenience associated with the

6    technology. According to the Insight Research Corporation ("IRC"), "[n]early 65

7    percent of Americans, or 195 million people, are expected to be mobile phone

8    subscribers by the close of 2005." *See* The Insight Research Corporation, *Fixed*

9    *Mobile Convergence: Single Phone Solutions for Wireless, Wireline, and VoIP*

10    *Convergence 2005-2011* (September 2005), available at <http://www.insight-

11    corp.com/reports/fixmobcon.asp>. IRC has also reported that "[a]s users become

12    more used to the convenience of cellular, long distance and local usage is shifting

13    from wireline to cellular. The average wireline residential toll minutes of use

14    ("MOUs") have been dropping at a compounded rate of 15 percent since 2000, while

15    wireless interstate MOUs per user grew at a compounded rate of nearly 40 percent

16    during the same period. According to one FCC study, on the wireless side, the

17    percentage of interstate residential minutes has increased from 16 percent to 26

18    percent of all wireless minutes." *Id.*

19        22.    As more people switch from using landlines to using mobile phones in

20    order to accommodate their telecommunication needs, more consumers are spending

21    hours per day on the mobile phone.

22        23.    As explained by the National Institute on Deafness and Other

23    Communication Disorders ("NIDOCD"), hearing depends on a series of events that

24    change sound waves into electrical signals that the auditory nerve carries to the brain.

25    Sound waves enter the outer ear and travel through the ear canal, which leads to the

26    eardrum. The eardrum vibrates from incoming sound and then sends the vibrations

27    to three bones in the middle ear, the malleus, incus and stapes. These bones then

28    amplify the sound and send the vibrations to the inner ear, or cochlea. The vibrations

cause fluid inside the cochlea to ripple and travel in waves along the basilar membrane. Hair cells sit atop the basilar membrane. The motion causes bristles, or stereocillia, atop the hair cells to bump against another overlying membrane. As the bristles move, pore-like channels on their surface open, allowing chemicals that generate sound to rush in. The auditory nerve carries these signals to the brain, which translates it into sound recognizable by humans. *See* NIDOCD, *Noise-Induced Hearing Loss* (May 2007), available at <www.nidcd.nih.gov/health/hearing/noise.asp.>

24.     Noise induced hearing loss is the slow loss of hearing caused by unsafe levels of noise. Hearing loss happens when unsafe levels of noise hurt the hair cells in the inner ear. Noise induced hearing loss is nerve deafness which lasts forever. There is no treatment, no medicine, no surgery, and no device which can correct hearing once damaged by noise.

25.     Plaintiffs are informed and believe that noise induced hearing loss can happen gradually over time and does not cause pain. Consequently, many people are unaware that noise induced hearing loss is occurring until it is too late. Because noise induced hearing loss is an insidiously developing hearing impairment, damage occurs prior to the point at which it is perceived.

26.     Noise induced hearing loss can also result because an individual has become accustomed to a particular sound level. As the individual gradually suffers hearing loss, in an effort to compensate for the decrease in ability to hear, the individual unwittingly increases the volume of a device in order to hear the sound produced and thereby compounds the injury.

27.     Dangerous Decibels, a public health partnership for the prevention of noise induced hearing loss, advises the public that "[a] dangerous sound is anything that is 85 dB (sound pressure level - SPL) or higher." *See* Dangerous Decibels, *Information Center: Hearing Loss* (June 22, 2007), available at www.dangerousdecibels.org/hearingloss.cfm. The organization further explains that:

7

[o]f the roughly 40 million Americans suffering from hearing loss, 10 million can be attributed to noise-induced hearing loss (NIHL). NIHL can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness levels over an extended period of time. *Id.*

28.    Exposure to a time weighted average decibel level by itself can cause harm. Another reputable organization, the National Institute for Occupational Safety and Health (NIOSH), has offered the view that exposure to sound averaging at 85 decibels for more than 8 hours is hazardous.    *See* NIOSH, *Criteria for a Recommended Standard: Occupational Noise Exposure* (June 1998), available at www.dangerousdecibels.org/hearingloss.cfm.    According to NIOSH, each three decibel volume increase reduces the safe exposure time by half, which reflects the logarithmic nature of the decibel scale.    For example, if a headset set on the higher volume level produces decibel levels of 91 decibels, noise induced hearing loss statistically develops if the headset is used for more than two hours a day.    At 94 decibels, noise induced hearing loss statistically develops if the headset is used for more than one hour a day.    At 103 decibels, irreversible damage statistically develops if the headset is used for more than 7 ½ minutes per day.

29.    Defendants' Bluetooth Headsets produce sound directly into the ear canal exceeding 85 decibels, with sound often peaking in excess of 100 decibels. For example, in a test recently performed by the American Speech-Hearing-Language Association ("ASHLA"), Motorola's H700 Headset produced decibel levels of up to 106 decibels. *See* ASHLA, *Popular Technology Unpopular with Ear's Hair Cells* (February 28, 2006), available at www.asha.org/about/news/2006/techdamage.htm.

30.    According to the standards promulgated by such organizations as NIOSH and Dangerous Decibels, a consumer statistically develops NIHL if exposed to sounds over 100 decibels for between only three to four minutes a day.    However, Defendants have each marketed their Headsets as having talk times of multiple hours.

31.    Bluetooth headsets have no mechanism that quantifies the noise output levels or signals when the decibel levels exceed safe ranges.    Consequently, there is

8

no way for a consumer who wants to limit the noise output to a certain decibel level to do so reliably.  That is, because of the products' design, a consumer cannot determine, without resorting to scientific testing, the decibel level of the sound being emitted from the Headset.

32.    Because the Headsets transmit sound to only one ear, extraneous sound from the environment is simultaneously being heard by the Headset user from the other ear.  Such ambient sound makes it difficult for the Headset user to isolate and hear the sound being transmitted over the Headset.  The one ear design of the Headset thus requires the user to maximize the volume of the Headset in order to overcome the extraneous noise being heard in the other ear.

33.    The in-ear or "ear bud" style Bluetooth Headsets that sit in the ear, as opposed to on the ear, are particularly dangerous to consumers because of their close proximity to the ear canal.  Each of the defendants produces in-ear Bluetooth Headsets.  Examples of these in-ear Bluetooth Headsets include Plantronic's Discovery 610, Jabra's BT250V, and Motorola's H9 Miniblue.

34.    The Headsets can be used to listen to music or television downloaded onto mobile phones, including certain mobile phones manufactured and sold by Motorola.  Because of these new uses for the mobile phone, the time over which the Headsets are used is increased significantly.

35.    Other manufacturers of music listening devices, such as Apple with respect to its iPod, include a warning so that consumers are aware of the potential for hearing damage.  For example, the iPod is sold with the following warning:

> Avoid Hearing Damage Warning: Permanent hearing loss may occur if earphones or headphones are used at high volume.  You can adapt over time to a higher volume of sound, which may sound normal but can be damaging to your hearing.  Set your iPod's volume to a safe level before that happens.  If you experience ringing in your ears, reduce the volume or discontinue use of your iPod.

9

The Headsets manufactured, distributed and sold by Defendants contain no such warnings regarding the actual and avoidable risks of hearing loss associated with the use of the Headsets, and thus fail to follow industry standards for music listening devices.

36.    Plaintiffs each have purchased and used Headsets manufactured and distributed by one of the Defendants.  None of the Plaintiffs were aware that the Headsets were emitting sounds in excess of safe decibel levels.

37.    Defendants' misrepresentations about the time that headsets can be used, and the absence of warnings of the risk of noise induced hearing loss, substantially influenced Plaintiffs' decision to purchase Bluetooth Headsets from Defendants.

38.    The design, manufacture, distribution and sale by Defendants of the Headsets without adequate warning labels that the Headsets produce decibel levels harmful to the human ear constitutes deceptive and unlawful business practices.  As a result of Defendants' conduct, numerous consumers have paid for an unsafe or unusable product which they falsely were led to believe could be safely used for extended periods of time.

39.    Millions of consumers have had their hearing put at risk by Defendants' conduct.  Plaintiffs and the Class members detrimentally relied upon the affirmative misrepresentations, omissions and concealments made by Defendants regarding the permissible use of the product.  Plaintiffs and the Class members further relied upon Defendants' skill and judgment to furnish suitable goods which would not cause harm to the consumer, and to warn the consumer of any information known by Defendants, or which should reasonably have been known by Defendants, relating to the safe operation of the product.

40.    Plaintiffs seek damages, on behalf of themselves and the Classes as defined below, injunctive relief, product repair, restitution, disgorgement, and all other appropriate relief.  Defendants misrepresented the time period over which consumers could safely use the Headsets.  In marketing and advertising the Headsets,

10

1   Defendants concealed and omitted material information as to the capacity for the

2   headsets to cause hearing loss.  Plaintiffs and the members of the classes thus (1)

3   cannot safely use the Headsets for the length of time for which the Headsets were

4   advertised as usable; or (2) must turn the volume of the Headsets so low as to render

5   the headsets unusable in most environments, thereby drastically limiting and/or

6   eliminating the usability of the product.

7       41.   Since learning of the problems with the product as described herein,

8   each of the Plaintiffs have each stopped using the Headsets completely, or have

9   limited their use of the Headsets.  Plaintiffs, and the Class Members, have thus lost

10  money as a result of the wrongful acts of Defendants.

11                  **PLANTRONICS' WRONGFUL CONDUCT**

12      42.   Plantronics has manufactured and distributed many different models of

13  Bluetooth Headsets including Discovery 655, Discovery 645, Discovery 640,

14  Discovery 640E, Voyager 510, Explorer 350, Explorer 340, and Explorer 330

15  (hereinafter "Plantronics Headsets").  On the packaging of the Plantronics Headsets,

16  Plantronics has made false representations, omissions and concealments to

17  purchasing consumers in order to induce the consumers to purchase the product.

18  Each Plantronics Headset is sold with affirmative representations that it can be used

19  for extensive time periods, yet the packaging lacks any warnings regarding the noise

20  induced hearing loss, a condition which has no cure or treatment, which can be

21  expected to result from use of the Plantronics Headsets in most environments over

22  that period of time.

23      43.   The packaging on the Plantronics Headsets advises that the Headsets can

24  be used for "extended talk time." The various models indicate talk time of 3 hours, 6

25  hours, 8 hours, 9 hours, 10 hours, and even 15 hours.  However, the representations

26  as to permissible talk times are false, as a consumer cannot safely use the Plantronics

27  Headsets for the talk times represented.  Plaintiffs and the Class members relied upon

28  these representations made by Defendants in determining whether to purchase the

11

1    Plantronics Headsets at the high price charged for the devices.

2        44.    Plantronics sold the Plantronics Headsets with a booklet setting forth

3    "important safety and operational information" relating to use of the Plantronics

4    Headsets.  However, Plantronics omitted and concealed from consumers any safety

5    information pertaining to the Headsets' propensity for causing noise induced hearing

6    loss.  Defendants also omitted and concealed from the consuming public information

7    advising that the Headsets produced noise at decibel levels exceeding 85 db, and even

8    exceeding 100 db.

9        45.    Despite the information provided by Plantronics in its "safety booklet,"

10    Plantronics fails to divulge the decibel output of the device and the potential for noise

11    induced hearing loss if the Headset is used at a loud setting for more than a safe

12    number of hours per day.  The exclusion of such information from the safety

13    information in the booklet wrongly implies that the Headset is safe at its maximum

14    volume for the hours of talk time permitted by the Headset.  The safety book falsely

15    represents to consumers that the "important" information provided in the booklet

16    permits the "safe and efficient operation" of the Headset.  This representation is false,

17    as important safety information has been excluded from the booklet.

18        46.    Plantronics affirmatively represented that the Headsets are warranted to

19    be free from "defects in materials and workmanship."  This representation was and is

20    false.  The Headsets are defective and cannot safely be used for their intended

21    purpose.  The materials and workmanship of the product cause the product to

22    produce unsafe decibel levels under normal consumer usage.

23        47.    Plaintiffs and the Class members relied upon such misrepresentations,

24    omissions and concealments to their detriment  in that the Defendants'

25    misrepresentations and concealments to the effect that the Headsets were safe for

26    their normal and intended use substantially influenced Plaintiffs' choice to buy and

27    utilize Defendants' Bluetooth Headsets.

28

Consolidated Class Action Complaint
M \Bluetooth In Re (06-063)\Pleadings\Complaint Consolidated doc

## JABRA'S WRONGFUL CONDUCT

48.    GN Jabra North America and GN Netcom, Inc. (hereinafter referred to as the "Jabra" Defendants") have manufactured and distributed many different models of Bluetooth Headsets, including the JX10, BT160, BT500, BT800, BT250v, BT350, and BT150 (hereinafter referred to as the "Jabra Headsets").

49.    On the packaging and marketing materials for these Headsets, Defendants have made false representations, omissions and concealments to purchasing consumers in order to induce the consumers to purchase the product. Each Headset is sold with affirmative representations that it can be used for extensive time periods, yet the packaging lacks any warnings regarding the noise induced hearing loss, a condition which has no cure or treatment, which can be expected to result from use of the Headsets in most environments over that period of time.

50.    The packaging on the Jabra Headsets advises that the Jabra Headsets can be used for an extensive amount of talk time. The various models indicate talk time of 6 hours, 8 hours, 7 hours, and even 10 hours. However, the representations as to permissible talk times are false, as a consumer cannot safely use the Jabra Headsets for the talk times represented. Plaintiffs and the Class members relied upon these representations made by Defendants in determining whether to purchase the Headsets at the high price charged for the devices.

51.    Although Jabra provides a user manual with its Headsets, which includes a section entitled "Certification and Safety Approvals," Jabra omits from the manual any information as to the decibel output of the device and the potential for noise induced hearing loss if the Headset is used at a loud setting for more than a safe number of hours per day. The exclusion of such information from the user manual wrongly implies that the Headset is safe at its maximum volume for the hours of talk time permitted by the Headset.

52.    The same misrepresentations, omissions and concealments were made in the product packaging to each consumer who purchased a Jabra Headset. Plaintiffs

13

and the Class members relied upon the misrepresentations, omissions and concealments in purchasing the Headsets in that the Defendants' misrepresentations and concealments to the effect that the Headsets were safe for their normal and intended use substantially influenced Plaintiffs' choice to buy and utilize Defendants' Bluetooth Headsets.

## MOTOROLA'S WRONGFUL CONDUCT

53.    Motorola has manufactured and distributed many different models of Bluetooth headsets, including the HS830, H3, H300, H500, H605, H700, HS805, HS815, HS820, HS850, and HT820 (hereinafter referred to as the "Motorola Headsets").

54.    The packaging on the Motorola Headsets advises that the Headsets can be used for hours of talk time.  The various models advertise on the front of the packaging that the product permits talk time of 3.5 hours, 6 hours, 8 hours, 10 hours, and even 17 hours.  However, the representations as to permissible talk times are false because a consumer cannot safely use the Headsets for the talk times represented.  Rather, the Motorola Headsets can only be safely used for minutes per day, thereby drastically limiting the usability of the product.

55.    Plaintiffs and the Class members relied upon these representations made by Defendants in determining whether to purchase the Headsets at the high price charged for the devices (with some versions costing over $100.00).  Had Plaintiffs been advised that the product could only safely be used for mere minutes per day, Plaintiffs would not have purchased the Motorola Headsets for the prices charged, or at all.

56.    Motorola sold the Motorola Headsets with a booklet setting forth safety information relating to use of the Headsets.  However, Defendants omitted and concealed from consumers any safety information pertaining to the Headsets' propensity for causing noise induced hearing loss.  Defendants also omitted and concealed from the consuming public information advising that the Headsets

14

produced noise at decibel levels exceeding 85 decibels, and even exceeding 100 decibels.

57.    Motorola manufactures and sells the Motorola Headsets without any warning as to the decibel levels the devices emit. Motorola sells its headsets with a booklet entitled "Important Safety and Legal Information." The booklet informs the consumer in bold print that it provides **"IMPORTANT INFORMATION ON SAFE AND EFFICIENT OPERATION. READ THIS INFORMATION BEFORE USING YOUR DEVICE."** The booklet contains three pages of "Safety Information." The booklet also includes a four page section on "Wireless Phone Safety Tips."

58.    Despite the seven pages of material devoted to the safe use of the Motorola Headset, Motorola fails to divulge the decibel output of the device and the potential for noise induced hearing loss if the Headset is used at a loud setting for more than a safe number of hours per day. The exclusion of such information from the safety information and tips in the booklet wrongly implies that the Headset is safe at its maximum volume for the hours of talk time permitted by the Headset. The safety book falsely represents to consumers that the "important" information provided in the booklet permits the "safe and efficient operation" of the Headset. This representation is false since important safety information has been excluded from the booklet. Plaintiffs and the Class members relied upon such misrepresentations, omissions and concealments to their detriment.

59.    Motorola affirmatively represented in their marketing materials that the Headsets are "free from defects in materials and workmanship under normal consumer usage. . . ." This representation was and is false. The Headsets are defective and cannot safely be used for their intended purpose. The materials and workmanship of the product cause the product to produce unsafe decibel levels under normal consumer usage.

60.    The same misrepresentations, omissions and concealments were made in

15

1   the product packaging to each consumer who purchased a Motorola Headset.

2   Plaintiffs and the Class members relied upon the misrepresentations, omissions and

3   concealments in purchasing the Headsets in that the Defendants' misrepresentations

4   and concealments to the effect that the Headsets were safe for their normal and

5   intended use substantially influenced Plaintiffs' choice to buy and utilize Defendants'

6   Bluetooth Headsets.

7   ## CLASS ACTION ALLEGATIONS

8   61.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs

9   bring these consolidated actions on behalf of themselves and the following sub-

10  classes:

11

12  a.   Plaintiff Sub-Class A: Nationwide Sub-Class Against
          Defendant Plantronics.

13  All persons or entities in the United States who, between June 30, 2002 and

14  the present, purchased a Bluetooth Headset manufactured by Defendant Plantronics.

15  The class does not include: (a) any officers, directors or employees of the

16  Defendants; (b) any judge assigned to hear this case (or spouse or family member of

17  any assigned judge); (c) any juror selected to hear this case.

18  b.   Plaintiff Sub-Class B: "Nationwide Sub-class Against
          the Jabra Defendants.

19  All persons and entities in the United States who, between June 30, 2002 and

20  the present, purchased a Bluetooth Headset manufactured by Defendant GN Jabra

21  North America or GN Netcom, Inc. or their successors in interest. The class does

22  not include: (a) any officers, directors or employees of the Defendants; (b) any judge

23  assigned to hear this case (or spouse or family member of any assigned judge); (c)

24  any juror selected to hear this case.

25

26  c.   Plaintiff Sub-Class C: California Class Against
          Defendant Motorola

27  All persons or entities who reside in California and who, between June 30,

28

16

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint Consolidated.doc

2002 and the present, purchased a Bluetooth Headset manufactured by Defendant Motorola. The class does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

    d.    <u>Plaintiff Sub-Class D: Forty-Nine State Sub-class Against Defendant Motorola</u>

All persons and entities who reside in the United States but outside California, and who, between October 16, 2003 and the present, purchased a Bluetooth Headset device manufactured by Defendant Motorola. The class does not include: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any juror selected to hear this case.

Said definitions may be further defined by additional pleadings, evidentiary hearings, a class certification hearing, and order of this Court.

62.    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

    a.    Each defendant has sold millions of Bluetooth Headsets during the relevant time period. Therefore, joinder of all Class members in their respective state classes would be impracticable, and class treatment is a superior method for fairly and efficiently adjudicating this controversy.

    b.    Plaintiffs' claims are typical of other Class members' claims within their respective classes because each Plaintiff purchased one or more Bluetooth Headsets manufactured, sold, marketed or distributed by Defendants within the class period. Each of the Defendants made uniform misrepresentations, omissions, concealment to the Plaintiffs and respective Class members who purchased their Headsets. Accordingly, by proving their own claims, Plaintiffs will presumptively

Consolidated Class Action Complaint
M \Bluetooth. In Re (06-063)\Pleadings\Complaint Consolidated doc

1            prove their respective Class members' claims.

2     c.     Numerous questions of law and fact are uniform and common to the

3            classes. These uniform and common questions of law and fact

4            predominate over any individual issues. The uniform and common

5            questions of law and fact which predominate over individual issues

6            include:

7         i.     Whether Defendants, and each of them, represented to consumers

8            that the Bluetooth Headsets had a characteristic, use, benefit, or

9            quality that permitted the consumer to safely use the headsets for

10            an extended amount of time;

11       ii.     Whether the Headsets in fact have a characteristic, use, benefit, or

12            quality that prevents a consumer from safely using the Bluetooth

13            Headsets for an extended amount of time;

14      iii.     Whether use of the Bluetooth Headsets expose users to

15            dangerous levels of sound;

16      iv.     Whether Defendants, and each of them, failed to fairly,

17            accurately, and sufficiently warn Plaintiffs and the members of

18            the proposed Classes of the unsafe characteristics of the

19            Bluetooth Headsets;

20       v.     Whether Defendants, and each of them, knowingly concealed

21            the danger of using the Bluetooth Headsets;

22      vi.     Whether Defendants, and each of them, truthfully advertised that

23            the Bluetooth Headsets could safely be used over multiple hours

24            of time;

25      vii.     Whether Defendants, and each of them, violated express and

26            implied warranty statutes;

27     viii.     Whether Defendants, and each of them, were unjustly

28            enriched;

18

ix.   The nature and extent of damages to which Plaintiffs and members of the proposed classes are entitled based on the conduct of Defendants;

x.    Whether the distribution of Bluetooth Headsets to the consuming public constitutes an illegal nuisance.

xi.   Whether Defendants' Bluetooth Headsets pose an excessive risk of otherwise preventable hearing loss.

xii.  Whether Defendants knew or should have known that their Bluetooth Headsets pose an excessive risk of otherwise preventable hearing loss.

xiii. Whether Defendants should be ordered to notify all class members of the risk of hearing loss associated with their Bluetooth Headsets.

d.    Plaintiffs can and will fairly and adequately represent and protect their respective Class members' interests, and have no interests that conflict with or are antagonistic to their respective Class members'interests. Plaintiffs' attorneys are experienced and competent in complex class-action and consumer-protection antitrust litigation.

e.    Defendants each engaged in a course of conduct involving similar or identical unsafe designs, statutory violations, and misrepresentations common to Plaintiffs and the members of their respective classes. Individual questions, if any, pale by comparison to the numerous common questions that dominate this litigation.

f.    The claims at issue herein seek damages for economic injury and do not seek damages for physical injury which has already occurred to the Class members. Specifically excluded from the relief sought in this proceeding are damages for personal injury claims. Thus,

19

individualized determination as to causation related to bodily injury already suffered will not be required. The economic damages sustained by the members of the classes arise from a common nucleus of operative facts involving the respective Defendant's misconduct.

g.  These class actions are superior to the alternatives, if any, for the fair and efficient adjudication of these controversies. The Classes are readily definable. Certification of these class actions will enable claims to be handled in an orderly and expeditious manner. Certification of these class actions will save time and expense and will ensure uniformity of decisions.

h.  The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

i.  The members of the proposed classes have been monetarily damaged and suffered injury in fact as a result of Defendants' misconduct in that each member purchased a Headset which the member would not have purchased if the true facts as to the product's safety and limitations had been revealed by Defendants.

j.  Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims

20

and the law applicable thereto, the Court and the parties will easily be able to manage the class actions in this MDL.

k.    Prosecution of separate actions by individual Class members will create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

l.    Injunctive relief is appropriate as to each of the Classes as a whole because Defendants have acted or refused to act on grounds generally applicable to the Classes.

63.    Application of California law to the putative nationwide Sub-Class A is proper because defendant Plantronics markets, advertises and sells its Bluetooth Headsets in and from the State of California. Thus, a substantial portion of the alleged wrongful conduct emanates from this state. In addition, California's public policy favors the protection of consumers, and California has a strong interest in deterring wrongful conduct that occurs within its borders. Thus, application of California law is not arbitrary or unfair as it relates to Sub-Class A.

64.    Application of California law to the putative nationwide Sub-Class B is proper because the Jabra defendants marketed, advertised, and sold their Bluetooth Headsets in and from the State of California. Thus, a substantial portion of the alleged wrongful conduct emanates from this state. In addition, California's public policy favors the protection of consumers, and California has a strong interest in deterring wrongful conduct that occurs within its borders. Thus, application of California law is not arbitrary or unfair as it relates to Sub-Class B.

65.    Application of California law to the putative California Sub-Class C is proper because defendant Motorola conducts business in this state and has purposely availed itself to the markets in this state by promoting, marketing, and selling its Bluetooth Headsets in California. All the members of the putative Sub-Class C are, by definition, residents of California. California's public policy favors the protection of consumers, and California has a strong interest in protecting its citizens from

21

wrongful conduct.

66.    Application of Illinois law to the putative Sub-Class D is proper because defendant Motorola markets, advertises and sells its Bluetooth Headsets in and from the State of Illinois.  Thus, a substantial portion of the alleged wrongful conduct emanates from Illinois, and Illinois has a strong interest in deterring wrongful conduct that occurs within its borders.

## FIRST CAUSE OF ACTION
### Violation of Consumers Legal Remedies Act, Cal Civ. Code § 1750 et seq.
### *(Brought on Behalf of Sub-Classes A, B, and C)*

67.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

68.    Plaintiffs and members of Sub-Classes A, B, and C are individuals who have purchased goods (i.e. Bluetooth Headsets) for personal, family or household purposes.  This cause of action is being asserted on behalf of all persons who purchased a Bluetooth Headset within three years of the filing of this action.

69.    Defendants have represented that the Bluetooth Headsets have characteristics, uses, benefits, or qualities that they do not have, in violation of Civil Code § 1770(a)(5).  Defendants have also represented that the Bluetooth Headsets had a particular standard or quality that they do not have in violation of Civil Code § 1770(a)(7).

70.    Plaintiffs and members of the Classes have each been directly and proximately injured by the conduct of Defendants, and such injury includes payment for the unsafe Bluetooth Headsets.

71.    More than (30) thirty days prior to the filing of this complaint, notice was sent to each Defendant in writing by certified mail pursuant to California Civil Code § 1782(a), in which demand was made that Defendants correct their unfair and deceptive acts, recall the product, contact and refund to Plaintiffs and the Classes the purchase price, and otherwise rectify its conduct with respect to the product.  Notice

22

1  was also given to Defendants by virtue of complaints and amended complaints filed

2  in *Jones, et al. v. Motorola, Inc., et al.*, Case No. 2:06-5182, United States District

3  Court, Central District of California; *Finlee v. GN Jabra North America, et al.*, Case

4  No. 2:06-6280, United States District Court, Central District of California, *Karle v.*

5  *Motorola, Inc.*, Case No. 2:06-6706, United States District Court, Central District of

6  California, *Raines v. Plantronics, Inc.*, Case No. 2:06-7608, United States District

7  Court, Central District of California.

8      72.    Defendants have failed to make an appropriate correction, repair or

9  replacement, or other remedy with respect to the product.

10      73.    Defendants have failed to make an appropriate correction, repair or

11  replacement, or other remedy with respect to the product.

12      74.    As a result of the conduct of Defendants as alleged herein, Plaintiffs and

13  the Class should be awarded actual damages in the amount paid for the product, and

14  restitution pursuant to California Code § 1780(a).

15      75.    The Court should enjoin Defendants from any further sales, marketing

16  or advertisement of the Bluetooth Headsets which contain the misrepresentation

17  detailed herein as to the standard, characteristics, uses, benefits, and/or qualities of

18  the Bluetooth Headsets. The Court should enjoin Defendants from any further sales,

19  marketing or advertisement of the Bluetooth Headsets without a warning as to the

20  potential for noise induced hearing loss. The Court should further enjoin Defendants

21  from any further sales, marketing or advertisement of the Bluetooth Headsets until

22  Defendants redesign the Bluetooth Headsets in a manner that ensures that the volume

23  emitted by the Bluetooth Headsets does not exceed the decibel level determined to be

24  safe for the advertised use of the Headsets, or alternatively, redesign the Bluetooth

25  Headsets in a manner that provides the consumer with the ability to determine the

26  decibel level of the sound being emitted by the Bluetooth Headset.

27      76.    Plaintiffs engaged counsel to prosecute this action and are entitled to

28  recover costs and reasonable attorney's fees according to proof at trial.

## SECOND CAUSE OF ACTION
### Untrue and Misleading Advertising, Cal. Bus. & Prof. Code § 17500, et seq.
### *(Brought on Behalf of Sub-Classes A, B, and C)*

77.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

78.    Plaintiffs bring this cause of action on behalf of themselves, and on behalf of Sub-Classes A, B, and C. Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' violations of Bus. & Prof. Code § 17500, *et seq.* Plaintiffs relied on the concealments and misrepresentations of the Defendants in purchasing the Headsets. The Defendants' misrepresentations and concealments to the effect that the Headsets were safe for their normal and intended use substantially influenced Plaintiffs' choice to purchase Defendants' Bluetooth Headsets.

79.    Plaintiffs are informed and believe that Defendants made representations disseminated to the public as to the uses of the Headsets in advertisements, product descriptions and other sales materials, while also concealing and/or omitting relevant information which would have qualified such affirmative representations. These representations and concealments were made to induce the public to purchase the Headsets. The representations were false. The information concealed should have been disseminated.

80.    Defendants were aware, or by the exercise of reasonable care should have been aware, that the representations were untrue or misleading. Defendants also were aware, *or* by the exercise of reasonable case should have been aware, that the concealments and omissions should have been disseminated in the advertising.

81.    Plaintiffs have been harmed. Plaintiffs, on behalf of themselves and on behalf of the Sub-Classes, seeks restitution, injunctive relief and all other relief allowable under § 17500, et *seq.*

82.    Pursuant to Bus. & Prof Code § 17535, Plaintiffs and members of the

24

1  Sub-Classes are entitled to remedies as set forth below.

2      83.    Plaintiffs meet the standing requirements of California Code of Civil

3  Procedure § 382 to bring this cause of action of action because, among other reasons,

4  the question is one of a common or general interest, is a question of many persons

5  and/or the parties are numerous and it is impracticable to bring them all before the

6  Court.

### THIRD CAUSE OF ACTION

**Violation of Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.***
***(Brought on Behalf of Sub-Classes A, B, and C)***

10      84.    Plaintiffs incorporate by reference all the above allegations as if fully set

11  forth herein.

12      85.    Plaintiffs bring this cause of action on behalf of themselves and on

13  behalf of Sub-Classes A, B, and C. Plaintiffs have suffered injury in fact and lost

14  money or property as a result of unfair competition by Defendants, as Plaintiffs paid

15  the purchase price for an unsafe product which probably would not have been

16  purchased, or purchased for the same price, if Defendants had not made

17  misrepresentations and concealed or omitted material information as to the safety of

18  the product and its limitations. Plaintiffs relied upon Defendants to disclose all

19  pertinent safety information and the limitations on the safe usage of the product.

20  Plaintiffs have further suffered injury in fact having been subjected to a nuisance, as

21  defined by California Civil Code, section 3479, and as to which they were subjected

22  by virtue of money innocently paid in purchasing a product injurious to health so as

23  to interfere with the comfortable enjoyment of life.

24      86.    The actions of Defendants, as complained herein, constitute unfair,

25  deceptive and unlawful practices committed in violation of the Unfair Competition

26  Act. Plaintiffs are informed and believe that the conduct of Defendants violated the

27  Unfair Competition Act because:

28          a.    Defendants were aware, or upon reasonable investigation should

25

1    have been aware, of the risks presented by the use of the

2    Headsets;

3    b.    Defendants purposefully and knowingly failed to adequately

4    warn the consumer of the safety risk presented by use of the

5    Headset;

6    c.    Defendants advertised and marketed the Headsets with a

7    representation that the Headsets could be used in excess of the

8    number of hours which would be safe, even though Defendants

9    were aware or should have been aware that such use could be

10    unsafe;

11    d.    Defendants failed to include in the safety information provided

12    with the Headsets any mention of the potential for noise

13    induced hearing loss, even though such a warning had been

14    issued by competitors;

15

16    e.    Defendants concealed, omitted and/or suppressed information as

17    to the decibel levels emitted by the Headsets and the

18    corresponding time limitations for use;

19    f.    Defendants have unlawfully violated regulations limiting

20    exposure to certain decibel levels over certain periods of time;

21    87.    Plaintiffs are informed and believe that Defendants are aware, or should

22    be aware, of the risk of hearing loss posed by the Headsets, but Defendants chose to

23    market and sell the Headsets without adequate warning or modifications because

24    such warnings or modifications could have had an adverse impact on the sale of the

25    Headsets and the revenue flowing to Defendants.

26    88.    Plaintiffs have suffered damages as a result of the conduct of

27    Defendants, because Plaintiffs and the Class members were misled into purchasing a

28    product which was not safe and which was not what Defendants advertised the

Consolidated Class Action Complaint
M \Bluetooth. In Re (06-063)\Pleadings\Complaint Consolidated doc

1    product to be.

2        89.    Plaintiffs are informed and believe that all of the conduct alleged herein

3    occurs and continues to occur in Defendants' business. The conduct of Defendants is

4    part of a pattern or generalized course of conduct repeated on thousands of occasions

5    daily.

6        90.    Plaintiffs request that this Court enter such orders or judgments as may

7    be necessary to restore to any person in interest any money which may have been

8    acquired by means of such unfair practices as provided in Bus. & Prof. Code §

9    17203, and for such other relief as set forth below.

10       91.    Plaintiffs are informed and believe that the continuing sales of the

11   Headsets to the unsuspecting public, without warnings and any mechanism by which

12   the public may protect its hearing, exposes the consuming public in an ongoing

13   danger of noise induced hearing loss, an irreparable and devastating loss. Because

14   the noise induced hearing loss at issue herein is a silent condition (i.e., one is unaware

15   that it is occurring as it evolves and until it is too late) that progressively occurs over

16   time, everyday the consuming public uses the product, consumers continue down the

17   path of noise induced hearing loss, incrementally but permanently affecting and/or

18   jeopardizing one's long-term ability to hear.  With every additional sale of the

19   product, this path becomes increasingly congested.

20       92.    Plaintiffs, on behalf of themselves, and Sub-Classes A, B, and C seek an

21   order of this Court awarding restitution, injunctive relief and all other relief allowed

22   under § 17200, *et seq.*, plus interest, attorneys' fees and costs pursuant to, *inter alia*,

23   C.C.P. § 1021.5. Plaintiffs engaged counsel to prosecute this action and are entitled

24   to recover costs and reasonable attorney's fees according to proof at trial. This case

25   will result in the enforcement of an important right affecting the public interest, a

26   significant benefit (pecuniary or nonpecuniary) will be conferred on a large class of

27   persons (thousands if not tens of thousands or more), the necessity and financial

28   burden of private enforcement are such as to make the award appropriate (the product

27

Consolidated Class Action Complaint
M \Bluetooth. In Re (06-063)\Pleadings\Complaint Consolidated doc

1  costs less than $200, which is minimal in comparison to the financial burden of

2  litigating this important action, made necessary by virtue of Defendants' refusal to

3  protect the public's hearing); and such fees should not in the interest of justice be paid

4  out of the recovery, if any (as the cost of litigation by itself may exceed the monetary

5  amounts paid by way of restitution).

6       93.    Plaintiffs meet the standing requirements of California Code of Civil

7  Procedure § 382 to bring this cause of action because, among other reasons, the

8  question is one of a common or general interest, is a question of many persons and/or

9  the parties are numerous and it is impracticable to bring them all before the Court.

10  Further, Plaintiffs have standing to bring this action as Plaintiffs suffered injury in

11  fact and damages as a result of Defendants' conduct.

## FOURTH CAUSE OF ACTION
### Deceptive Trade Practices 815 ILCS 510
### *(Brought on Behalf of Sub-Class D Against Motorola, Inc.)*

15       94.    Plaintiffs incorporate by reference all the above allegations as if fully set

16  forth herein.

17       95.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of

18  the Class, and on behalf of the common or general interest. Plaintiffs have suffered

19  injury in fact and lost money or property as a result of Defendant's violations of the

20  Uniform Deceptive Trade Practices Act 815 Ill. Comp. Stat. 510.

21       96.    Plaintiffs are informed and believe that Defendant has made

22  representations to the public that regarding the uses and quality of the Headsets.

23  These representations were made to induce the public to purchase the Headsets. The

24  representations were false and created a likelihood of confusion or misunderstanding

25  among the Plaintiffs and the public.

26       97.    Defendant was aware, or by the exercise of reasonable care should have

27  been aware, that the representations were untrue and misleading. Defendants also

28

Consolidated Class Action Complaint
M \Bluetooth In Re (06-063)\Pleadings\Complaint Consolidated doc

1    were aware, or by the exercise of reasonable care should have been aware, that the

2    concealments and omissions should have been disseminated in the advertising.

3         98.    Plaintiffs have been harmed.  Plaintiffs, on behalf of themselves, on

4    behalf of the Class, and on behalf of the common or general interest, seek restitution

5    and all other relief allowable under Uniform Deceptive Trade Practices Act 815 Ill.

6    Comp. Stat. 510.

7

8    ## PRAYER FOR RELIEF

9        **WHEREFORE,** Plaintiffs, on behalf of themselves and as representative

10   of all other persons similarly situated, pray for judgment against the Defendants,

11   as follows:

12       1.    An Order certifying the Sub-Classes herein, and appointing Plaintiffs,

13              and their counsel, to represent the Class;

14       2.    An award of general damages according to proof;

15       3.    An award of special damages according to proof;

16       4.    An award of punitive damages in an amount sufficient to deter and make

17              an example of Defendants;

18       5.    An award of restitution in an amount according to proof;

19       6.    A temporary restraining order, a preliminary injunction and a

20              permanent injunction enjoining Defendants, and their agents, servants,

21              employees and all persons acting under or in concert with them, to cease

22              and desist from the following acts:

23              (a)    Selling, marketing or advertising the Headsets without a detailed

24                     warning advising the consumer as to the potential for noise

25                     induced hearing loss and the known risk of harm associated with

26                     exposure, even for brief intervals, to sound at high decibel levels;

27              (b)    Selling, marketing or advertising the Headsets without a

28                     mechanism by which the user can readily and easily determine

1    the decibel levels being emitted by the Headsets and thereby be
2    made aware of the safe time limits (if any) for use of the Headsets
3    at the higher volume settings;

4    (c)    Any other conduct which the Court determines warranted so as to
5    prevent the commission of unfair competition by Defendants.

6    7.    For reasonable attorneys' fees;

7    8.    For costs incurred herein;

8    9.    For prejudgment interest;

9    10.    For an order of disgorgement;

10    11.    For all general, special, and equitable relief to which the Plaintiffs and
11    the members of the Class are entitled by law.

12

13    Dated: July 6, 2007

**THE GARCIA LAW FIRM**
**PEARSON, SIMON, SOTER, WARSHAW**
**& PENNY LLP**

By: _____
Stephen M. Garcia
David M. Medby
*Counsel for Plaintiffs and the Class*

Bruce L. Simon
Esther L. Klisura
Pearson, Simon, Soter, Warshaw & Penny, LLP
*Counsel for Plaintiffs and the Class*

Steven A. Hart
Scott W. Henry
Segal, McCambridge, Singer & Mahoney, Ltd.
Sears Tower
233 S. Wacker Drive, Suite 5500
Chicago, Illinois 60606
Telephone: (312) 645-7800
Facsimile: (312) 645-7711
*Counsel for Plaintiffs and the Class*

Melissa M. Harnett
Wasserman, Comden & Casselman, LLP
5567 Reseda Blvd., Suite 300
Tarzana, California 91357

30

Telephone: (818) 705-6800
Facsimile: (818) 996-8266
*Counsel for Plaintiffs and the Class*

Michael J. Fuller
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402
Telephone: (601) 261-2220
Facsimile: (601) 261-2481
*Counsel for Plaintiffs and the Class*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: July 6, 2007

THE GARCIA LAW FIRM
**PEARSON, SIMON, SOTER, WARSHAW & PENNY LLP**

By: _____
Stephen M. Garcia
David M. Medby
*Counsel for Plaintiffs and the Class*

Bruce L. Simon
Esther L. Klisura
Pearson, Simon, Soter, Warshaw & Penny, LLP
*Counsel for Plaintiffs and the Class*

Steven A. Hart
Scott W. Henry
Segal, McCambridge, Singer & Mahoney, Ltd.
Sears Tower
233 S. Wacker Drive, Suite 5500
Chicago, Illinois 60606
Telephone: (312) 645-7800
Facsimile: (312) 645-7711
*Counsel for Plaintiffs and the Class*

Melissa M. Harnett
Wasserman, Comden & Casselman, LLP
5567 Reseda Blvd., Suite 300
Tarzana, California 91357

31

Telephone: (818) 705-6800
Facsimile: (818) 996-8266
*Counsel for Plaintiffs and the Class*

Michael J. Fuller
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402
Telephone: (601) 261-2220
Facsimile: (601) 261-2481
*Counsel for Plaintiffs and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

32

**PROOF OF SERVICE**

1

2    I am employed in the County of Los Angeles, State of California. My business address is The Garcia Law Firm, One World Trade Center, Suite 1950, Long Beach, California 90831. I am over the age of eighteen years and am not a party to the within action;

3

4

5    On July 6 2007, I served the following document(s) entitled **CONSOLIDATED CLASS ACTION COMPLAINT** on ALL INTERESTED PARTIES in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

6

7

8

9    **SEE ATTACHED LIST**

10

11    **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Long Beach, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14

15

16

17

18    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

19

Executed on July 6, 2007, at Long Beach, California.

20

21

22    Jill Mobley

23

24

25

26

27

28

1                                     **SERVICE LIST**

2

3 Samuel Franklin Baxter
P.O. Box O
Marshall, TX 75671

4

5 Ky E. Booth-Kirby
Swidler, Berlin, Shereff, Friedman, LLP
3000 K Street N.W., Suite 300

6 Washington, DC 20007

7 Terrence J. Dee
Kirkland & Ellis, LLP

8 200 East Randolph Drive, Suite 5900
Chicago, IL 60601

9

10 John G. Emerson
Emerson Poynter, LLP
830 Apollo Lane

11 Houston, TX 77058

12 William B. Federman
Federman & Sherwood

13 10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120

14

15 Eric Hugh Findlay
Ramey & Flock
100 E. Ferguson, Suite 500

16 Tyler, TX 75702

17 Michael J. Fuller, Jr.
McHugh Fuller Law Group, PLLC

18 97 Elias Whiddon Road
Hattiesburg, MS 39402

19

20 Angel A. Oarganta
Bingham McCutchen LLP
Three Embarcadero Center

21 San Francisco, CA 94111-4067

22 Melissa Meeker Harnett
Wasserman, Comden & Casselman, LLP

23 5567 Reseda Boulevard, Suite 330
P.O. Box 7033

24 Tarzana, CA 91357-7033

25 Scott W. Henry
Segal, McCambridge, Singer & Mahoney, Ltd.

26 One IBM Plaza, Suite 200
330 North Wabash Avenue

27 Chicago, IL 60611

28

1   James Andrew Holmes
    605 South Main, Suite 203
2   Henderson, TX 75654

3   James Burke McHugh
    McHugh Fuller Law Group, PLLC
4   97 Elias Whiddon Road
    Hattiesburg, MS 39402
5
    John Robert Mercy
6   Mercy Carter Tidwell, L.L.P.
    1724 Galleria Oaks Drive
7   Texarkana, TX 75503

8   Joseph Aaron Miller
    Accidental Injury Advocates, Ltd.
9   Stoney Point Center
    700 Newtown Road, Suite 11
10  Norfolk, VA 23502

11  Scott E. Poynter
    Emerson Poynter, LLP
12  The Museum Center
    500 President Clinton Avenue, Suite 305
13  Little Rock, AR 72201

14  Mary Quinn-Cooper
    Eldridge Cooper Steichen & Leach, PLLC
15  P.O. Box 3566
    Tulsa, OK 74\01-3566
16
    Jeffrey S. Rosenstiel
17  Frost, Brown & Todd, LLC
    2200 PNC Center
18  201 East Fifth Street
    Cincinnati, OH 45202-4182
19
    Andrew Wesley Spangler
20  Brown McCarroll
    1127 Judson Road, Suite 220
21  P.O. Box 3999
    Longview, TX 75606-3999
22
    Floyd M. Thomas, Jr.
23  Compton, Prewett, Thomas & Hickey
    P.O. Drawer 1917
24  El Dorado, AR 71731

25  James C, Wyly
    Patton, Roberts, McWilliams & Capshaw, LLP
26  2900 St. Michael Drive, Suite 400
    P.O. Box 6128
27  Texarkana, TX 75503-6128

28

1   Bruce L. Simon
    Pearson, Simon, Soter, Warshaw & Penny
2   44 Montgomery Street
    San Francisco, CA 94104
3
    Mark T. Cramer
4   Kirkland & Ellis, LLP
    777 South Figueroa Street, 39th Floor
5   Los Angeles, CA  90017

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28