1    Stephen M. Garcia, State Bar No. 123338
      sgarcia@lawgarcia.com
2    David M. Medby, State Bar No. 227401
      dmedby@lawgarcia.com
3    Melissa P. Fuller, State Bar No. 216275
      mfuller@lawgarcia.com
4    THE GARCIA LAW FIRM
      One World Trade Center, Suite 1950
5    Long Beach, California 90831
      Telephone: (562) 216-5270
6    Facsimile: (562) 216-5271

7    Bruce L. Simon, State Bar No. 96241
      bsimon@psswplaw.com
8    Esther L. Klisura, State Bar No. 221171
      eklisura@psswplaw.com
9    PEARSON, SIMON, SOTER, WARSHAW & PENNY LLP
      44 Montgomery Street, Suite 1200
10   San Francisco, California 94104
      Telephone: (415) 433-9000
11   Facsimile: (415) 433-9008

12   *Co-Lead Counsel for Plaintiffs and the Putative Class*
     *[Additional Counsel for Plaintiffs listed on signature page]*
13

14            **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

16              **(WESTERN DIVISION)**

17

| | |
|---|---|
| In re: | CASE NO. 2:07-ML-01822-DSF-E |
| Bluetooth Headset Products Liability Litigation | **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiffs Lori Raines, Betsee Finlee, Michael Jones, Amy Karle, Evan Nass, Aleksandra Spevacek, Betty Dumas, and Kimberly Ryan on their own behalf and as representatives of a putative class of similarly situated parties, complain and allege on information and belief as follows:

## INTRODUCTION

1.     This action arises from the marketing, manufacture, and distribution of devices commonly known as "Bluetooth headsets," which permit the use of a mobile phone without the necessity of holding the phone next to the face and without the necessity of wires connecting the phone to the Headset.

2.     Bluetooth technology is a short-range wireless radio technology that allows electronic devices to connect to another. The term "Bluetooth" refers to a standardized wireless specification that was established in September 1998 by a trade association, and has since been adopted by many electronics manufacturers in different industries.

3.     The first Bluetooth enabled mobile phone hit the market in 2000. By 2001, each of the Defendants had Bluetooth enabled products on the market. Since then, use of Bluetooth Headsets has become increasingly popular among consumers because of the ease of use and convenience associated with the technology. Over 100 million Bluetooth Headsets have been sold since they first hit the market.

4.     As used herein, "Bluetooth Headsets" and "Headsets" refer to any and all headsets manufactured by Defendants that are equipped with Bluetooth technology.

5.     Bluetooth Headsets produce sounds exceeding the scientifically identified danger threshold of 85 decibels, with sound often peaking in excess of 100 decibels. Exposure to sounds emitted from the Headsets at these decibel levels over an extended period of time, can cause serious and permanent hearing loss. Even with normal and intended use, Defendants' Headsets put users at risk of hearing loss.

6.     Defendants market their Headsets with affirmative representations about

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

audio performance, comfort, security, and extended "talk times." Defendants know, but fail to disclose, the risk of noise-induced hearing loss that is associated with use of their Headsets.  This fact would be material to any reasonable consumer who purchased these Headsets, particularly in light of Defendants' statements about long "talk times."

7.     Just as a car that can be driven safely only a few minutes at a time has less value than a car that can safely be driven for hours at a time, the value of a Bluetooth Headset is greatly diminished by the risk of hearing loss that is present with extended use of the product.  Members of the proposed class have sustained monetary injury because they have purchased products that cannot safely be used in the intended and advertised manner.

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).  This is a putative class action involving more than 100 class members, at least one member of the putative class is a citizen of a state different from one defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

9.     Each Defendant conducted business in this District and is subject to personal jurisdiction.  Accordingly, venue in this District is proper under 28 U.S.C. § 1391.

## PARTIES

A.     **Plaintiffs**

10.     Plaintiff Lori Raines is a resident of the County of Los Angeles, California who purchased a Plantronics Bluetooth Headset (model number Explorer 320) in July 2006.  Plaintiff Raines has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class A, defined below.

11.     Plaintiff Betsee Finlee is a resident of Los Angeles County, California

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

who purchased a Jabra-brand Bluetooth Headset (model number BT500) in July 2006. Plaintiff Finlee has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class B, defined below.

12.     Plaintiff Michael Jones is a resident of Los Angeles County, California who purchased two Motorola Bluetooth Headsets (model numbers HS810 and H500) in February and May 2005. Plaintiff Jones has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class C, defined below.

13.     Plaintiff Amy Karle is a resident of Los Angeles County, California who purchased a Motorola Bluetooth Headset (model number H500) in May 2006. Plaintiff Karle has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class C, defined below.

14.     Plaintiff Evan Nass is a resident of the County of New York, New York who purchased a Motorola Bluetooth Headset (model number HS850) in May 2005. Plaintiff Nass has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class D, defined below.

15.     Plaintiff Aleksandra Spevacek is a resident of Cook County, Illinois who purchased a Motorola Bluetooth Headset (model number H500) in November 2005. Plaintiff Spevacek has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class D, defined below.

16.     Plaintiff Betty Dumas is a resident of Bowie County, Texas who purchased a Motorola Bluetooth Headset (model number HS820) in December 2005. Plaintiff Dumas has suffered monetary damage as a result of the conduct alleged herein and brings this action on behalf of putative Sub-Class D, defined below.

17.     Plaintiff Kimberly Ryan is a resident of Grant County, Kentucky who purchased a Motorola Bluetooth Headset (model HS820) in March 2006. Plaintiff

770848.1

1   Ryan has suffered monetary damage as a result of the conduct alleged herein and

2   brings this action on behalf of putative Sub-Class D, defined below.

3   **B.     Defendants**

4   18.     Defendant Plantronics, Inc. ("Plantronics") is a Delaware Corporation

5   with its principal place of business in California.  Plantronics maintains its corporate

6   headquarters and principal executive offices in Santa Cruz, California.  Plantronics

7   employs engineering, marketing, information technology, finance, operations, quality

8   assistance, and technical assistance personnel in its Santa Cruz headquarters.

9   Plantronics is authorized to do business in California, has sufficient minimum

10   contacts with California, and intentionally avails itself of the markets in California

11   through the promotion, marketing and sale of its products in California, to render the

12   exercise of jurisdiction by this Court permissible under traditional notions of fair play

13   and substantial justice.

14   19.     Defendant GN Netcom, Inc. manufacturers, distributes, and markets

15   Bluetooth Headsets sold under the "Jabra" brand.  GN Netcom, Inc. is the successor

16   in interest to Jabra Corporation, a San Diego, California based company that

17   was purchased by GN Netcom's foreign parent company in 2000.  GN Netcom

18   maintained its corporate headquarters and operations in San Diego, including

19   engineering and marketing functions, up until at least May, 2004.  Thereafter, GN

20   Netcom moved its operations to Illinois, then again to its current offices in New

21   Hampshire.  As used herein, "Jabra" refers to GN Netcom and all predecessor

22   entities.

23   20.     Defendant Motorola, Inc. ("Motorola") is a Delaware Corporation with

24   its principal place of business in Schaumburg, Illinois.  Motorola is authorized to do

25   business in California, has sufficient minimum contacts with California, and

26   intentionally avails itself of the markets in California through the promotion,

27   marketing and sale of its products in California, to render the exercise of jurisdiction

28   by this Court permissible under traditional notions of fair play and substantial justice.

## COMMON FACTUAL ALLEGATIONS

**A.    The Popularity of Bluetooth Headsets**

21.    More than 100 million Bluetooth Headsets have been sold to date, and their use is becoming increasingly popular still.  According to the Insight Research Corporation, "[a]s users become more used to the convenience of cellular, long distance and local usage is shifting from wireline to cellular.  The average wireline residential toll minutes of use ("MOUs") have been dropping at a compounded rate of 15 percent since 2000, while wireless interstate MOUs per user grew at a compounded rate of nearly 40 percent during the same period.  According to one FCC study, on the wireless side, the percentage of interstate residential minutes has increased from 16 percent to 26 percent of all wireless minutes."  *See* The Insight Research Corporation, *Fixed Mobile Convergence: Single Phone Solutions for Wireless, Wireline, and VoIP Convergence 2005-2011* (September 2005), available at www.insight-corp.com/reports/fixmobcon.asp.

22.    As more people switch from using landlines to using mobile phones in order to accommodate their telecommunication needs, consumers are spending more hours per day on mobile phones.  Some consumers have gotten rid of landlines entirely in favor of mobile phones.

23.    The use of Bluetooth Headsets has become almost a necessity in jurisdictions that have passed laws against the use of handheld phones while driving.  New York, New Jersey, Connecticut, Washington, the District of Columbia, and most recently California, have all passed such laws.

24.    In addition, Bluetooth Headsets can be used to listen to music or television downloaded onto mobile phones.  Because of these new uses for the mobile phone, the time over which the Headsets are used is increased significantly.

25.    Despite their popularity, Bluetooth Headsets are not cheap. Defendants' Headsets generally retail between $70 and $150 each.

///

**B.      The Dangers of Bluetooth Headsets**

26.      As explained by the National Institute on Deafness and Other Communication Disorders ("NIDOCD"), hearing depends on a series of events that change sound waves into electrical signals that the auditory nerve carries to the brain. Sound waves enter the outer ear and travel through the ear canal, which leads to the eardrum. The eardrum vibrates from incoming sound and then sends the vibrations to three bones in the middle ear, the malleus, incus, and stapes. These bones then amplify the sound and send the vibrations to the inner ear, or cochlea. The vibrations cause fluid inside the cochlea to ripple and travel in waves along the basilar membrane. Hair cells sit atop the basilar membrane. The motion causes bristles, or stereocillia, atop the hair cells to bump against another overlying membrane. As the bristles move, pore-like channels on their surface open, allowing chemicals that generate sound to rush in. The auditory nerve carries these signals to the brain, which translates it into sound recognizable by humans. *See* NIDOCD, *Noise-Induced Hearing Loss* (May 2007), available at www.nidcd.nih.gov/health/hearing/noise.asp.

27.      Noise-induced hearing loss is the slow loss of hearing caused by unsafe levels of noise. Hearing loss happens when unsafe levels of noise hurt the hair cells in the inner ear. Noise-induced hearing loss is nerve deafness which lasts forever. There is no treatment, no medicine, no surgery, and no device which can correct hearing once damaged by noise.

28.      Dangerous Decibels, a public health partnership for the prevention of noise-induced hearing loss, advises the public that "[a] dangerous sound is anything that is 85 dB (sound pressure level - SPL) or higher." *See* Dangerous Decibels, *Information Center: Hearing Loss* (June 22, 2007), available at www.dangerousdecibels.org/hearingloss.cfm. The organization further explains that "[o]f the roughly 40 million Americans suffering from hearing loss, 10 million can be attributed to noise-induced hearing loss (NIHL). NIHL can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness

1   levels over an extended period of time." *Id.*

2       29.   Exposure to a time weighted average decibel level by itself can cause

3   harm.  The National Institute for Occupational Safety and Health ("NIOSH")

4   contends that exposure to sound averaging at 85 decibels for more than 8 hours is

5   hazardous. *See* NIOSH, *Criteria for a Recommended Standard: Occupational Noise*

6   *Exposure* (June 1998), available at www.dangerousdecibels.org/hearingloss.cfm.

7       30.   According to NIOSH, each three decibel volume increase reduces the

8   safe exposure time by half, which reflects the logarithmic nature of the decibel scale.

9   In other words, if a headset set on the higher volume level produces decibel levels of

10   91 decibels, noise-induced hearing loss statistically develops if the headset is used for

11   more than two hours a day.  At 94 decibels, noise-induced hearing loss statistically

12   develops if the headset is used for more than one hour a day.  At 103 decibels, noise-

13   induced hearing loss statistically develops if the headset is used for more than 7 ½

14   minutes per day.

15       31.   Noise-induced hearing loss can happen gradually over time and does not

16   cause pain.  Consequently, many people are unaware that noise-induced hearing loss

17   is occurring until it is too late.  Because noise-induced hearing loss is an insidiously

18   developing hearing impairment, damage occurs prior to the point at which it is

19   perceived.

20       32.   Noise-induced hearing loss can also result because an individual has

21   become accustomed to a particular sound level.  As the individual gradually suffers

22   hearing loss, in an effort to compensate for the decrease in ability to hear, the

23   individual unwittingly increases the volume of a device in order to hear the sound

24   produced and thereby compounds the injury.

25       33.   Defendants' Bluetooth Headsets produce sound directly into the ear

26   canal exceeding 85 decibels, with sound often peaking above 100 decibels.  For

27   example, in a test recently performed by the American Speech-Hearing-Language

28   Association ("ASHLA"), Motorola's H700 Headset produced decibel levels of up to

106 decibels. *See* ASHLA, *Popular Technology Unpopular with Ear's Hair Cells* (February 28, 2006), available at www.asha.org/about/news/2006/techdamage.htm.

34.     According to the standards promulgated by NIOSH and Dangerous Decibels, a person statistically develops noise-induced hearing loss if exposed to sounds over 100 decibels for between only 3 and 4 minutes a day. Defendants, however, have each marketed their Headsets as having "talk times" of multiple hours.

35.     Bluetooth Headsets have no mechanism that quantifies the noise output levels or signals when the decibel levels exceed safe ranges. Consequently, there is no way for a consumer who wants to limit the noise output to a certain decibel level to do so reliably. That is, because of the products' design, a consumer cannot determine, without resorting to scientific testing, the decibel level of the sound being emitted from the Headset.

36.     Because Bluetooth Headsets transmit sound to only one ear, extraneous sound from the environment is simultaneously being heard by the Headset user from the other ear. Such ambient sound makes it difficult for the Headset user to isolate and hear the sound being transmitted over the Headset. The one ear design of the Headset thus requires the user to maximize the volume of the Headset in order to overcome the extraneous noise being heard in the other ear.

37.     The in-ear or "ear bud" style Bluetooth Headsets that sit in the ear, as opposed to on the ear, are particularly dangerous to consumers because of their close proximity to the ear canal. Each of the Defendants produces in-ear Bluetooth Headsets. Examples of these in-ear Bluetooth Headsets include Plantronic's Discovery 610, Jabra's BT500, and Motorola's H9 Miniblue.

**C.     Defendants' Knowledge of the Dangers of Bluetooth Headsets**

38.     Each of the Defendants conducted scientific tests to determine the noise levels emitted by their Headsets. These tests demonstrated that the Headsets are capable of emitting noise above 85 decibels.

39.     Other manufacturers of audio headphone devices, such as Apple with

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

respect to its iPod music player and headphones, include a warning so that consumers are aware of the potential for hearing damage. For example, the iPod is sold with the following warning:

> Avoid Hearing Damage Warning: Permanent hearing loss may occur if earphones or headphones are used at high volume. You can adapt over time to a higher volume of sound, which may sound normal but can be damaging to your hearing. Set your iPod's volume to a safe level before that happens. If you experience ringing in your ears, reduce the volume or discontinue use of your iPod.

40.     The Headsets manufactured, distributed, and sold by Defendants contain no such warnings regarding the actual and avoidable risks of hearing loss associated with the use of the Headsets, and thus fail to follow industry standards for headset devices.

**D.     Defendants' Marketing of Bluetooth Headsets**

41.     As is the custom and practice of most companies, each Defendant coordinates its marketing efforts to send a consistent message about the desirability, character, uses, and benefits of its own Bluetooth Headsets. Each Defendant's marketing efforts include newspapers advertisements, internet advertisements, in-store displays, and product packaging.

42.     On the respective packaging of these Bluetooth Headsets, Defendants make representations regarding audio performance, comfort, and safety. They also make representations regarding the "talk times" for each of their Headsets. The advertised "talk times" range anywhere from 3 hours to as many as 17 hours.

43.     Completely absent from Defendants' advertisements and product packaging is any mention of the serious risk of noise-induced hearing loss.

44.     Average consumers have no way to measure the noise levels being emitted from Defendants' Headsets, and thus no way to know the risks associated with using the Headsets for extended periods of time.

45.     Plaintiffs have each purchased and used Headsets manufactured and distributed by one of the Defendants. None of the Plaintiffs were aware that the

1   Headsets were emitting sounds in excess of safe decibel levels.

2       46.    Defendants' misleading statements about the length of time that headsets

3   can be used, and the absence of warnings of the risk of noise-induced hearing loss,

4   substantially influenced Plaintiffs' decision to purchase Bluetooth Headsets from

5   Defendants.

6       47.    The design, manufacture, distribution and sale by Defendants of the

7   Headsets without adequate warning labels that the Headsets produce decibel levels

8   harmful to the human ear constitutes unfair business practices.  As a result of

9   Defendants' conduct, numerous consumers have paid for an unsafe or unusable

10   product which they believed could be safely used for extended periods of time.

11       48.    Millions of consumers have had their hearing put at risk by Defendants'

12   conduct.  Plaintiffs and the Class members detrimentally relied upon the affirmative

13   misrepresentations, omissions and concealments made by Defendants regarding the

14   permissible use of the product.  Plaintiffs and the Class members further relied upon

15   Defendants' skill and judgment to furnish suitable goods which would not cause harm

16   to the consumer, and to warn the consumer of any information known by Defendants,

17   relating to the safe operation of the product.

18       49.    Plaintiffs seek damages, on behalf of themselves and the Classes as

19   defined below, injunctive relief, product repair, restitution, disgorgement, and all

20   other appropriate relief.

21       50.    In marketing and advertising Bluetooth Headsets, Defendants omitted

22   material information about the risk of hearing loss associated with the Headsets.

23   Plaintiffs and the members of the classes thus: (1) cannot safely use the Headsets for

24   the length of time for which the Headsets were advertised as usable; or (2) must turn

25   the volume of the Headsets so low as to render the headsets unusable in most

26   environments, thereby drastically limiting and/or eliminating the usability of the

27   product.

28       51.    Since learning of the problems with the product as described herein,

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

1   each of the Plaintiffs have each stopped using the Headsets completely, or have

2   limited their use of the Headsets. Plaintiffs, and the Class Members, have thus lost

3   money as a result of the wrongful acts of Defendants.

4   ## PLANTRONICS' WRONGFUL CONDUCT

5   52.   Plantronics has manufactured and distributed many different models of

6   Bluetooth Headsets including, but not limited to, Discovery 655, Discovery 645,

7   Discovery 640, Discovery 640E, Voyager 510, Explorer 350, Explorer 340, Explorer

8   330, and Explorer 320. In their advertisements and product packaging of Bluetooth

9   Headsets, Plantronics makes affirmative representations regarding audio

10   performance, comfort, safety, and "talk times." However, the packaging lacks any

11   warnings regarding the noise-induced hearing loss, a condition which has no cure or

12   treatment, which can be expected to result from use of the Plantronics Headsets in

13   most environments if the Headsets are used for the advertised "talk times."

14   53.   Plantronics' packaging for their Headsets states that the Headsets can be

15   used for "extended talk time." The various models indicate talk time of 3 hours, 6

16   hours, 8 hours, 9 hours, 10 hours, and even 15 hours. However, the representations

17   as to permissible talk times are misleading because a consumer cannot safely use

18   Plantronics' Headsets for the talk times represented. Plaintiffs and the Class

19   members were substantially influenced by Plantronics' representations regarding

20   "extended talk times" in determining whether to purchase Plantronics' Headsets at the

21   high price charged for the devices.

22   54.   Plantronics sold its Headsets with a booklet setting forth "important

23   safety and operational information" relating to use of the Headsets. However,

24   Plantronics omitted and concealed from consumers any safety information pertaining

25   to the Headsets' propensity for causing noise-induced hearing loss. Defendants also

26   omitted and concealed from the consuming public information advising that the

27   Headsets produced noise at volumes exceeding 85 decibels, and even exceeding 100

28   decibels.

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

55.     Despite the information provided by Plantronics in its "safety booklet," Plantronics fails to divulge the decibel output of its Headsets or the potential for noise-induced hearing loss if the Headsets are used at a loud setting for an extended period of time.  The exclusion of such information from the safety information in the booklet wrongly implies that the Headsets are safe at loud volumes for the hours of talk time permitted by the Headset.  The safety book falsely represents to consumers that the "important" information provided in the booklet permits the "safe and efficient operation" of the Headset.  This representation is false, as important safety information has been excluded from the booklet.

56.     Plantronics affirmatively represented that the Headsets are warranted to be free from "defects in materials and workmanship."  This representation was and is false.  The Headsets are defective and cannot safely be used for their intended purpose.  The materials and workmanship of the product cause the product to produce unsafe decibel levels under normal consumer usage.

## JABRA'S WRONGFUL CONDUCT

57.     Jabra has manufactured and distributed many different models of Bluetooth Headsets, including, but not limited to, the JX10, BT160, BT500, BT800, BT250v, BT350, and BT150.

58.     On the packaging and marketing materials for its Headsets, Jabra has made affirmative representations regarding audio performance, comfort, and safety.  For example, Jabra's written advertisements for its BT500 Bluetooth Headset (the model purchased by Plaintiff Betsee Finlee) states "Total comfort," "High performance," and "a high-performance mobile headset that looks and feels great."

59.     In addition, Jabra has made affirmative representations in its packaging and marketing materials regarding "talk times."  However, Jabra has completely omitted any warnings regarding the noise-induced hearing loss, a condition which has no cure or treatment, which can be expected to result from use of the Headsets in most environments over that period of time.

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

60.     The packaging on Jabra's Headsets advises that the Headsets can be used for hours of talk time.  The various models indicate talk time of 6 hours, 8 hours, 7 hours, and even 10 hours.  However, these statements are misleading because use of a Headset at loud volumes for that number of hours, over a period of time, exposes consumers to the risk of noise-induced hearing loss.

61.     Although Jabra provides a user manual with its Headsets, which includes a section entitled "Certification and Safety Approvals," Jabra omits from the manual any information as to the decibel output of the device and the potential for noise-induced hearing loss if the Headset is used at a loud setting for more than a safe number of hours per day.  The exclusion of such information from the user manual wrongly implies that the Headset is safe at its maximum volume for the hours of talk time permitted by the Headset.

## MOTOROLA'S WRONGFUL CONDUCT

62.     Motorola has manufactured and distributed many different models of Bluetooth headsets, including, but not limited to, the HS830, H3, H300, H500, H605, H700, HS805, HS810, HS815, HS820, HS850, and HT820.

63.     The advertisements and packaging for Motorola Headsets make affirmative representations regarding audio performance, comfort, security, and "talk times."  The various models advertise on the front of the packaging that the product permits talk time of 3.5 hours, 6 hours, 8 hours, 10 hours, and even 17 hours.  However, the representations as to permissible talk times are misleading because a consumer cannot safely use the Headsets for the talk times represented.  Rather, Motorola's Headsets can only be safely used for minutes per day, thereby drastically limiting the usability of the product.

64.     Motorola omitted from its advertisements and packaging any warning about the risk of noise-induced hearing loss that is associated with extended use of its Headsets.  This is a material fact for any reasonable consumer looking to purchase a Bluetooth Headset, and Plaintiffs and the Class members were substantially

1    influenced by Motorola's concealment.

2        65.    Motorola sold the Motorola Headsets with a booklet setting forth safety

3 information relating to use of the Headsets. However, Defendant omitted and

4 concealed from consumers any safety information pertaining to the Headsets'

5 propensity for causing noise-induced hearing loss. Defendant also omitted and

6 concealed from the consuming public information advising that the Headsets

7 produced noise at decibel levels exceeding 85 decibels, and even exceeding 100

8 decibels.

9        66.    Motorola manufactures and sells the Motorola Headsets without any

10 warning as to the decibel levels the devices emit. Motorola sells its headsets with a

11 booklet entitled "Important Safety and Legal Information." The booklet informs the

12 consumer in bold print that it provides **IMPORTANT INFORMATION ON**

13 **SAFE AND EFFICIENT OPERATION. READ THIS INFORMATION**

14 **BEFORE USING YOUR DEVICE**." The booklet contains three pages of "Safety

15 Information." The booklet also includes a four-page section on "Wireless Phone

16 Safety Tips."

17        67.    Despite the seven pages of material devoted to the safe use of its

18 Headsets, Motorola fails to divulge the decibel output of the device and the potential

19 for noise-induced hearing loss if the Headset is used at a loud setting for more than a

20 safe number of hours per day. The exclusion of such information from the safety

21 information and tips in the booklet wrongly implies that the Headset is safe at its

22 maximum volume for the hours of talk time permitted by the Headset. The safety

23 book falsely represents to consumers that the "important" information provided in the

24 booklet permits the "safe and efficient operation" of the Headset. This representation

25 is false since important safety information has been excluded from the booklet.

26 Plaintiffs and the Class members relied upon such misrepresentations, omissions and

27 concealments to their detriment.

28        68.    Motorola affirmatively represented in their marketing materials that the

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

Headsets are "free from defects in materials and workmanship under normal consumer usage. . . ." This representation was and is false. The Headsets are defective and cannot safely be used for their intended purpose. The materials and workmanship of the product cause the product to produce unsafe decibel levels under normal consumer usage.

## CLASS ACTION ALLEGATIONS

69.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring these consolidated actions on behalf of themselves and the following sub-classes:

Plaintiff Sub-Class A:
Nationwide Sub-Class Against Defendant Plantronics.
All persons or entities in the United States who, between June 30, 2002 and the present, purchased a Bluetooth Headset manufactured by Defendant Plantronics. The class does not include: (a) any officers, directors or employees of Plantronics; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); or (c) any juror selected to hear this case.

Plaintiff Sub-Class B:
Nationwide Sub-Class Against Defendant Jabra.
All persons or entities in the United States who, between June 30, 2002 and the present, purchased a Bluetooth Headset manufactured by Defendant Jabra. The class does not include: (a) any officers, directors or employees of Jabra; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); or (c) any juror selected to hear this case.

Plaintiff Sub-Class C:
California Sub-Class Against Defendant Motorola.
All persons or entities who reside in California and who, between June 30, 2002 and the present, purchased a Bluetooth Headset manufactured by Defendant Motorola. The class does not include: (a) any officers, directors or employees of Motorola; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); or (c) any juror selected to hear this case.

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

Plaintiff Sub-Class D:
Forty-Nine State Sub-Class Against Defendant Motorola.
All persons or entities who reside in the United States but outside California, and who, between October 16, 2003 and the present, purchased a Bluetooth Headset device manufactured by Defendant Motorola. The class does not include: (a) any officers, directors or employees of Motorola; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); or (c) any juror selected to hear this case.

70.   This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

   a.   Each Defendant has sold millions of Bluetooth Headsets throughout the United States during the relevant time period.  Therefore, joinder of all Class members is impracticable, and class treatment is a superior method for fairly and efficiently adjudicating this controversy.

   b.   Plaintiffs' claims are typical of the claims of the members of their respective classes because each Plaintiff purchased one or more Bluetooth Headsets manufactured, sold, marketed, or distributed by Defendants within the class period.  Each of the Defendants made uniform concealments and representations to the Plaintiffs and respective Class members who purchased Headsets.  Accordingly, by proving their own claims, Plaintiffs will presumptively prove the claims of the members of their respective Classes.

   c.   Numerous questions of law and fact are uniform and common to the classes.  These uniform and common questions of law and fact predominate over any individual issues.  The uniform and common questions of law and fact which predominate over individual issues include:

      i.   Whether Defendants, and each of them, knew of the risk of noise-induced hearing loss presented by their Bluetooth Headsets;

770848.1                                17
Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

       ii.    Whether Defendants, and each of them, concealed the risk of noise-induced hearing loss from consumers;

       iii.   Whether the risk of noise-induced hearing loss is a material fact to purchasers of Bluetooth Headsets; and

       iv.   The nature and extent of damages to which Plaintiffs and members of the proposed classes are entitled based on the conduct of Defendants.

d.    Plaintiffs can and will fairly and adequately represent and protect the interests of the members of their respective Classes, and Plaintiffs and members of their respective Classes have no conflicts of interests.

e.    Plaintiffs have retained attorneys experienced and competent in complex class actions and consumer protection litigation.

f.    Defendants each engaged in a course of conduct involving similar or identical unsafe designs, concealments, misrepresentations, and statutory violations common to Plaintiffs and the members of their respective Classes. Individual questions, if any, pale by comparison to the numerous common questions that dominate this litigation.

g.    The claims at issue herein seek damages for economic injury and do not seek damages for any physical injury that may have been sustained by Class members. Specifically excluded from the relief sought in this proceeding are damages for personal injury claims. Thus, individualized determination as to causation related to bodily injury already suffered will not be required. The economic damages sustained by the members of the classes arise from a common nucleus of operative facts involving the respective Defendants' conduct.

h.    This class action is superior to the alternatives, if any, for the fair and efficient adjudication of these controversies. The Classes are readily definable. Certification of these class actions will enable

claims to be handled in an orderly and expeditious manner. Certification of these class actions will save time and expense and will ensure uniformity of decisions.

i.     The relief sought by each individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis.  Even if the Class members themselves could afford such individual litigation, the court system could not.

j.     The members of the proposed Classes have been monetarily damaged and suffered injury in fact as a result of Defendants' misconduct in that each member purchased a Headset which the member would not have purchased if the true facts as to the product's safety and limitations had been revealed by Defendants.

k.     Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court.  Given the similar nature of the Class  members'  claims and the law applicable thereto, the Court and the parties will easily be able to manage the class actions in this MDL.

l.     Prosecution of separate actions by individual Class members will create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

m.     Injunctive relief is appropriate as to each of the Classes as a whole because Defendants have acted or refused to act on grounds generally

applicable to the Classes.

71.   Application of California law to the putative nationwide Sub-Class A is proper because Defendant Plantronics markets, advertises and sells its Bluetooth Headsets in and from the State of California.   Thus, a substantial portion of the alleged wrongful conduct emanates from this state.   In addition, California's public policy favors the protection of consumers, and California has a strong interest in deterring wrongful conduct that occurs within its borders.   Thus, application of California law is not arbitrary or unfair as it relates to Sub-Class A.

72.   Application of California law to the putative nationwide Sub-Class B is proper because Defendant Jabra marketed, advertised, and sold its Bluetooth Headsets in and from the State of California.   Thus, a substantial portion of the alleged wrongful conduct emanates from this state.   In addition, California's public policy favors the protection of consumers, and California has a strong interest in deterring wrongful conduct that occurs within its borders.   Thus, application of California law is not arbitrary or unfair as it relates to Sub-Class B.

73.   Application of California law to the putative California Sub-Class C is proper because Defendant Motorola conducts business in this state and has purposely availed itself to the markets in this state by promoting, marketing, and selling its Bluetooth Headsets in California. All the members of the putative Sub-Class C are, by definition, residents of California.   California's public policy favors the protection of consumers, and California has a strong interest in protecting its citizens from wrongful conduct. Thus, application of California law is not arbitrary or unfair as it relates to Sub-Class C.

74.   Application of Illinois law to the putative Sub-Class D is proper because Defendant Motorola markets, advertises and sells its Bluetooth Headsets in and from the State of Illinois.   Thus, a substantial portion of the alleged wrongful conduct emanates from Illinois, and Illinois has a strong interest in deterring wrongful conduct that occurs within its borders.   Thus, application of Illinois law is not

1    arbitrary or unfair as it relates to Sub-Class D.

2

3                          **FIRST CAUSE OF ACTION**
        **Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.***
4                    **(Brought on Behalf of Sub-Classes A, B, and C)**

5         75.    Plaintiffs incorporate by reference all the above allegations as if fully set

6    forth herein.

7         76.    Plaintiffs Lori Raines, Betsee Finlee, Michael Jones, Amy Karle and

8    members of Sub-Classes A, B, and C are individuals who have purchased Bluetooth

9    Headsets for personal, family or household purposes.

10        77.    Through their uniform omissions, and through their misleading

11   statements about "talk time," Defendants have represented that their Bluetooth

12   Headsets have particular characteristics, uses, and benefits that they do not have, in

13   violation of California Civil Code § 1770(a)(5).  Defendants have also represented

14   that the Bluetooth Headsets had a particular standard or quality that they do not have

15   in violation of California Civil Code § 1770(a)(7).

16        78.    Defendants' violations of California Civil Code § 1770 present a

17   continuing threat to members of the public in that Defendants are continuing to

18   engage in the practices alleged and will not cease until an injunction is issued by this

19   Court.

20        79.    By letters dated July 21, 2006, August 28, 2006, and October 2, 2006,

21   Plaintiffs and/or members of the Classes provided Defendants with notice and

22   opportunity to cure its violations, and each Defendant has failed to do so.

23        80.    As a result of Defendants' conduct alleged herein, Plaintiffs and the

24   Classes should be awarded actual damages in the amount paid for the product, and

25   restitution pursuant to California Civil Code § 1780(a).

26        81.    Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to

27   California Civil Code § 1780(d).

28

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

## SECOND CAUSE OF ACTION
### Untrue and Misleading Advertising, Cal. Bus. & Prof. Code § 17500 *et seq.*
### (Brought on Behalf of Sub-Classes A, B, and C)

82.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

83.     Plaintiffs Lori Raines, Betsee Finlee, Michael Jones, and Amy Karle bring this cause of action on behalf of themselves, and on behalf of Sub-Classes A, B, and C.  Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' violations of California Business and Professions Code § 17500, *et seq.*

84.     Defendants used various forms of advertising media to advertise, call attention to, or give publicity to, the sale of Bluetooth Headsets.   These advertisements and practices uniformly omitted material information about the safety and limited usefulness of Bluetooth Headsets.  Defendants' omissions made other representations made by them, such as statements about "talk time," false and misleading.

85.     Plaintiffs and members of the Classes were substantially influenced by Defendants' advertisements and practices.

86.     Plaintiffs, on behalf of themselves and on behalf of the Classes, seek restitution, injunctive relief and all other relief allowable under California Business and Professions Code § 17535.

## THIRD CAUSE OF ACTION
### Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*
### *(Brought on Behalf of Sub-Classes A, B, and C)*

87.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

88.     Plaintiffs Lori Raines, Betsee Finlee, Michael Jones, and Amy Karle bring this cause of action on behalf of themselves and on behalf of Sub-Classes A, B,

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

and C.

89.     Defendants have engaged in unfair competition within the meaning of California Business and Professions Code § 17200 *et seq*. because Defendants' uniform omissions are misleading and unfair to consumers as herein alleged.

90.     Defendants' wrongful business acts constituted, and constitute, a continuing course of unfair competition because Defendants are marketing Bluetooth Headsets in a manner that is likely to mislead the public, and Plaintiffs suffered actual harm as a result.

91.     Defendants' business practices are unlawful because the conduct constitutes false marketing and advertising as herein alleged.

92.     Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' unfair business acts because they purchased products that are not safe for their intended and advertised use.

93.     Plaintiffs are informed and believe that all of the conduct alleged herein occurs and continues to occur in Defendants' business.  The conduct of Defendants is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

94.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and members of the Classes, interest in all money which has been acquired by Defendants' unfair practices as provided in California Business and Professions Code § 17203.

## FOURTH CAUSE OF ACTION
### Deceptive Trade Practices, 815 ILCS 510
### (Brought on Behalf of Sub-Class D Against Motorola, Inc.)

95.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

96.     Plaintiffs Evan Nass, Aleksandra Spevacek, Betty Dumas, and Kimberly Ryan bring this cause of action on behalf of themselves and Sub-Class D.  Plaintiffs

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

have suffered injury in fact and lost money as a result of Defendant Motorola's violations of the Uniform Deceptive Trade Practices Act, 815 ILCS 510.

97.     Through its uniform omissions, and through its misleading statements about "talk time," Defendant Motorola has represented that its Bluetooth Headsets have uses and qualities that are false and create a likelihood of confusion or misunderstanding.  Defendant's omissions and representations were made to induce the public to purchase the Headsets.

98.     Defendant was aware of the risks associated with use of its Bluetooth Headsets but did not disclose this material information to consumers.  It was also aware, or by the exercise of reasonable care should have been aware, that its representations about "talk time" were misleading.

99.     Plaintiffs have been harmed and on behalf of themselves and members of the Class, they seek restitution and all other relief allowable under Uniform Deceptive Trade Practices Act, 815 ILCS 510.

## FIFTH CAUSE OF ACTION
### Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505
### (Brought on Behalf of Subclass D Against Motorola, Inc.)

100.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

101.    Plaintiffs Evan Nass, Aleksandra Spevacek, Betty Dumas, Kimberly Ryan and members of Sub-Class D are consumers who purchased merchandise (i.e., Motorola's Bluetooth Headsets) not for resale in the ordinary course of his/her trade or business, but for his/her use or that of a member of his/her household.

102.    Through its uniform omissions, and through its misleading statements about "talk time," Defendant Motorola misrepresented the characteristics, uses, benefits, or qualities of its Bluetooth Headsets.

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

103.   Defendant Motorola intended for consumers to rely on this concealment, suppression, and omission of the increased risk of harm in the conduct of selling their Bluetooth Headsets, a decision that was formed, made and implemented in Illinois, affecting all consumers regardless of geographic location.

104.   Plaintiffs read the "talk times" advertised on Motorola Bluetooth Headset packaging prior to purchasing the product.

105.   Plaintiffs relied on the advertised "talk time" in purchasing the Headsets and were misled into believing that Motorola Bluetooth Headsets could be used safely for those "talk times."

106.   Once Plaintiffs discovered that using their respective Motorola Bluetooth Headsets in the intended and advertised manner put them at an increased risk of harm, they discontinued use of those Headsets.

107.   Plaintiffs have suffered actual economic damages in the amount of the purchase price of their Motorola Bluetooth Headset.

108.   Plaintiffs on behalf of themselves and members of Sub-Class D seek actual economic damages, punitive damages, attorneys' fees, costs of this litigation, and any other relief the court deems proper pursuant to 815 ILCS 505.

///

///

///

///

///

///

///

///

///

///

///

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and as representative of all other persons similarly situated, pray for judgment against the Defendants, as follows:

1. An Order certifying the Sub-Classes herein, and appointing Plaintiffs, and their counsel, to represent the Class;

2. An award of general damages according to proof;

3. An award of special damages according to proof;

4. An award of punitive damages in an amount sufficient to deter and make an example of Defendants;

5. An award of restitution in an amount according to proof;

6. A temporary restraining order, a preliminary injunction and a permanent injunction enjoining Defendants, and their agents, servants, employees and all persons acting under or in concert with them, to cease and desist from the following acts:

    (a) Selling, marketing, or advertising the Headsets without a detailed warning advising the consumer as to the potential for noise-induced hearing loss and the known risk of harm associated with exposure, even for brief intervals, to sound at high decibel levels;

    (b) Selling, marketing, or advertising the Headsets without a mechanism by which the user can readily and easily determine the decibel levels being emitted by the Headsets and thereby be made aware of the safe time limits (if any) for use of the Headsets at the higher volume settings;

    (c) Any other conduct which the Court determines warranted so as to prevent the commission of unfair competition by Defendants.

7. For reasonable attorneys' fees;

8. For costs incurred herein;

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

1   9.    For prejudgment interest;

2   10.   For an order of disgorgement;

3   11.   For all general, special, and equitable relief to which the Plaintiffs and

4         the members of the Class are entitled by law.

5

6   Dated: September 25, 2007            **THE GARCIA LAW FIRM**
                                         **PEARSON, SIMON, SOTER, WARSHAW**
7                                        **& PENNY LLP**

8                                        By:

9                                        Stephen M. Garcia
                                         David M. Medby
                                         Melissa P. Fuller

10

11                                       Bruce L. Simon
                                         Esther L. Klisura
12                                       Pearson, Simon, Soter, Warshaw & Penny,
                                         LLP

13                                       *Interim Co-Lead Counsel for Plaintiffs and the*
                                         *Class*

14

15                                       Steven A. Hart
                                         Scott W. Henry
16                                       Scott Vold
                                         Segal, McCambridge, Singer & Mahoney, Ltd.
17                                       Sears Tower
                                         233 S. Wacker Drive, Suite 5500
18                                       Chicago, Illinois 60606
                                         Telephone: (312) 645-7800
19                                       Facsimile: (312) 645-7711

20                                       Melissa M. Harnett
                                         Wasserman, Comden & Casselman, LLP
21                                       5567 Reseda Blvd., Suite 300
                                         Tarzana, California 91357
22                                       Telephone: (818) 705-6800
                                         Facsimile: (818) 996-8266

23                                       Michael J. Fuller
                                         McHugh Fuller Law Group, PLLC
24                                       97 Elias Whiddon Road
                                         Hattiesburg, MS 39402
25                                       Telephone: (601) 261-2220
                                         Facsimile: (601) 261-2481

26
                                         *Counsel for Plaintiffs and the Class*
27

28

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

1

## **DEMAND FOR JURY TRIAL**

2

3        Plaintiffs hereby demand a trial by jury.

4   Dated: September 25, 2007            **THE GARCIA LAW FIRM**
                                         **PEARSON, SIMON, SOTER, WARSHAW**
5                                        **& PENNY LLP**

6
                                By
7                                        Stephen M. Garcia
                                         David M. Medby
8                                        Melissa P. Fuller

9                                        Bruce L. Simon
                                         Esther L. Klisura
10                                       Pearson, Simon, Soter, Warshaw & Penny,
                                         LLP
11
                                         *Interim Co-Lead Counsel for Plaintiffs and the*
12                                       *Class*

13                                       Steven A. Hart
                                         Scott W. Henry
14                                       Scott Vold
                                         Segal, McCambridge, Singer & Mahoney, Ltd.
15                                       Sears Tower
                                         233 S. Wacker Drive, Suite 5500
16                                       Chicago, Illinois 60606
                                         Telephone: (312) 645-7800
17                                       Facsimile: (312) 645-7711

18                                       Melissa M. Harnett
                                         Wasserman, Comden & Casselman, LLP
19                                       5567 Reseda Blvd., Suite 300
                                         Tarzana, California 91357
20                                       Telephone: (818) 705-6800
                                         Facsimile: (818) 996-8266
21
                                         Michael J. Fuller
22                                       McHugh Fuller Law Group, PLLC
                                         97 Elias Whiddon Road
23                                       Hattiesburg, MS 39402
                                         Telephone: (601) 261-2220
24                                       Facsimile: (601) 261-2481

25                                       *Counsel for Plaintiffs and the Class*

26

27

28

770848.1

Second Amended Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.Second.Amended.DOC

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.   My business address is The Garcia Law Firm, One World Trade Center, Suite 1950, Long Beach, California 90831.   I am over the age of eighteen years and am not a party to the within action;

On September 25, 2007, I served the following document(s) entitled **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

## SEE ATTACHED LIST

**BY MAIL:**  By placing a true copy thereof in a sealed envelope addressed as above, and placing it for and mailing following ordinary business practices.  I am readily familiar with the firm's practice of collection and processing correspondence, pleadings and other matters for mailing with the United States Postal Service.  The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Long Beach, California, on the same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 25, 2007, at Long Beach, California.

Cyndi Sexton

**SERVICE LIST**

Mark T. Cramer
Kirkland & Ellis, LLP
777 South Figueroa Street, 39th Floor
Los Angeles, CA  90017

Terrence J. Dee
Kirkland& Ellis, LLP
200 East Randolph Drive, Suite 5900
Chicago, IL 60601

John G. Emerson
Emerson Poynter, LLP
830 Apollo Lane
Houston, TX 77058

Michael J. Fuller, Jr.
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402

Angel A. Garganta
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Melissa Meeker Harnett
Wasserman, Comden & Casselman, LLP
5567 Reseda Boulevard, Suite 330
P.O. Box 7033
Tarzana, CA 91357-7033

Scott W. Henry
Segal, McCambridge, Singer & Mahoney, Ltd.
One IBM Plaza, Suite 200
330 North Wabash Avenue
Chicago, IL 60611

James Burke McHugh
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402

Bruce L. Simon
Pearson, Simon, Soter, Warshaw & Penny
44 Montgomery Street, Suite 1200
San Francisco, CA 94104

James C, Wyly
Patton, Roberts, McWilliams & Capshaw, LLP
2900 St. Michael Drive, Suite 400
P.O. Box 6128
Texarkana, TX 75503-6128

1 | Michael L. Kelly, Esq.
Kirtland & Packard
2 | 2361 Rose Avenue, 4th Floor
El Segundo, CA 90245
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28