THEODORE H. FRANK (SBN 196332)
    tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848

Attorney for Objectors William J. Brennan, Bill Clendineng, William E. Gerken, Benjamin T. Rittgers, Henry Towsner, Scott M. Univer, and Aaron J. Walker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re:<br><br>Bluetooth Headset Products Liability Litigation | Case No. 2:07-ML-01822-DSF-E<br><br>**PUTATIVE CLASS ACTION**<br><br>**OBJECTION TO PROPOSED SETTLEMENT**<br><br>Judge:   Honorable Dale S. Fischer<br>Date:     July 6, 2009<br>Time:    1:30 p.m.<br>Courtroom: 840 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. i

INTRODUCTION ................................................................................................. 2

I. The Objectors Are Members Of The Class. ................................................... 4

II. The Settlement Is Impermissibly Self-Dealing. ............................................. 5

III. The Charitable Award Cannot Be Justified As *Cy Pres*,
    As A Benefit To The Class, Or As A Ground For Attorneys' Fees. ............ 8

IV. The Additional Warnings Are Of No Benefit To The Class. ......................... 9

V. The Lawsuit Itself Harms Class Members' Interests .................................. 12

VI. Putative Class Attorneys Are Not Entitled To Costs. ................................. 12

CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................... 5

*Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999) .................. 2

*Crawford v. Equifax Payment Services*, 201 F.3d 877 (7th Cir. 2000) ....... 2, 6, 9

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) .............................................. 5

*Farrar v. Hobby*, 506 U.S. 103 (1992) .............................................................. 12

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987) .............................. 5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................... 5

*Larkin v. Pfizer, Inc.*, 153 S.W.3d 758 (Ky. 2004) ............................................ 11

*Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ........... 8

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) ............. 5, 6, 8, 9

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .......................................... 5, 6, 7, 8

*Murray v. GMAC*, 434 F.3d 948 (7th Cir. 2006) ......................................... *passim*

*Silberblatt v. Morgan Stanley*, 2007 WL 4145403 (S.D.N.Y. Nov. 19, 2007) .... 8

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)...9

*Synfuel Tech. v. DHL Indus., Inc.*, 463 F.3d 646 (7th Cir. 2006)..............8

**Rules and Statutes**

Fed. R. Civ. Proc. 23(a)(4)..............13

Fed. R. Civ. Proc. 23(e) ..............9, 13

Fed. R. Civ. Proc. 23(h)..............9

Fed. R. Civ. Proc. 54(d)(1) ..............12

Pub.L. 109-2, § 2(a)(3)(A)..............8

**Other Authorities**

Final Rule, Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922 (Jan. 24, 2006).....11

Theodore H. Frank, *Cy Pres Settlements*, Class Action Watch, March 2008 at 1, available at http://www.fed-soc.org/publications/pubid.887/pub_detail.asp ..........9

Mark Geistfeld, *Inadequate Product Warnings and Causation*, 30 U. Mich. J.L. Reform 309, 310 (1997)..............11

Hearing Before the H. Comm. on Oversight & Gov't Reform (testimony of Randall Lutter) (May 14, 2008) ..............11

Jeffrey S. Jacobson, *Defining "Coupon" Under the Class Action Fairness Act*, Product Liability Law 360, Jan. 15, 2008..............8

Aaron Smith, "Consumers tune out FDA warnings," CNNMoney.com, Feb. 25, 2008, http://money.cnn.com/2008/02/22/news/companies/fdawarning_fatigue/index.htm ..............11

Twerski, Weinstein, Donaher & Piehler, *The Use and Abuse of Warnings in Products Liability Design Defect Litigation Comes of Age*, 61 Cornell L.Rev. 495 (1976)..............11

# INTRODUCTION

Class members William J. Brennan, Bill Clendineng, William E. Gerken, Benjamin T. Rittgers, Henry Towsner, Scott M. Univer, and Aaron J. Walker object to the approval of the proposed settlement. The Objectors believe that class action settlements that benefit no one but the attorneys hurt consumers, and that courts should use their oversight powers to prevent such extortionate settlements from occurring in the first place. These objections also serve as notice that the Objectors, through their counsel Theodore H. Frank, intends to appear at the July 6 approval hearing.

Seven law firms, representing plaintiffs in a putative class action over economic losses supposedly caused by inadequate warnings of the need for volume control in Bluetooth headsets, have negotiated an extraordinary settlement that will pay zero to the millions of class members for extinguishing their claims, yet over $800,000 to the attorneys. The non-economic benefit to the class—a $100,000 payment to charities that are neither class members nor have suffered any injury and additional warning language in manuals for future purchasers—is illusory or even counterproductive. But the representative plaintiffs seek $12,000 for themselves, several hundred times the value of the headset that they purchased. The case is a veritable poster-child for class action abuse.

In *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006), the Seventh Circuit held that a similar settlement was "untenabl[y]" beyond the pale of approval:

> This looks like the sort of settlement that we condemned in *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999), and *Crawford v. Equifax Payment Services*, 201 F.3d 877 (7th Cir. 2000), two appeals arising from the same litigation. That suit had been settled for $2,000 to the named plaintiff, $5,500 to a legal-aid society that had not been injured by the defendant's conduct, and $78,000 in legal fees. We treated the disproportion—$2,000 one class member, nothing for the rest— as proof that the class device had been used to obtain leverage

> for one person's benefit. [citations omitted] Here the proposed award is $3,000 to the representative while other class members are frozen out. The payment of $3,000 to Murray is three times the statutory maximum, while others don't get even the $100 that the Act specifies as the minimum. ...
>
> Such a settlement is untenable. We don't mean by this that all class members must receive $100; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty. [citation omitted] But if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment to Murray implies, then the failure to afford effectual relief to any other class member makes the deal look like a sellout.

The Bluetooth settlement is even worse than the settlement criticized in *Murray* as "untenable." There was one class representative in *Murray* who received $3,000, three times maximum possible statutory damages; here, there are nine class representatives seeking a total of $12,000 over the purchase of a few hundred dollars worth of headsets without any indication of personal injury. In *Murray*, the 1.2 million unnamed class members were entitled to split a fund of $947,000; here, many more class members will end up with zero. And to top it all off, the Putative Class Attorneys are seeking attorneys fees twice as high as those in *Murray*.

There are two possibilities. The Putative Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Putative Class Attorneys' actions should be deterred, rather than rewarded; the court should not award attorneys' fees. If Rule 23(e)(2) is to have any teeth whatsoever, this settlement must be rejected; it is hard to imagine another settlement result under the Class Action Fairness Act that is more self-serving of the Putative Class Attorneys.

## I. The Objectors Are Members Of The Class.

William J. Brennan (10 Tunstall Road, Scarsdale, NY 10583, (917) 435-9315) purchased a Motorola H700 Bluetooth headset in the spring of 2008.

Bill Clendineng (1002 Raymond Street, Plainfield, IN 46168, (317) 341-1005) purchased a Plantronics e220 Bluetooth headset on or about November 2008 from Wal-Mart.

William E. Gerken (824 S. Courson Drive, Anaheim, CA 92804-3033, (714) 761-8883) purchased two Plantronics Voyager 510 Bluetooth headsets on or about April 1, 2008, from Amazon.com.

Benjamin T. Rittgers (1105 1/2 6th Street Apt. 3, Nevada, IA 50201, (515) 339-0721) purchased a Jabra BT160 on or about August 2006 from the T-Mobile store in the Valley West Mall in West Des Moines, Iowa. The Jabra BT160 is a Bluetooth headset manufactured by GN.

Henry Towsner (Department of Mathematics, University of California, Los Angeles, Box 951555, Los Angeles, CA 90095-1555, (617) 276-2300) purchased a Plantronics Explorer 220 Bluetooth headset on or about July 26, 2008, from the Radio Shack at 1334 Beacon St., Brookline, MA.

Scott M. Univer (135 West 50th Street, 13th Floor, New York, NY 10020, (212)

375-6600) purchased a Jabra JX10 on or about 2007. The Jabra JX10 is a Bluetooth headset manufactured by GN.

Aaron J. Walker (7705 Random Run Ln, #103, Falls Church, Virginia 22042, (703) 216-0455) purchased a Jabra BT2040 on or about December 2008 or January 2009. The Jabra BT2040 is a Bluetooth headset manufactured by GN.

The putative settlement class is defined as "all persons or entities in the United States who, between June 30, 2002, and the date of entry of this Notice Order [February 19, 2009], purchased a Bluetooth Headset manufactured by Motorola, Plantronics or GN." None of the objectors are current or former directors or officers of the defendants. As such, all seven have standing to object.

## II.   The Settlement Is Impermissibly Self-Dealing.

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004). Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997); *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski,* 318 F.3d at 953 (*quoting Dunleavy v. Nadler,* 213 F.3d 454, 458 (9th Cir. 2000)).

"These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1021 (9th Cir. 1998).

The settlement proposed by Plaintiffs is substantially worse than other settlements rejected by the Seventh and Ninth Circuits under Rule 23(e). Compare this case with *Murray*, 434 F.3d at 952 ("untenable"); *Mirfasihi*, 356 F.3d 781; *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) ("substantively troubling"); *Molski*, 318 F.3d at 956 ("unfair, inadequate, and unreasonable"):

|  | *Murray* | *Mirfasihi* | *Crawford* | *Molski* | *Bluetooth* |
|---|---|---|---|---|---|
| Unnamed class recovery | Up to $947,000 | Between $243,000 and $2.64 million | $0 | $0 | $0 |
| Rep. plaintiff payments | $3,000 | $250 | $2,000 | $5,000 | $12,000 |
| Attorney fees | ~$400,000 | $750,000 | $78,000 | $50,000 | $800,000 |
| Approved? | Rejected on appeal; remanded. | Reversed as abuse of discretion. | Reversed as abuse of discretion. | Reversed as abuse of discretion. | ? |

The Bluetooth settlement is inferior to other settlements rejected by the Seventh and Ninth Circuits: the unnamed class members recover less money, and the attorneys and named class representatives receive more money. There is ample precedent that not only should the court reject the settlement, but that approving the settlement would be an abuse of discretion. Any "presumption of fairness" is rebutted by the self-dealing nature of the settlement.

Though plaintiffs claimed to represent and seek to bind a million-member class, they have recovered cash for only themselves. Even if one were to improperly credit the charitable pseudo-*cy pres* award to unrelated third parties as a benefit to the class, plaintiffs have recovered for the class $100,000 for a claim that they had alleged was worth tens of million of dollars of restitution plus punitive damages. If we assume treble damages for the punitive component, plaintiffs brought a $100 million lawsuit that they

are settling for $100,000, a 0.1% success rate. Meanwhile, the representative class members receive "bonus" payments worth a hundred times their alleged damages despite shutting out all of the unrepresented class members.

In *Murray*, the 1% ratio of recovery to alleged damages and a 3000-1 ratio of representative-to-individual recovery was enough to call the settlement untenable: "if the reason other class members get relief worth about 1% of the minimum statutory award is that the suit has only a 1% chance of success, then how could Murray personally accept 300% of the statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny?" 434 F.3d at 952. Here, the "success" of plaintiffs is an abysmal failure of an even larger magnitude than the failure criticized in *Murray*, and representative plaintiffs are seeking $12,000 in rewards after winning zero for the average class member. Plaintiffs are either breaching their fiduciary duties by selling the class short or are bringing an extortionate "strike suit" for their own selfish benefit. Neither should be condoned by approving the settlement or attorneys' fees.

In conversations with the plaintiffs' attorneys, they have defended the settlement on the grounds that class members retain the right to pursue claims for physical injury, that there is *cy pres* relief to charitable organizations, and the existence of injunctive relief. But this is insufficient to proclaim the settlement fair. The settlement in *Molski* offered all of those remedies, and was still proclaimed "unfair, inadequate, and unreasonable" as a matter of law.

*Molski* alone provides grounds for rejecting this settlement, but it should be made clear that the Objectors also object to the *cy pres* and to the injunctive relief as lacking fairness.

### III. The Charitable Award Cannot Be Justified As *Cy Pres*, As A Benefit To The Class, Or As A Ground For Attorneys' Fees.

The $100,000 total charitable payment by defendants to four hearing organizations

is not a *cy pres* award, because it does not benefit the class directly or indirectly. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004). But even if the charitable payment were characterized as a *cy pres* award, it should not be used to justify the fairness of the settlement or the award of attorneys' fees.

In *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007), the Second Circuit addressed the distribution of *cy pres* awards, rejecting as an abuse of discretion the trial court's awarding a common fund to third parties. The Second Circuit suggests that *cy pres* should be limited "to circumstances in which direct distribution to individual class members is not economically feasible, or where funds remain after class members are given a full opportunity to make a claim." *Id.* at 436. Here, class members have not been given a full opportunity to make a claim; instead, plaintiffs have simply excluded over a million class members from recovery.

The lessons of the Class Action Fairness Act ("CAFA") do not apply "only to coupons." As CAFA itself states, Congress enacted the statute out of concern over abuses of the class action device that "harmed" class members, "such as where … counsel are awarded large fees, while leaving class members with coupons **or other awards of little or no value**." Pub.L. 109-2, § 2(a)(3)(A) (emphasis added); *Synfuel Tech. v. DHL Indus., Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); Jeffrey S. Jacobson, *Defining "Coupon" Under the Class Action Fairness Act*, Product Liability Law 360, Jan. 15, 2008. This case, offering a settlement of zero value to the class, is squarely within the concern of CAFA. It is perfectly appropriate to omit noncash compensation to the class when considering the fairness of the settlement or the calculation of a reasonable fee. *E.g., Silberblatt v. Morgan Stanley*, 2007 WL 4145403 (S.D.N.Y. Nov. 19, 2007).

There is not post-CAFA Ninth Circuit precedent on *cy pres* awards. Even under the pre-CAFA precedent, the settling parties' initial submission to the court did not provide "evidence that proof of individual claims would be burdensome or that distribution of damages would be costly." *Molski*, 318 F.3d at 954-55. *Cy pres* awards are therefore inappropriate. *Id.* But even if the court permitted the late submission of such proof, the

awards would still be inappropriate.

*Cy pres* awards to third parties are poor public policy, create conflicts of interest and unseemly political lobbying of judges by third-party charities, and are a means for plaintiffs' attorneys to exaggerate the benefit to the class. Theodore H. Frank, *Cy Pres Settlements*, Class Action Watch, March 2008 at 1, available at http://www.fed-soc.org/publications/pubid.887/pub_detail.asp. As such, the determination of whether a settlement is fair, adequate, or reasonable settlement under Rules 23(e) and 23(h) should not include attorneys' fees based on *cy pres* awards to third parties except when explicitly authorized by the legislature. *Id.*

While *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990), approves of the use of *cy pres*, that case predates both CAFA and the Seventh Circuit precedent rejecting the use of such settlements. *Six Mexican Workers* should be understood as abrogated by CAFA. If the Court disagrees, then to the extent this court reads Ninth Circuit precedent as requiring a court to use a *cy pres* award to a third party to justify the reasonableness of the settlement and of the attorneys' fees, even when the *cy pres* award does not benefit the class, there is a circuit split, as the Seventh Circuit has repeatedly explicitly held that *cy pres* awards are not to be construed as a benefit to the class. *Murray v. GMAC*, 434 F.3d at 952; *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000). Objectors therefore raise the good-faith argument to preserve this issue for further appeal.

**IV.   The Additional Warnings Are Of No Benefit To The Class.**

It is readily apparent that warnings provided to new purchasers of Bluetooth headsets are of no benefit to existing class members. But even if existing class members were to happen to surf the web and dig deep enough within the website menus to find the new warnings, they would be of no benefit to the class. The class members' existing

manuals already contain warnings about hearing loss, and the open and obvious nature of the danger to mature adults means that the additional warnings have a substantial danger of overwarning, with counterproductive results on public safety.

Objector Walker's BT2040 headset manual contains the following warning:

> ***WARNING!***
>
> Headsets are capable of delivering sounds at loud volumens and high-pitched tones. Exposure to such sounds can result in permanent hearing loss damage. The volume level may vary based on conditions such as the phone you are using, its reception and volume settings, and the environment. Please read the safety guidelines below prior to using this headset.
>
> ***SAFETY GUIDELINES***
>
> **1. Prior to using this product**
> Before putting on the headset, turn the volume control to its lowest level, put the headset on, and then slowly adjust the volume control to a comfortable level.
>
> **2. During the use of this product:**
> Keep the volume at the lowest level possible and avoid using the headset in noisy environments where you may be inclined to turn up the volume;
> If increased volume is necessary, adjust the volume control slowly; *and*
> If you experience discomfort or ringing in your ears, immediately discontinue using the headset and consult a physician.
>
> With continued use at high volume, your ears may become

>>accustomed to the sound level, which may result in permanent
>>damage to your hearing without any noticeable discomfort.

Similarly, Objector Clendineng's manual contains the more concise warning "Do not use headphones/headsets at high volumes for an extended period of time. Doing so can cause hearing loss. Always listen at moderate levels." Plaintiffs have presented no evidence that the lengthier warnings that they are demanding as part of the settlement provide any marginal benefit to anyone, much less class members.

And there is more than slight reason to believe that such warnings are counterproductive "overwarnings." When consumers are confronted with multiple warnings for the obscure or obvious, they suffer warning overload and are unable to process important warnings because of the volume of trivial warnings they are confronted with. *See* Twerski, Weinstein, Donaher & Piehler, *The Use and Abuse of Warnings in Products Liability Design Defect Litigation Comes of Age,* 61 Cornell L.Rev. 495, 513 (1976); Mark Geistfeld, *Inadequate Product Warnings and Causation*, 30 U. Mich. J.L. Reform 309, 310 (1997); Hearing Before the H. Comm. on Oversight & Gov't Reform (testimony of Randall Lutter) (May 14, 2008) (FDA commissioner discussing problem of overwarning); Final Rule, Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products, 71 Fed. Reg. 3922, 3968 (Jan. 24, 2006) (discussing problem of overwarning); *cf. also Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 764 (Ky. 2004); Aaron Smith, "Consumers tune out FDA warnings," CNNMoney.com, Feb. 25, 2008, http://money.cnn.com/2008/02/22/news/companies/fdawarning_fatigue/index.htm.

### V. The Lawsuit Itself Harms Class Members' Interests.

When plaintiffs bring low-value litigation with little chance of success on relatively meritless claims, as they appear to have done here, they raise costs to defendants, who have to pay for legal fees and for the extensive and expensive class action notice

requirements. Objectors, like the vast majority of class members, receive consumer surplus from their purchase and use of Bluetooth headsets. Self-dealing settlements like those of Putative Class Attorneys raise the costs to the defendants of producing accessories, and raise prices to class members like Objectors without concomitant benefits, thus reducing their consumer surplus. Consumer welfare would be improved if courts rejected such settlements and deterred socially inefficient rent-seeking litigation.

## VI. Putative Class Attorneys Are Not Entitled To Costs.

A prevailing party is entitled to costs. Fed. R. Civ. Proc. 54(d)(1). It is within a court's discretion to deny costs to a prevailing party when that party's success is but a small fraction of the relief they originally sought and litigated. *Farrar v. Hobby*, 506 U.S. 103 (1992). Here, Putative Class Attorneys have obtained $0 in economic benefit for the class they purport to represent, when they originally claimed that their damages were effectively tens of millions of dollars plus punitive damages: they "asked for a bundle and got a pittance." *Id.* at 120 (O'Connor, J., concurring). This is the sort of *de minimis* nuisance settlement that should not be awarded more than nominal costs or fees. *Id.* at 121-22.

# CONCLUSION

The Putative Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the "class device had been used to obtain leverage for one person's benefit." *Murray*, 434 F.3d at 952. In either instance, the Putative Class Attorneys' actions should be deterred, rather than rewarded; the court should reject the settlement as failing to comply with the requirements of Rule 23(a)(4) and Rule 23(e). The Putative Class Attorneys' requests for fees and costs should be rejected.

Dated: June 3, 2009

Respectfully submitted,

*/s/ Theodore H. Frank*

Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848
Attorney for Objectors

# PROOF OF SERVICE

I declare that:

I am employed in the District of Columbia. I am over the age of 18 years and not party to the within action; my office address is 1150 Seventeenth Street, NW, Washington, DC 20036.

On June 3, 2009, I served the attached:

OBJECTION TO PROPOSED SETTLEMENT

__X__ By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

Stephen M. Garcia
The Garcia Law Firm
One World Trade Center
Suite 1950
Long Beach, CA 90831

Terrence J. Dee
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654

Michael E. Baumann
Kirkland & Ellis LLP
777 South Figueroa Drive
Suite 3700
Los Angeles, CA 90017

Angel Garganta
Arnold & Porter LLP
275 Battery Street
Suite 2700
San Francisco, CA 94111

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 3, 2009.

*Luci Hague*
Luci Hague