STEPHEN M. GARCIA (Bar No. 123338)
    sgarcia@lawgarcia.com
DAVID M. MEDBY (Bar No. 227401)
    dmedby@lawgarcia.com
**GARCIA LAW FIRM, THE**
One World Trade Center
Suite 1950
Long Beach, CA 90831
Telephone: (562) 216-5270
Facsimile: (562) 216-5271

BRUCE L. SIMON (Bar No. 96241)
    bsimon@pswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
44 Montgomery Street, Suite 1430
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile:   (415) 433-9008

DANIEL L. WARSHAW (Bar No. 185365)
    dwarshaw@psswplaw.com
**PEARSON, SIMON, WARSHAW & PENNY, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:   (818) 788-8104

Co-Lead Counsel for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re: | CASE NO. 07-ML-01822 DSF |
| Bluetooth Headset Products Liability Litigation | [Assigned to the Honorable Dale S. Fischer] |
| | **CLASS ACTION** |
| | **PLAINTIFFS' *UNOPPOSED* MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:   July 6, 2009<br>Time:   1:30 p.m.<br>Crtrm: 840 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 6, 2009 at 1:30 p.m., or soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, United States District Judge for the Central District of California located at 312 North Spring Street, Los Angeles, CA 90012, Plaintiffs and Class Representatives will and hereby do move the Court for an award of attorneys' fees and litigation expenses in the above-entitled matter.

This *unopposed* motion is made on the grounds that: (a) such fees are fair and reasonable in light of class counsels' efforts in obtaining the settlement herein; (b) requested attorneys' fees comport with the applicable case law; and (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action. The parties have complied with Local Rule 7-3 by meeting and conferring in person on several occasions and because defendants do not oppose the instant motion. By this motion, Plaintiffs seek $800,000 in attorneys' fees, (utilizing a negative multiplier of 0.49) and reimbursement of $50,000 in litigation expenses, totaling $850,000.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1      Plaintiffs' motion is based on this Notice of Motion, the following

2  Memorandum of Points and Authorities, the accompanying declarations and exhibits

3  thereto, the complete file on record in this action and such additional evidence or

4  argument as may be presented at the hearing.

5

6  DATED: June 22, 2009        **GARCIA LAW FIRM, THE**
                STEPHEN M. GARCIA

7                  DAVID M. MEDBY

8                  **PEARSON, SIMON, WARSHAW &**
                **PENNY, LLP**

9                  BRUCE L. SIMON
                DANIEL L. WARSHAW

10

11

12                  By:         /s/
                        STEPHEN M. GARCIA

13                  Attorneys for Co-Lead Counsel for Plaintiffs
                and the Putative Class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................. 1

II. THE WORK PERFORMED BY CLASS COUNSEL ..................................... 2

    A.  Class Counsel Coordinated Efforts to Draft the Operative Consolidated Amended Complaint ........................................... 3

    B.  Class Counsel Conducted Extensive Investigation and Discovery in Support of Their Claims ................................ 3

    C.  Class Counsel Rigorously Opposed Defendants' Motion to Dismiss ........................................................................ 5

    D.  Class Counsel Negotiated a Fair and Adequate Settlement on Behalf of the Class ................................................ 6

    E.  Class Counsel Have Sought the Approval of the Settlement ................ 7

III. THE APPLICABLE LAW SUPPORTS THE ATTORNEYS' FEE SOUGHT BY PLAINTIFFS ............................................................... 7

    A.  Class Counsel's Lodestar is Reasonable ................................. 8

    B.  The Significantly Reduced Attorneys' Fees Requested by Class Counsel are Reasonable and Should be Approved by the Court ........... 9

    C.  The Objectors' Challenge to the Attorneys' Fees Requested Are Without Merit ........................................................ 11

IV. PLAINTIFFS SHOULD BE AWARDED REIMBURSEMENT OF LITIGATION  COSTS ....................................................................... 13

V.  CONCLUSION ............................................................................ 14

i

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Ballen v. City of Redmond*, 466 F.3d 736 (9th Cir. 2006) .................................... 2, 10

*In re Businessland Sec. Litigation*, 1991 WL. 427887 (N.D. Cal. June 14, 1991) ... 13

*Crommie v. Public Utils. Comm'n*, 840 F. Supp. 719 (N.D. Cal. 1994) .................... 9

*Mangold v. Calif. Pub. Utis. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) .................. 8, 10

*Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1995) ................................ 10

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .. 12

*Tarlecki v. Bebe Stores, Inc.*, 2009 WL. 1364340 (N.D. Cal. May 14, 2009) ...... 1, 12

*Webb v. Bd. of Educ.*, 471 U.S. 234 (1985) ............................................................ 9

*Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997) ............................................... 10

## State Cases

*Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43 (2008) ............................................. 10

*Edgerton v. State Pers. Bd.,* 83 Cal. App. 4th 1350 (2000) ................................... 10

*Mandel v. Lackner*, 92 Cal. App. 3d 747 (1979) ..................................................... 9

*PLCM Group v. Drecher*, 22 Cal. 4th 1084 (2000) ............................................... 10

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ......................................................... 8, 9, 12

*Stokus v. Marsh*, 217 Cal. App. 3d 647 (1990) ...................................................... 9

*In re Vitamins Cases*, 107 Cal. App. 4th 820 (2003) .......................................... 1, 12

*Vo v. Las Virgines Muni. Water Dist.*, 79 Cal. App. 4th 440 (2000) .................. 8, 12

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998) ............................... 8, 12

*X-Ray Film Antitrust Litig.*, 1998 WL. 1031494 (Oct. 22, 1998) ........................... 13

## State Statutes

Cal. Civ. Code §§ 1750 *et seq.* ...................................................................... 13

## Federal Rules

Fed. R. Civ. Proc. 12(b)(1) ............................................................................ 5

Fed. R. Civ. Proc. 12(b)(6) ............................................................................ 5

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

This class action lawsuit arises from Defendants Plantronics, Inc., GN Netcom, Inc. and Motorola, Inc.'s (hereinafter "Defendants") failure to warn consumers regarding the dangers of Noise Induced Hearing Loss ("NIHL") associated with their Bluetooth Headsets.  These headsets permit the use of a mobile phone without the necessity of holding the phone next to the face without wires connecting the phone to the headset (hereinafter "Bluetooth Headset").  Plaintiffs allege that Defendants' Bluetooth Headsets sufficient decibel levels to cause NIHL; they did not contain essential warnings informing consumers of this potential danger and the means to avoid it.  Plaintiffs further allege that Defendants marketed their Bluetooth Headsets with affirmative representations concerning audio performance, comfort, security and "talk times."

Through this lawsuit, Class Counsel has succeeded in ensuring that Defendants adopt expertly crafted warnings and supplemental written materials that explicitly inform class members of the dangers of NIHL and the safe use of their Bluetooth Headsets.  Under the settlement this significant prospective relief will ensure that consumers will be able to safely use Defendants' Bluetooth Headsets, while *expressly preserving the rights of class members pursue their personal injury claims*.  Furthermore, the Settlement Agreement requires Defendants to make a significant *cy pres* donation in the amount of $100,000 to five organizations dedicated to fighting hearing loss.  Based on the facts and circumstances of this case, the utilization of this *cy pres* award constitutes the most effective utilization of the settlement funds.  *See Tarlecki v. Bebe Stores, Inc.*, 2009 WL 1364340, * 4 (N.D. Cal. May 14, 2009); *In re Vitamins Cases*, 107 Cal. App. 4th 820, 830 (2003).

PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

1       Pursuant to the applicable law, Class Counsel is entitled to recover their

2   reasonable attorneys' fees and costs incurred in the prosecution of this action.  In an

3   action brought in diversity under CAFA or other statutory authority, California

4   courts analyze applications for attorneys' fees under the lodestar method, which has

5   a strong presumption in favor of compensating class counsel for all hours incurred

6   during the prosecution of the action.  *See Ballen v. City of Redmond*, 466 F.3d 736,

7   745 (9th Cir. 2006).  Here, Class Counsel's lodestar calculation of $1,613,399.50, is

8   justified by counsels' declarations and the significant amount of work performed in

9   obtaining the class-wide settlement in this multi-district litigation.  Through

10  protracted settlement negotiations with Defendant, Class Counsel have voluntarily

11  reduced their lodestar by a multiplier of .49 in seeking an attorneys' fees award of

12  $800,000 from the Court.  Further, Class Counsel have agreed to reduce their costs

13  by more than $48,000.  As demonstrated by the Defendants' decision not to oppose

14  the motion, the instant request for attorneys' fees and costs is reasonable and

15  justified under the applicable law.  Similarly, the request for reimbursement of costs

16  is reasonable and justified by the detailed declarations and expense reports filed in

17  support of the settlement agreement.  Therefore, Plaintiffs respectfully request that

18  the Court grant their motion for attorneys' fees and costs in the amount of $850,000.

19

20  ## II.   THE WORK PERFORMED BY CLASS COUNSEL

21

22      Twenty-six putative class actions were filed against Defendants in various

23  courts across the country involving the marketing and sale of wireless headsets,

24  commonly known as "Bluetooth Headsets."  On February 20, 2007 the Judicial

25  Panel on Multidistrict Litigation coordinated these cases in the Central District of

26  California before the Honorable Dale S. Fischer, captioned as In Re Bluetooth

27  Headset Products Liability Litigation, MDL No. 1822 ("MDL cases").

28

1

2

### A.    Class Counsel Coordinated Efforts to Draft the Operative Consolidated Amended Complaint

3

4

5

6

7

8

9

10

11

On June 18, 2007, Pearson, Simon, Warshaw & Penny, LLP[1] and The Garcia Law Firm were appointed by the Court as Co-Lead Class Counsel.  *See* Docket No. 8.  The Garcia Law Firm was also appointed as Liaison Counsel.  *See id*.  Class Counsel thereafter researched, drafted and filed the Consolidated Class Action Complaint on July 6, 2007.  *See* Docket No. 13.  As a result of a meet and confer between the parties, Plaintiffs amended the Consolidated Class Action Complaint, filing their First Amended Consolidated Complaint ("FACC") on August 3, 2007 and Second Amended Consolidated Complaint ("SACC") on September 25, 2007. *See* Docket Nos. 16, 19.  The SACC is the operative complaint.

12

13

14

### B.    Class Counsel Conducted Extensive Investigation and Discovery in Support of Their Claims

15

16

17

18

19

20

21

22

23

24

Class Counsel's investigation into the science surrounding Plaintiffs' claim that Bluetooth Headset users were at an increased risk of harm (*i.e.*, noise induced hearing loss), began with researching the levels of noise acceptable under various laws and in various industries.  Numerous regulations regarding noise have been proposed around the world based on dozens of scientific studies and articles.  Class Counsel initially focused on the studies relied upon by the National Institute for Occupational Safety and Health ("NIOSH") in its criteria document 98-126.  This led Class Counsel to several seminal studies, papers and regulations regarding the epidemiology and pathogenesis of NIHL, including:  the United States Environmental Protection Agency's documents titled "In Search of Meaningful

25

26

27

[1] Pearson, Simon, Warshaw & Penny, LLP, was formerly known as Pearson, Simon, Soter, Warshaw & Penny, LLP.

28

Measures of Hearing Protector Effectiveness," "Protective Noise Levels," "A Basis for Limiting Noise Exposure for Hearing Conservation" and "Prediction of NIPTS Due to Continues Noise Exposure;" the Occupation Safety and Health Administration's Noise Standard 1910.95 and materials on hearing conversation, a-weighted sound measurements, and partnership programs with employers; and the World Health Organization's October 28-30, 1997 report "Prevention of Noise-Induced Hearing Loss." Class Counsel also reviewed various documents published by ANSI, the ACGIH, and the United States Department of Defense for industrial hygiene studies and methods regarding noise exposure and evaluating and assessing exposures. Plaintiffs' counsel spent hundreds of hours reviewing these documents, and those they relied upon and cited. Declaration of Stephen M. Garcia in support of Plaintiffs' Motion for Final Approval and Attorneys' Fees ("Garcia Decl.") at ¶ 3.

Class Counsel's review of these documents and underlying studies led Class Counsel to experts in the fields of audiology and industrial hygiene. Plaintiffs contacted over a dozen experts to find out more information regarding hearing loss caused by consumer products and to gauge whether they would be interested in participating in the lawsuit as a retained expert. *Id*. at ¶ 4. Class Counsel retained experts as consultants and potential witnesses to discuss the mechanisms by which sound can cause damage and to discuss how much sound is necessary to cause damage. *Id.* Class Counsel spent hundreds of hours working with the experts in evaluating the data produced by Defendants on the output levels of their products using various software models. *Id.* Further, Class Counsel worked with one of the experts to produce a report on his evaluation of the risk of noise induced hearing loss these products posed based on his experience, testing and review of publicly available scientific literature. *Id.*

Class Counsel's investigation also included a comprehensive review of the

4

warnings on other audio devices through internet searches.  *Id.* at ¶ 5.  Plaintiffs' counsel spent dozens of hours reviewing warnings from AT&T, Cown, Apple, Jawbone, Memorex, Sony, Panasonic, Shure, Samsung, and Blueant to evaluate whether there was an industry standard on warnings and also to identify the "state of art" regarding consumer electronics and noise induced hearing loss.  *Id.*

Class Counsel also obtained and reviewed thousands of pages of discovery relating the merits and allegations of this action.  The documents produced obtained from Defendants included: (1) sales data for each model Bluetooth Headset sold between June 30, 2002 and June 30, 2006, and (2) acoustic test results for each model Bluetooth Headset identified in the pleadings sold between June 30, 2002 and June 30, 2006.  *Id.* at ¶ 6.  The work performed by Class Counsel throughout the course of this litigation allowed them to adequately prepare and represent the interest of the class in settlement negotiations with Defendants.

## C.  Class Counsel Rigorously Opposed Defendants' Motion to Dismiss

On May 7, 2008 Defendants filed their Motion to Dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Docket Nos. 33-39. Defendants argued that: (1) Plaintiffs lacked Article III standing because the allegation that Bluetooth Headsets can cause noise-induced hearing loss is nothing more than a hypothetical economic injury; (2) assuming Article III standing exists, Plaintiffs have not alleged the requisite cognizable "injury" or "damages" under California and Illinois law; (3) Plaintiffs  failed to identify affirmative misstatements of fact; and (4) the risk of hearing loss theory asserted in the SACC is unjustified.

Class Counsel coordinated their efforts to rigorously research and draft the opposition to Defendants' Motion to Dismiss, which details the legal and factual

1  basis for Plaintiffs claims.  Docket No. 40.  Although the Motion to Dismiss was
2  fully briefed on August 8, 2008, the Court entered a Stipulated Order to continue the
3  hearing on the Motion to Dismiss so that settlement discussions could proceed.
4  Docket No. 49.

5

6          **D.    Class Counsel Negotiated a Fair and Adequate
7                  Settlement on Behalf of the Class**

8          On February 4, 2008 the parties participated in a mediation of the case under
9  the direction of the Honorable Steven J. Stone, Presiding Justice of the California
10 Court of Appeal (Retired).  In advance of the mediation, lawyers for Plaintiffs and
11 Defendants participated in at least three in-person meetings to discuss the merits of
12 the litigation and discovery issues.  Garcia Decl. at ¶ 7.  After engaging in the
13 formal mediation session on February 4, 2008 Plaintiffs determined that the
14 proposed settlement would be fair, adequate and reasonable and in the best interest
15 of the Settlement Class, and that it is desirable that the litigation be settled in the
16 manner upon the terms and conditions set forth in the Settlement Agreement.  *Id.* at
17 ¶ 6.

18

19         The terms of the proposed Class settlement are set forth fully in the
20 Settlement Agreement.  Docket No. 61.  The Settlement Agreement is entered into
21 on behalf of a "Settlement Class" consisting of all persons in the United States who:
22 between June 30, 2002 and the date of entry of the Notice Order, purchased a
23 Bluetooth Headset manufactured by Motorola, Plantronics or GN.  The Settlement
24 Agreement provides significant injunctive relief on behalf of class members by
25 requiring that Defendants adopt new warnings alerting consumers of the potential
26 danger of hearing loss associated with Bluetooth Headsets and steps that can be
27 taken to avoid hearing loss.  The warnings, in pertinent part, inform consumers that:

28

"**/!\ WARNING**: Exposure to loud noises from any source for extended periods of time may temporarily or permanently affect your hearing. The louder the volume sound level, the less time is required before your hearing could be affected. Hearing damage from loud noise is sometimes undetectable at first and can have a cumulative effect."

*See* Exhibit "D" to Settlement Agreement.

Additionally, Defendants will contribute $100,000 to be divided between the following organizations as follows: $31,666.66 to the American Speech and Hearing Association, $31,666.67 to the National Hearing Conservation Association, $31,666.67 to The University of Tennessee College of Medicine, Center for Independent Living Research, and $5,000.00 to the Greater Los Angeles Agency on Deafness.  See Settlement Agreement at ¶ 3.2.  Furthermore, the release under the settlement agreement is carefully crafted to preserve class members' rights to recover for personal injuries caused by Defendants' Bluetooth Headsets.

### E.   Class Counsel Have Sought the Approval of the Settlement

Upon finalizing the Settlement Agreement, Plaintiffs have spent additional time in drafting the Motion for Preliminary Approval, attending the Preliminary Approval Hearing, overseeing the notice to the class and responding to class member inquiries.  Class Counsel have drafted the parties' Joint Motion for Final Approval and this Motion for Attorneys' Fees.  Class Counsel will spend additional time attending the Final Approval and Fairness Hearing and overseeing the administration of this action.

### III.   THE APPLICABLE LAW SUPPORTS THE ATTORNEYS' FEE SOUGHT BY PLAINTIFFS

Because this is a diversity case, settled on the basis of Plaintiff's state law

claims, state law applies to the calculation of attorneys' fees. *See, e.g., Mangold v. Calif. Pub. Utils. Comm'n.*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) (finding that state law determines both the right to fees and the method of calculating fees in diversity cases). Under California law, courts utilize the lodestar method which adopts counsel's lodestar as a "touchstone" in determining the reasonableness of attorneys' fees. *Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (1977) (*Serrano III*). A court may then adjust this lodestar figure based on a number of factors, including: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award." *Id.*

## A.    <u>Class Counsel's Lodestar is Reasonable</u>

The first step in awarding fees under the lodestar method is to calculate the lodestar amount. In making this determination courts examine whether class counsel's lodestar calculation represents a reasonable number of hours performed at a reasonable hourly rate. *Serrano*, 20 Cal. 3d at 48. The case law analyzing the number of hours worked holds that class counsel is entitled to recover fees for all hours reasonably spent working on the case. *Vo v. Las Virgines Mun. Water Dist.*, 79 Cal. App. 4th 440, 446 (2000) ("Under the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render the award unjust."); *Weeks v. Baker & McKenzie,* 63 Cal. App. 4th 1128, 1175 (1998) ("an attorney who takes on [a complex] case can anticipate receiving full compensation for every hour spent litigating a claim against even the most polemic opponent."). Compensable activities under the lodestar method include both pre-litigation activities (e.g., interviewing the client, investigating the facts, researching the law and preparing the initial pleading), and litigation activities (e.g., conducting discovery, conferring with clients, drafting pleadings, making

1   court appearances, travel time and settlement negotiations.)  *Webb v. Bd. of Educ.*,

2   471 U.S. 234, 85 (1985); *Stokus v. Marsh,* 217 Cal. App. 3d 647 (1990).

3

4   In this case, Plaintiff's lodestar as of June 22, 2009 is $1,613,399.50.  As set

5   forth in detail in the declarations submitted by Class Counsel, this lodestar

6   calculation reflects the following compensable activities: (1) pre-litigation

7   investigation and researching and drafting Plaintiff's class action complaints; (2)

8   working on preliminary pleadings and exchanges; (3) researching and drafting the

9   Consolidated Amended Complaints; (4) opposing Defendant's Motion to Dismiss;

10   (5) conducting discovery, establishing facts in support of class certification; (6)

11   conducting settlement negotiations with defense counsel; (7) seeking preliminary

12   approval of the settlement; and (8) working on issues relating to final approval and

13   Plaintiff's motion for attorneys' fees and costs.

14

15   As set forth, in the attorney declarations submitted to the Court in support of

16   this motion, Class Counsel's lodestar represents a reasonable number of hours spent

17   on a case of this magnitude at a reasonable hourly rate charged by each firm in the

18   provision their of non-contingency services.  *See e.g.*, *Crommie v. Public Utils.*

19   *Comm'n*, 840 F. Supp. 719, 725 (N.D. Cal. 1994); *Serrano III*, 20 Cal. 3d at 48-49;

20   *Mandel v. Lackner*, 92 Cal. App. 3d 747, 761 (1979).   Perhaps even more

21   significantly, the reasonableness of Plaintiffs' lodestar calculation is not being

22   challenged by either the Defendants nor the objectors in this action.

23

24       **B.**   <u>**The Significantly Reduced Attorneys' Fees**</u>

           <u>**Requested by Class Counsel are Reasonable and**</u>

25              <u>**Should be Approved by the Court**</u>

26

27   There is a strong presumption in favor of the reasonableness of Class

28   Counsel's lodestar in an attorneys' fees award. *See Ballen v. City of Redmond*, 466

1   F.3d 736, 745 (9th Cir. 2006) (holding that plaintiff's lodestar calculation is the

2   presumptively accurate measure of reasonableness.)  Indeed, numerous cases have

3   multiplied or "enhanced" plaintiffs' lodestar in calculating the reasonableness of an

4   attorneys' fees request.  *See e.g., Wing v. Asarco, Inc.,* 114 F.3d 986 (9th Cir. 1997)

5   (affirming application of a 2.0 multiplier to class counsel's lodestar); *Odima v.*

6   *Westin Tucson Hotel,* 53 F.3d 1484 (9th Cir. 1995) (awarding an enhancement to

7   class counsel's lodestar); *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43, 61 (2008);

8   *Edgerton v. State Pers. Bd.,* 83 Cal. App. 4th 1350, 1363, 2000 (applying a 1.5

9   multiplier to class counsel's lodestar calculation);  *Mangold*, 67 F.3d at 1478-79

10  (applying a 2.0 multiplier to Plaintiffs' lodestar calculation).  The examination of the

11  reasonable attorneys' fees is ultimately a factual analysis taking into account

12  judicially enumerated factors justifying adjustment of the fee award.  *See PLCM*

13  *Group v. Drecher,* 22 Cal. 4th 1084, 1095 (2000).

14

15       Here, Plaintiffs have incurred a total lodestar of $1,613,399.50, which is

16  reasonable and justified given the complexity of the litigation.  Garcia Decl. at ¶¶ 3-

17  6 and 13.  Specifically, in litigating this case Plaintiffs faced significant challenges

18  coordinating a complex consolidated nationwide class action involving multiple

19  Plaintiffs and Defendants from divergent jurisdictions.  Plaintiff defended against

20  Defendants' motions to dismiss the Second Consolidated Amended Complaint.

21  Furthermore, Plaintiffs expertly performed an extensive investigation including a

22  review of thousands of documents and consultation with numerous experts to

23  discern the dangers of hearing loss posed by Defendants' Bluetooth Headsets.

24

25       Ultimately, these efforts brought the Defendants to the negotiation table and

26  resulted in a Settlement Agreement that provides both long term and short term

27  relief to the settlement class.  Specifically, the class settlement requires the creation

28  of a *cy pres* fund in the amount of $100,000 that will provide tangible benefits to

five charities that are dedicated to battling issues related to hearing loss.  To this end, the c*y pres* award serves a greater public benefit than a *de minimis* monetary recovery to the thousands of class members.  Perhaps more importantly, the Settlement Agreement requires the adoption of new effective warning labels and literature that will minimize the NIHL injuries arising from the use of Defendants' Bluetooth Headsets.  Furthermore, Class Counsel have achieved these results while ensuring class members maintain their right to assert a claim for personal injuries caused by Defendants' products.

These factors justify entry of an attorneys' fees award in the full amount of Class Counsel's lodestar calculation of $1,613,399.50.  However, Plaintiffs have agreed to seek only $800,000 in attorneys' fees, which constitutes only 49.58% of their lodestar.  The $800,000 fee requested by Plaintiffs has been derived through extensive arms-length negotiations with Defendants with the assistance of Justice Stone.  To this end, the fact that Defendants' do not oppose the fees requested by Plaintiffs is a significant indicator of the reasonableness of Plaintiffs' attorney fee request.

### C.   The Objectors' Challenge to the Attorneys' Fees Requested Are Without Merit

The objections to the attorneys' fees requested by Plaintiffs are not supported by the applicable law and are without merit.  For the most part, the objections to the attorneys' fees and costs are attacks on the class action mechanism based on conclusory contentions that this lawsuit should not result in an award of attorneys' fees.  These objections simply contain no substantive analysis of the merits of this case, no indication of an understanding for the considerable work performed by Class Counsel, and no consideration on the charitable contributions and injunctive relief obtained by the settlement.  This small percentage of objections simply are not

1   supported by the applicable law, which provides that Class Counsel are entitled to
2   recover their reasonable attorneys' fees incurred in the prosecution of this case.  *See*
3   *Serrano*, 20 Cal. 3d at 48; *Las Virgines Mun. Water Dist.*, 79 Cal. App. 4th at 446;
4   *Weeks,* 63 Cal. App. 4th at 1175.

5
6   While the non-attorney class members may be entitled leeway for their failure to
7   assert a legal basis for their objection, objectors' counsel Theodore L. Frank should
8   not.  To this end, Frank's self-serving reliance on and reference to his own article
9   critiquing *cy pres* awards as a basis for awarding attorneys' fees is indicative of the
10  lack of legal support for his position.  The fact of the matter is that the applicable
11  law holds that *cy pres* awards and injunctive relief provide tangible benefits to the
12  class and justify an award of attorneys' fees to Class Counsel.  *See Six (6) Mexican*
13  *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) (rejecting
14  defendants' claim that *cy pres* awards are improper fluid recovery); *Tarlecki*, 2009
15  WL 1364340, * 4 (recognizing the utility of considering the value of *cy pres* awards
16  in awarding attorneys fees).  This is especially true in a case such as this, "[w]hen a
17  class action involves a large number of class members but only a small individual
18  recovery, the cost of separately proving and distributing each class member's
19  damages may so outweigh the potential recovery that the class action becomes
20  unfeasible." *Six (6) Mexican Workers,* 904 F.2d at 1305 (emphasizing the benefits of
21  *cy pres* recovery in a class action); *In re Vitamins Cases*, 107 Cal. App. 4th at 830
22  (approving a distribution of settlement proceeds to charity through a *cy pres* award
23  where individual recovery "would surely be quite small.")  Therefore, Plaintiffs'
24  request for fees is reasonable under the lodestar method and should be approved by
25  the Court.
26  / / /
27  / / /
28  / / /

1
2

## IV.   PLAINTIFFS SHOULD BE AWARDED REIMBURSEMENT OF LITIGATION COSTS

3   Attorneys in a class action may be reimbursed for costs incurred "in the
4   ordinary course of prosecuting [a] case" in addition to attorneys' fees incurred.  *See*
5   *X-Ray Film Antitrust Litig.*, 1998 WL 1031494, at *11 (Oct. 22, 1998) (awarding
6   class counsel $29,051.40 in costs and expenses); *see also In re Businessland Sec.*
7   *Litig.*, 1991 WL 427887, at *3 (N.D. Cal. June 14, 1991), No. C90-20476 RFP,
8   (awarding class counsel $90,574.78 in costs and expenses in addition to attorneys'
9   fees).  Furthermore, California's Consumer Legal Remedies Act (Cal. Civ. Code §§
10  1750 *et seq.*), expressly allow plaintiffs to recoup their costs incurred during the
11  litigation.

12

13   Here, plaintiffs' counsel has incurred $98,660.09 in litigation expenses, yet
14  they seek reimbursement of only $50,000.  *See* Garcia Decl. at ¶ 13.  The expenses
15  include fees for filing, legal research, process and review of defendants' document
16  production, travel, and the multiple mediation sessions.  This request should be
17  granted because all of the expenses were reasonably incurred and necessary given
18  the complex nature and nationwide scope of this case.

19
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.    <u>CONCLUSION</u>

For the aforementioned reasons Plaintiffs respectfully request that the Court grant their Motion for Attorneys' Fees in the amount of $800,000 and costs in the amount of $50,000.


DATED: June 22, 2009          **GARCIA LAW FIRM, THE**
                              STEPHEN M. GARCIA
                              DAVID M. MEDBY

                              **PEARSON, SIMON, WARSHAW & PENNY, LLP**
                              BRUCE L. SIMON
                              DANIEL L. WARSHAW


                              By: _____/s/_____
                                      STEPHEN M. GARCIA
                              Attorneys for Co-Lead Counsel for Plaintiffs
                              and the Putative Class