| Case No. | CV 07-ML-1822 DSF (Ex) | Date | October 22, 2009 |
|---|---|---|---|
| Title | In re Bluetooth Headset Products Liability Litigation | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (In Chambers) Order Setting Class Counsel's Attorneys' Fees and Costs, and Incentive Award

Having approved the settlement of this multidistrict class action litigation as fair, adequate, and reasonable, the Court must now consider the amount of attorneys' fees, costs, and incentive payments to be ordered pursuant to the agreement.

## I. The Settlement

Twenty-seven putative class actions were filed in various courts involving the marketing and sale of wireless headsets, commonly known as "Bluetooth Headsets." The actions allege that the use of Bluetooth Headsets poses a risk of hearing loss and that defendants failed to warn of the potential risk. Defendants deny that the use of their Bluetooth Headsets creates or contributes to any risk of noise-induced hearing loss. There are millions of class members. The settlement agreement does not provide for a monetary or other award for individual class members. Instead, it mandates that defendants provide acoustical safety information on their websites and in their packaging, and pay a total of $100,000 to certain organizations involved in research relating to noise-induced hearing loss. Defendants agreed to pay an amount not to exceed $800,000 in attorneys' fees and $50,000 in costs to class counsel, and $12,000 in incentive payments to the representative plaintiffs. The Court approved the settlement for the reasons stated more fully on the record at the July 6, 2009 hearing and in the Order Granting Final Approval of Class Settlement. Because the settlement agreement provided that the Court could award any amount of fees, costs, and incentive payments up to the maximum amounts described in the agreement, the Court was not required to determine the

reasonableness of the amounts before approving the settlement.

Seven class members (the objectors) opposed the motion for final approval of the settlement and the motion for fees and costs. "The Objectors believe that class action settlements that benefit no one but the attorneys hurt consumers, and that courts should use their oversight powers to prevent such extortionate settlements from occurring in the first place." (Objection to Proposed Settlement ("Obj.") 2.)

A motion to dismiss Plaintiffs' claims was pending when the settlement was reached. The Court's tentative decision, formulated without the benefit of oral argument from counsel and never revealed to the parties, was that some claims would be dismissed, but other claims would remain. Though the Court has its doubts about the merits of the suit and the likelihood of success, especially in the form of a class action, the lawsuit would have proceeded in the absence of a settlement - and would have been vigorously litigated.

For the reasons described below, the Court finds that the amount of fees, costs, and incentive payments in the maximum amount negotiated by the parties should be - and are - approved.

## II. Approval of the Fee Award

Though it may be tempting for overburdened district judges simply to accept the agreement of the parties for an award of attorneys' fees - especially when that award will not be deducted from the amounts received by the class members, it is clear that the Ninth Circuit does not allow such an approach. See Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003) (holding that "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement"). Here, the parties negotiated the substance of the settlement (the injunctive relief and *cy pres* award) and the amount of fees and costs separately. However, "[t]hat the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." Id. at 964.

"District courts must calculate awards for attorneys' fees using the 'lodestar' method. The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th

Cir. 2001) (citations and internal quotation marks omitted). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983). In the second stage, the court may adjust the lodestar fee based on the factors articulated in Kerr v. Screen Actors Guild, Inc., 526 F.2d 67 (9th Cir. 1975), that are not subsumed in the lodestar analysis.[1] Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988).

As with many class settlements, this one deprives the Court of its most valuable asset in analyzing the reasonableness of the fees - the adversary process. Defendants have agreed to an award of fees and costs of up to $850,000. Class counsel are free to make whatever arguments they wish, without fear of contradiction. The Court therefore assumes an extra burden in this case, and every other case in which the parties have negotiated the fee award. Class counsel did little to alleviate this burden. Initially most of them provided nothing more than a cursory summary of the hours they claimed to have expended, their hourly rates, and the total amount they claimed to have invested in this case.[2] These individual summaries for each firm were attached to the standard attorney declaration stating that the fees were "reasonable and necessary." Moreover, class counsel contended that because they had agreed to accept only $800,000, but had actually incurred $1,613,399.50 in fees as of June 22, 2009, the lodestar they were seeking was a mere .49%.

The Court ordered that counsel provide their billing statements, and permitted them to file a redacted version for public view as well as an unredacted version for consideration by the Court. The Court has reviewed the unredacted billings of class

---

[1] The twelve Kerr factors bearing on reasonableness are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr, 526 F.2d at 70.

[2] The Court's analysis was further complicated by the number of firms (at least 7) and the number of timekeepers (at least 56) involved, as well as the different formats in which the firms and attorneys presented their fee applications.

counsel in their entirety.  The Court finds that the lodestar is not nearly the $1.6 million that counsel suggest.  Instead, the Court has found what it considers to be excessive charges for most of the categories of services, and duplicative entries - both related and unrelated to the number of attorneys who were billing time on these matters.  (For example, what appears to be duplicative billing in one case resulted in 32 billable hours in a single day for one attorney.)  There is also a substantial amount of "block billing," which the Ninth Circuit has criticized as likely to result in excessive billing.  Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  In addition, it appears that one or more firms unilaterally determined to calculate the lodestar based on current hourly rates, rather than historic rates plus a prime rate enhancement.  See In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Lit., 109 F.3d 602, 609 (9th Cir. 1997).  A prime rate enhancement on accruing fees would not come close to the effective current rate enhancement, and under present circumstances would have been more appropriate.

These apparent defects in the billings notwithstanding, the Court's analysis reveals that the lodestar substantially exceeds the $800,000 negotiated by the parties.  Because the defense has agreed to pay the specified amounts, and because any amount not awarded by the Court would be retained by the defendants rather than benefitting class members (or even adding to the *cy pres* award), the Court sees no need to spend the incredible number of hours it would take to calculate the precise lodestar amount.  As the Ninth Circuit noted in Staton, "in the context of settlement, the fees provided for in the agreement are as subject to compromise as are the merits provisions.  Consequently, . . . the fee amount in a class action settlement agreement can be *less* than would be awarded by a court.  And, since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated."  327 F.3d at 966.

The next question is whether the Court should reduce the award.  "[O]nly in rare circumstances should a court adjust the lodestar figure, as this figure is the presumptively accurate measure of reasonable fees."  Ballen v. City of Redmond, 466 F.3d 736,746 (9th Cir. 2006).  Objectors contend: "The Putative Class Attorneys have brought either (1) a meritorious case that is being settled for an infinitesimal fraction of the case's real value in a "sellout" of the attorneys' and class representatives' fiduciary duties to the class, or (2) a meritless lawsuit where the 'class device had been used to obtain leverage for one person's benefit.'  In either instance, the Putative Class Attorneys' actions should be deterred, rather than rewarded; the court should not award attorneys' fees."  (Obj. 4.)

At the hearing, objectors' counsel suggested the second option was more likely, (Tr. 18), and confirmed that he did not contend that class counsel colluded with defense counsel (Tr. 17-18). The Court agrees that the class was not likely to obtain a more favorable settlement at trial. Personal injury claims were highly unlikely to be included in those certified, and problems of proof relating to the claims of misrepresentation were significant.

Though the "rules governing both reduction and enhancement have become increasingly refined over time," Staton, 327 F.3d at 965, neither the Court nor the parties have located persuasive authority - and certainly not Ninth Circuit authority - suggesting that a court should reduce fees as a "deterrent" for suits of questionable merit. Nor does any case assist the Court in determining what level of reduction in fees, if any, should be imposed in a situation such as that presented here.[3]

Contrary to class counsel's assertions, the settlement did not achieve all the goals of the suit. Nevertheless, the Court agrees that the injunctive relief obtained and the *cy pres* payment provided at least minimal benefit, and the settlement preserved for those who might believe they were harmed the ability to pursue such claims. As noted, reducing the award will not benefit the class or increase the *cy pres* payment. The substantial reduction below the lodestar appears to account for the fact that there were a number of claims for which class counsel achieved no relief. Most importantly, the award of fees, costs, and incentive payments did not deprive class members of funds that otherwise would have been distributed to them.

The objectors also argue that no fees should be awarded because "[w]hen plaintiffs bring low-value litigation with little chance of success on relatively meritless claims, as they appear to have done here, they raise costs to defendants, who have to pay for legal fees and for the extensive and expensive class action notice requirements." (Obj. 11-12.) As the Court noted at the hearing, under the present standards, at least a portion of this litigation would almost certainly have survived the motion to dismiss and class certification motions. Thus, objectors' argument is more appropriately addressed to the legislature.

Finally, objectors cite Justice O'Connor's concurrence in Farrar v. Hobby, 506 U.S. 103 (1992) to argue that the Court should not award more than nominal fees or costs

---

[3] Because this case did not even proceed to a hearing on the motion to dismiss, the Court expresses no opinion on the actual merits of this suit other than as stated in this Order.

for this "*de minimis* nuisance settlement." (Obj. 12.) The Court does not find the result nearly as impressive as does class counsel. With a class consisting of millions, and anything more than a patently frivolous claim, settlement is almost always a foregone conclusion. There was relatively little risk of participating in a lengthy, hard-fought, and expensive litigation with a possible negative outcome. With the relatively liberal pleading standard [4] and class certification standard, more often than not some claim will survive the certification motion as a class claim. The courts are virtually clogged with suits that threaten potentially catastrophic awards against large corporations for violations of laws affording statutory or other damages with little relation to the actual harm done. In the alternative, classes often can be certified even if only prospective injunctive relief is sought. Settlement is the rule - not the exception. The Court agrees, of course, that if the matter had proceeded to trial, and if the class had received *de minimis* relief, the analysis would be different.

Here, however, the parties negotiated the maximum amount of fees, there is no evidence of collusion, the fees do not detract from the relief that might otherwise have been negotiated for the class members, and the lawsuit was arguably questionable but not frivolous, the Court determines that the negotiated fees, which are substantially less than the lodestar, are appropriate.

### III. Approval of the Incentive Award

Class counsel initially provided no assistance to the Court in evaluating the reasonableness of the award requested. They provided nothing to indicate the amount of hours spent by the class representatives or any analysis of the value of their respective time. The Court ordered that declarations be provided describing the services rendered by these class representatives. The Court has reviewed those declarations, which reveal substantial differences among representatives in the nature of services provided and the time spent. Nevertheless, the total amount of the incentive award is not excessive in light of the fact that it is to be divided among nine class representatives. The incentive award is approved.

### IV. Approval of Costs

Class counsel provide no support for the costs requested, other than their

---

[4] It remains to be seen what impact, if any, <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), will have on class action litigation.

conclusory statements that the "costs were necessary and appropriate." The Court questions the validity of some of the cost items (generally due to a lack of detail), and there appear to be at least some duplicate entries. The Court nevertheless concludes that approval is appropriate considering the analysis above. The Court is confident that at least $50,000 in costs were legitimately incurred.

## V.  Conclusion

For the reasons set forth above, the Court awards a total of $850,000 to class counsel to be distributed among them for fees and costs. The Court also awards the sum of $12,000 to be distributed among the representative plaintiffs as an incentive award.

IT IS SO ORDERED.

Initials of
Preparer: