1   Terrence J. Dee (*pro hac vice*)
    tdee@kirkland.com
2   Michael B. Slade (*pro hac vice*)
    mslade@kirkland.com
3   KIRKLAND & ELLIS LLP
    300 North LaSalle
4   Chicago, Illinois 60654
    Telephone:  (312) 862-2000
5   Facsimile:  (312) 862-2200

6   *Counsel for Defendant Motorola, Inc.*

7   Michael E. Baumann (SBN 145830)
    mbaumann@kirkland.com
8   Mark T. Cramer (SBN 198952)
    mcramer@kirkland.com
9   KIRKLAND & ELLIS LLP
    333 South Hope Street
10  Los Angeles, California 90071
    Telephone:  (213) 680-8400
11  Facsimile:  (213) 680-8500

12  *Counsel for Defendant Plantronics, Inc.*

13  Angel A. Garganta (SBN 163957)
    angel.garganta@aporter.com
14  ARNOLD & PORTER LLP
    Three Embarcadero Center, 7th Floor
15  San Francisco, California 94111
    Telephone:  (415) 356-3000
16  Facsimile:  (415) 356-3099

17  *Counsel for Defendant GN Netcom., Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. CV 07-ML-1822 DSF (Ex) |
| Bluetooth Headset Products Liability Litigation | **DEFENDANTS' INITIAL BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| This document relates to: | Judge:    Honorable Dale S. Fischer |
| ALL ACTIONS | Date:    April 16, 2012<br>Time:    1:30 p.m.<br>Dep't:    840 |

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION ..................................................................................... 1

4

II.     THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE
        AND SHOULD BE APPROVED. ............................................................ 1

5

        A.      There Was No Collusion In The Negotiation Of The Settlement

6

                Agreement. ....................................................................................... 1

7

        B.      The Settlement Is Otherwise Fair And Reasonable. ........................ 6

8

                1.      The strength of Plaintiffs' case ............................................ 7

9

                2.      The risk, expense, complexity, and likely duration of further
                        litigation ............................................................................... 7

10

                3.      The amount offered in settlement ........................................ 8

11

                4.      The extent of discovery completed and the stage of the

12

                        proceedings .......................................................................... 9

13

                5.      The experience and views of counsel .................................. 9

14

                6.      The reaction of Class members to the proposed settlement ..... 10

15

III.    CONCLUSION ...................................................................................... 10

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979)...............................................................10

5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .................................................................6, 9

6

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  989 F. Supp. 375 (D. Mass. 1997)................................................................3

7

8

*Gribble v. Cool Transps. Inc.*,
  2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)..............................................7

9

*In re Apple Computer, Inc. Derivative Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008)...............................................3

10

11

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................2, 4

12

*In re Catfish Antitrust Litig.*,
  939 F. Supp. 493 (N.D. Miss. 1996)............................................................3

13

14

*In re HP Laser Printer Litig.*,
  2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) .............................................4

15

*In re Mego Fin. Corp. Secs. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .....................................................................9

16

17

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ....................................................................4

18

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (1982) ......................................................................................8

19

20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ......................................................................5

21

22

23

24

25

26

27

28

1  I.  INTRODUCTION

2  At the October 17, 2011 status conference, this Court ordered the parties to file

3  briefs addressing certain issues raised by the Ninth Circuit's August 19, 2011 opinion,

4  which vacated the Court's Final Approval Order and remanded for further

5  proceedings.  In this brief, Defendants provide evidence that there was no collusion in

6  the negotiation of the settlement, and reiterate why the settlement agreed upon by the

7  parties is otherwise fair and reasonable, and should be approved.

8  II.  **THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE AND**

9  **SHOULD BE APPROVED.**

10  Whether or not this Court awards Plaintiffs the full amount of fees they seek,

11  reduces Plaintiffs' fee award, or declines to award Plaintiffs any fees whatsoever (all

12  of which are permissible outcomes under the parties' agreement and under the Ninth

13  Circuit's decision), the class settlement should be approved as fair and reasonable.

14  The Ninth Circuit expressed concern that, because the $800,000 attorneys' fee amount

15  was, in its view, disproportionate to the amount of class relief, the parties may have

16  colluded in order to trade away benefits to the Class.  Accordingly, the Ninth Circuit

17  required this Court to undertake a more searching inquiry into the settlement

18  negotiations for evidence of collusion, in order to determine whether the settlement

19  was fair, reasonable and adequate under Federal Rule of Civil Procedure 23(e).  As

20  explained below, further scrutiny only confirms that there was no collusion here.

21  Moreover, the terms of the settlement are fair to the Class, providing them with more

22  than they could have hoped to recover if they had pursued their baseless claims to

23  trial.

24  A.  **There Was No Collusion In The Negotiation Of The Settlement**

25  **Agreement.**

26  The Ninth Circuit observed that, when cases settle before formal class

27  certification, there is greater potential for plaintiffs' counsel to breach the fiduciary

28  duties they owe to the class.  *See In re Bluetooth Headset Prods. Liability Litig.*, 654

1

1   F.3d 935, 946 (9th Cir. 2011) ("*Bluetooth*").  Accordingly, "such [settlement]

2   agreements must withstand an even higher level of scrutiny for evidence of collusion

3   or other conflicts of interest than is ordinarily required under Rule 23(e) before

4   securing the court's approval as fair."  *Id.*  The Ninth Circuit identified three particular

5   "warning signs" that should trigger close scrutiny of the parties' agreement in

6   evaluating its fairness:  (1) where class counsel received "a disproportionate

7   distribution of the settlement"; (2) where the parties negotiated a "clear sailing"

8   provision; and (3) when the parties arrange for fees not awarded to plaintiffs to revert

9   to defendants.  *Id.* at 947.  Because the potential for all three of these features were

10  present in the settlement agreement here, the Ninth Circuit remanded to this Court to

11  undertake further analysis, and to require the parties to substantiate with corroborating

12  evidence what it labeled as "bald assertions" about the lack of collusion between the

13  parties.  *Id.* at 948-49.

14        To enable this Court to conduct that analysis, and to prove that there was in fact

15  no collusion, Defendants have submitted, concurrently with this brief, declarations

16  from their counsel who were involved in the settlement negotiations.  *See* Declaration

17  of Terrence J. Dee in Support of Motion for Final Approval Of Class Action

18  Settlement Agreement ("Dee Decl."); Declaration of Mark T. Cramer in Support of

19  Motion for Final Approval of Class Action Settlement Agreement ("Cramer Decl.");

20  Declaration of Angel A. Garganta in Support of Motion for Final Approval of Class

21  Action Settlement Agreement ("Garganta Decl.").  These declarations make clear that

22  the parties first negotiated the relief that would be provided to the Class, and only

23  when that relief was agreed upon did they then turn to negotiating the settlement terms

24  related to attorneys' fees.  *See* Dee Decl. ¶¶ 6-7; Cramer Decl. ¶ 7; Garganta Decl. ¶ 7.

25  Indeed, during their initial settlement discussions, the only time the parties mentioned

26  attorneys' fees was to make clear that the subject of fees would only be discussed

27  once an agreement was reached on the merits.  *Id.*  The parties conducted the

28  settlement discussions this way precisely because, as several courts have recognized,

1    doing so helps to avoid any mistaken perception that there was collusion between the

2    parties.  *See* Dee Decl. ¶ 11; Cramer Decl. ¶ 11; Garganta Decl. ¶ 10; *see also In re*

3    *Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5,

4    2008) (affirming approval of settlement where the evidence showed that "the

5    proposed award of attorneys' fees was negotiated separately" from the gross

6    settlement amount); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375,

7    379 (D. Mass. 1997) (holding that "the separate, arm's length negotiation of the

8    attorneys' fees after the other substantive terms of the settlement had been resolved

9    convincingly negative any suspicions that might arise about [collusion]"); *In re*

10   *Catfish Antitrust Litig.*, 939 F. Supp. 493, 497 (N.D. Miss. 1996) (finding no collusion

11   where "the matter of attorneys' fees was not negotiated in conjunction with the

12   settlement agreements, but rather was left as a separate determination to be made by

13   the court").

14         The parties also conducted their negotiations with the assistance of an

15   experienced mediator, the Honorable Steven J. Stone.  *See* Dee Decl. ¶ 5.  While, as

16   the Ninth Circuit noted, "the mere presence of a neutral mediator, though a factor

17   weighing in favor of a finding of non-collusiveness, is not on its own dispositive of

18   whether the end product is a fair, adequate, and reasonable settlement agreement"

19   (*Bluetooth*, 654 F.3d at 948), Justice Stone has also submitted a sworn declaration

20   concerning the parties' mediation.  *See* Declaration of Justice Steven J. Stone (Ret.)

21   ("Stone Decl.").  In that declaration, Justice Stone, who participated in multiple in-

22   person and telephonic mediation sessions with the parties, confirms that "the parties

23   did not negotiate attorneys' fees and costs prior to reaching the settlement for the

24   Class."  *Id.* ¶ 8.  Rather, "the relief provided to the Class members was reached

25   independent of any agreement regarding Plaintiffs' fees and costs."  *Id.*  Justice Stone

26   concludes that he is "not aware of any conduct or activities that would suggest that the

27   parties colluded in negotiating the settlement."  *Id.* ¶ 9.

28         Faced with similar evidence, another court in this district recently applied the

3

1   Ninth Circuit's holding in *Bluetooth* and approved a class settlement as fair under

2   Rule 23(e).  *In re HP Laser Printer Litig.*, 2011 WL 3861703 (C.D. Cal. Aug. 31,

3   2011).  There, as here, all three potential "indicia of implicit collusion" were present.

4   *Id.* at \*4.  But relying on a declaration from the mediator who presided over the

5   settlement negotiations, which demonstrated that fees had only been discussed after

6   the merits components of the settlement had been agreed, the court concluded that the

7   evidence "supports a finding that there was no collusion between the parties in

8   reaching this settlement, despite the presence of the warning signs identified by *In re*

9   *Bluetooth*."  *Id.*

10       The fact is that while the three features identified by the Ninth Circuit might be

11  "warning signs" of collusion in some cases, there was no collusion here.  *See Lobatz*

12  *v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1149 (9th Cir. 2000) (affirming

13  approval of settlement where "although the potential for collusion existed, nothing

14  before the court suggested any collusion occurred, and [the objector] made no such

15  showing").  Rather, other factors explain why the parties structured their agreement as

16  they did.

17       First, with respect to the Ninth Circuit's perception that the fee award was

18  "disproportionate" to the relief provided to the class, Defendants note that in addition

19  to the $100,000 cy pres payment, the settlement agreement also provided for

20  injunctive relief in the form of both new and revised warnings on Defendants'

21  websites and product manuals.  The Ninth Circuit's suggestion that the value of these

22  warnings may be minimal or non-existent because they had already been included on

23  websites and product manuals before the settlement had been agreed (*see Bluetooth*,

24  654 F.3d at 945 n.8) lacks record support, and the evidence in fact refutes it.  *See, e.g.,*

25  Dee Decl. ¶¶ 9-10; Cramer Decl. ¶¶ 9-10; Garganta Decl. ¶¶ 12-13.  Moreover, to the

26  extent the monetary component of the settlement (a $100,000 cy pres payment) might

27  be considered disproportionate to the amount of fees (a maximum payment of

28  $800,000), that is because Plaintiffs' case lacked merit.  Defendants were not willing

4

1    to pay more than $100,000 (in addition to the significant costs of notice, and the costs

2    associated with injunctive relief) in order to settle a baseless claim on the merits.  *See,*

3    *e.g.,* Dee Decl. ¶ 11.

4         Second, Defendants' agreement not to challenge Plaintiffs' attorneys' fees up to

5    a certain level (the so-called "clear sailing" provision) was unconnected to the merits

6    settlement.  Because Defendants' counsel had no visibility into Plaintiffs' counsel's

7    bills in order to evaluate the reasonableness of Plaintiffs' attorneys' fees or their

8    claimed lodestar, Defendants took the position that, while they were not willing to pay

9    more than $800,000 (which Plaintiffs' counsel represented was a significant lodestar

10   reduction), it was up to the Court to determine if ***any*** fees at all were appropriate and

11   could in fact make the determination of reasonableness below that amount without

12   having any impact whatsoever on the settlement.  *Id.* ¶ 12.  The parties' agreement to

13   a maximum amount did not (and could not under Ninth Circuit precedent) guarantee

14   Plaintiffs' counsel any amount of fees; it was for this Court to determine the amount

15   of fees, if any, to which Plaintiffs were entitled.  *See Staton v. Boeing Co.*, 327 F.3d

16   938, 963 (9th Cir. 2003) (noting that "to avoid abdicating its responsibility to review

17   the agreement for the protection of the class, a district court must carefully assess the

18   reasonableness of a fee amount spelled out in a class action settlement agreement").

19   The parties simply agreed to place a cap on that award to limit Defendants' exposure.

20        Third, the fact that the parties agreed that any fees not awarded to Plaintiffs

21   would stay with Defendants is also not evidence of collusion.  Defendants negotiated

22   for no more than $100,000 as the financial component of the merits settlement to send

23   the message that the case had no merit.  Dee Decl. ¶ 13.  Unlike the common fund

24   settlement context, how the money was allocated among the financial components of

25   this settlement (notice, cy pres, fees) was material to Defendants.  To allow potentially

26   $950,000 to go to the Class, for example (if no fees or costs were awarded to

27   Plaintiffs' Counsel), would undermine the public message they intended to send

28   regarding the lack of merit in the lawsuits.  *Id.*

5

1    In addition, adding whatever was not awarded in fees and costs below $850,000

2  to the cy pres component of the merits settlement would be inconsistent with how the

3  parties structured the global settlement to occur in two stages—first, the merits

4  settlement and second, the fees settlement.  The parties' view was that shifting fees

5  and costs not awarded below $850,000 to the cy pres component of the merits

6  settlement would improperly inter-mingle the merits settlement with the fees

7  settlement, undermining the great efforts made by the parties to keep those two

8  settlements separate and distinct.  *Id.* ¶ 14.  And, conceptually, it made no sense

9  because this was not a common fund settlement.  Defendants did not agree to a

10  common fund of $950,000 that would cover cy pres and fee and cost awards under all

11  circumstances.  Rather, Defendants negotiated a specific cy pres amount for the merits

12  settlement and a specific ceiling on fees and costs awarded by the Court.  Thus, unlike

13  the common fund situation, if the Court determines that Plaintiffs are not entitled to

14  $850,000 in fees and costs, there is no "reversion" of anything.  Rather, Defendants

15  will pay in fees and costs what this Court rules is reasonable and warranted up to

16  $850,000.  Just because Defendants are willing to pay that amount in fees and costs

17  does ***not*** mean Defendants were willing to pay any more into the merits settlement or

18  that Plaintiffs' Counsel did not obtain the "full potential benefit" for the Class.  *Id*. ¶

19  15.

20    Because there is no evidence of collusion (and because the evidence

21  affirmatively shows that no collusion occurred), this Court should approve the

22  settlement as written.

23    **B.    The Settlement Is Otherwise Fair And Reasonable.**

24    In addition to considering whether there was any collusion in the negotiation of

25  the settlement agreement, the Court must consider other factors in evaluating the

26  fairness of the settlement.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575

27  (9th Cir. 2004).  While this Court already addressed many of the *Churchill* factors in

28  its prior Approval Order, Defendants again provide a brief overview of the relevant

6

1   factors and why they weigh in favor of approval here.

2   **1.      The strength of Plaintiffs' case**

3   As the Objectors agree, the claims Plaintiffs asserted in this lawsuit were weak.

4   Indeed, according to the Objectors, the correct course is to upend the entire settlement

5   and dismiss the claims as having been pursued in violation of Rule 11.  Regardless of

6   whether the claims would ultimately have been defeated at the pleading stage,

7   summary judgment, or trial, both the Objectors and the Defendants agree that the

8   settlement was more beneficial to the class than if Plaintiffs had proceeded with their

9   baseless claims.

10  That should be dispositive.  By way of settlement, the Class obtained injunctive

11  relief in the form of warnings on Defendants' websites and in Defendants' product

12  manuals, and a $100,000 cy pres payment to charitable organizations dedicated to

13  hearing loss.  By contrast, had the case proceeded to a decision on the merits, the

14  Class would have recovered nothing at all.  As this Court previously acknowledged in

15  its Approval Order, "Defendants have significant defenses and . . . Plaintiffs face the

16  risk of obtaining nothing if they continue to pursue this litigation."  Dkt. No. 299

17  (Final Approval Order) at 10.  The parties were entitled to weigh the respective risks

18  and benefits of proceeding with further litigation or entering into a settlement, and

19  were entitled to choose the latter course.  *See Gribble v. Cool Transps. Inc.*, No. CV

20  06-04863 GAF, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) (noting "it is

21  important to remember that the [settlement agreement] is a better option than not

22  receiving any compensation, which is a reasonable possibility given the questions

23  surrounding Plaintiff's claims and class certification").

24  **2.      The risk, expense, complexity, and likely duration of further**

25  **litigation**

26  Defendants have a strong case on the merits and intended to vigorously

27  challenge Plaintiffs' claims.  Thus, even if some or all of Plaintiffs' claims had

28  survived Defendants' motion to dismiss, there would have been contested class

7

1   certification briefing, likely cross-motions for summary judgment, and *Daubert*

2   challenges to Plaintiffs' expert testimony.  And if the case ever went to trial, it would

3   be a long, contested trial with likely appeals by the losing party or parties.  In short, if

4   this settlement were not approved, further litigation before this Court would be time-

5   consuming, complex, and expensive.

6          Several objectors raised economic concerns that the settlement will cost

7   Defendants money, which will end up costing consumers more because it may cause

8   Defendants to raise the price of their headsets.  But as this Court previously

9   recognized, "[s]uch arguments are better addressed to the legislature than to the

10  courts."  Dkt. No. 299 at 11.  In addition, it would cost Defendants even more money

11  if the Court were to disapprove the settlement, because, even if their position was

12  ultimately vindicated and Plaintiffs recovered nothing, Defendants would have

13  incurred potentially millions of dollars in additional attorneys' fees and costs.

14  Defendants were entitled to make the rational economic decision that it made more

15  sense to resolve the dispute informally than to proceed through further discovery,

16  class certification, dispositive motion practice, and potentially trial to disprove these

17  claims, and expend far more money in doing so than it would cost to settle.

18                **3.      The amount offered in settlement**

19         A proposed settlement should not "be judged against a hypothetical or

20  speculative measure of what might have been achieved by the negotiators."  *Officers*

21  *for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

22  Instead, the Court must consider the settlement terms "as is" and cannot rewrite terms

23  or conditions drafted by the parties.  *Id.* at 630 (the Court is not "empowered to

24  rewrite the settlement agreed upon by the parties" and "may not delete, modify, or

25  substitute certain provisions"); *Hanlon*, 150 F.3d at 1026 ("The settlement must stand

26  or fall in its entirety.").

27         The settlement requires Defendants to add or modify warnings concerning

28  noise-induced hearing loss (NIHL).  The settlement also requires $100,000 in

8

1  donations to nonprofit organizations whose mission involves the prevention of NIHL,

2  which will provide some indirect benefit to the Class.  Specifically, Defendants will

3  fund the following organizations in the specified amounts:  The University of

4  Tennessee College of Medicine, Center for Independent Living Research ("CILR"),

5  $31,666.67; the National Hearing Conservation Association ("NHCA"), $31,666.67;

6  the American Speech and Hearing Association ("ASHA"), $31,666.66; and the

7  Greater Los Angeles Agency on Deafness ("GLAD"), $5,000.  Dkt. No. 299 at 12.

8       The settlement provides more relief than Plaintiffs might have achieved at trial,

9  and it does not otherwise prejudice the Class, specifically excluding personal injury

10  claims.  *See Churchill*, 361 F.3d at 576.  When weighed against the risk that the Class

11  will get nothing if the litigation moves forward, the consideration offered to the Class

12  is adequate.

13       **4.**     **The extent of discovery completed and the stage of the**

14            **proceedings**

15       The parties voluntarily exchanged discovery prior to the execution of the

16  Agreement.  *See* Dee Decl. ¶ 4.  Plaintiffs worked with experts to evaluate their claims

17  and the parties each presented their interpretation of the science related to Plaintiffs'

18  claims to a mediator.  *Id.* ¶ 5; *see also In re Mego Fin. Corp. Secs. Litig*., 213 F.3d

19  454, 459 (9th Cir. 2000) (finding that "significant investigation" of claims weighs in

20  favor of settlement approval).  This factor also weighs in favor of approval.

21       **5.**     **The experience and views of counsel**

22       The settlement here was negotiated over an extended period of time by

23  experienced counsel on both sides, each with a comprehensive understanding of the

24  strengths and weaknesses of each party's respective claims and defenses.  *See* Dee

25  Decl. ¶¶ 2-7.  The settlement was the eventual product of a mediation conducted by

26  the Honorable Steven J. Stone, Presiding Justice, California District Court of Appeal

27  (Ret.), who approved of the settlement.  *Id.* ¶¶ 5-7.  The experience and views of

28  counsel and the mediator support approval of the settlement here.  *Churchill*, 361 F.3d

1    at 576-77.

2              **6.      The reaction of Class members to the proposed settlement**

3         A low percentage of objectors in comparison to the overall Class size weighs

4    heavily in favor of approval of settlement.  *See Boyd v. Bechtel Corp.*, 485 F. Supp.

5    610, 624 (N.D. Cal. 1979) ("[T]he Court finds persuasive the fact that eighty-four

6    percent of the class has filed no opposition.").

7         Although the exact number of Class Members is unknown in the instant action,

8    the Settlement Class is composed of millions of purchasers of Bluetooth headsets

9    across the United States since 2002.  Of these, 715 people have validly elected to opt

10   out of the lawsuit, and 50 have filed written objections with the Court and/or

11   settlement administrator.  *See* Dkt. No. 299 at 16.

12        The relatively small number of objections and requests for exclusion, as

13   compared with the large size of the Class, suggests that the overwhelming majority of

14   the Class considers this settlement to be a favorable development, which supports

15   approval.  *Boyd*, 485 F. Supp. at 624.  In addition, none of the fifty objections in this

16   case raises any concerns that the Class is giving up a valuable right for which Class

17   Members are not getting enough in return.  Instead, the overwhelming majority of

18   objectors suggests that the case is simply meritless and the case should be dismissed

19   (in which case the Class would get nothing at all).

20   **III.   CONCLUSION**

21        For the foregoing reasons, Defendants request that the Court approve the

22   settlement as being fair, reasonable, and adequate.

23

24

25

26

27

28

10

Dated: February 13, 2012

Respectfully submitted,

/s/Mark T. Cramer

Michael E. Baumann
Mark T. Cramer
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071

*Counsel for Defendant Plantronics, Inc.*

Terrence J. Dee
Michael B. Slade
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654

*Counsel for Defendant Motorola, Inc.*

Angel A. Garganta
ARNOLD & PORTER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111

*Counsel for Defendant GN Netcom., Inc.*