MCBREEN & SENIOR
David A. Senior (SBN 108579)
Ann K. Tria (SBN 259138)
1900 Avenue of the Stars
Eleventh Floor
Los Angeles, California 90067
Telephone: (310) 552-5300
Fax: (310) 552-1205
dsenior@mcbreensenior.com

Attorneys for Defendants
*GN Netcom Inc.; Motorola Inc.; and Plantronics Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re: | ) Case No. CV 07-ML-1822 DSF (Ex) |
| | ) |
| Bluetooth Headset Products Liability Litigation | ) **DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS** |
| | ) |
| This document relates to: | ) |
| | ) Judge: Honorable Dale S. Fischer |
| ALL ACTIONS | ) Date: April 16, 2012 |
| | ) Time: 1:30 p.m. |
| _____ | ) Courtroom: 840 |

# TABLE OF CONTENTS

Page

I. Plaintiffs' attorneys' Reasonable Lodestar Is No More Than $1,330,185.20...............................................................................................1

   A. Reasonableness Of Billing Rate ..................................3

      1. Frequent billing rate changes ........................................3

      2. Inefficient delegation of tasks ......................................4

      3. Time billed for clerical and administrative tasks .........6

   B. Reasonableness Of Number Of Hours Billed ..............6

      1. Block-billed time entries ..............................................7

      2. Vague time entries........................................................7

      3. Mistaken time entries ..................................................9

      4. Multiple attendance at events ......................................9

      5. Unnecessary travel time .............................................10

      6. Overstaffing on tasks .................................................10

      7. Summer associate time..............................................11

      8. Time spent preparing declaration in support of motion for attorneys' fees and expenses................................11

**MCBREEN & SENIOR**
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) .................................................................................. 2

*Cruz v. Alhambra School Dist.*,
  601 F. Supp. 2d 1183 (C.D. Cal. 2009) ................................................................. 11

*Democratic Party of Wash. State v. Reed*,
  388 F.3d 1281 (9th Cir. 2004) .................................................................................. 9

*Fisher v. SJB-P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000) .................................................................................. 8

*Hamrick v. Aqua Glass, Inc.*,
  2010 WL 935478 (D. Or. 2010) ............................................................................... 6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................. 1

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................ 1, 2, 7

*Hyland v. Indicator Lites, Inc.*,
  160 F. Supp. 2d 981 (N.D. Ill. 2001) ..................................................................... 12

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 1, 5, 12

*Johnson v. GDF, Inc.*,
  2012 WL 45648 (7th Cir. Feb. 13, 2012) .............................................................. 2, 4

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .................................................................................................. 6

*Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181 (S.D. Cal. 2003) ...... 8

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) .................................................................................... 2

*Wash. Public Power Supply Sys. Secur. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................................. 12

*Webb v. Sloan*,
  330 F.3d 1158 (9th Cir. 2003) ................................................................................ 12

*Welch v. Metropolitan Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) .................................................................................... 7

**Other Authorities**

The National Law Journal,
   "The 2011 Law Firm Billing Survey" Dec. 19, 2011 .......................................... 3

# INTRODUCTION

At the October 17, 2011 status conference, this Court ordered the parties to file briefs addressing certain issues raised by the Ninth Circuit's August 19, 2011 opinion, which vacated the Court's Final Approval Order and remanded for further proceedings. Among other things, the Court specifically requested that all counsel "point[] out areas where there was inappropriate block billing, pointing out time spent that was perhaps excessive and unreasonable, pointing out areas where there were inefficiencies or duplications, that kind of thing . . . ." Dkt. No. 337 (Oct. 17, 2011 Status Conference Tr.) at 5. Based upon a thorough review of Plaintiffs' counsel's bills, Defendants address the reasonableness of Plaintiffs' counsel's fees and costs, and suggest an appropriate lodestar below.

## I. PLAINTIFFS' ATTORNEYS' REASONABLE LODESTAR IS NO MORE THAN $1,330,185.20.

As recognized by the Ninth Circuit in this matter, the "lodestar method" is an appropriate method for calculating legal fees in class actions brought under fee-shifting statutes where the relief sought is primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) ("*Bluetooth*") (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

The lodestar figure is calculated by multiplying the number of hours the prevailing party "*reasonably* expended" on the litigation (as supported by adequate documentation) by a "*reasonable* hourly rate" for the region and for the experience of the lawyer. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphases added). The party seeking fees bears the burden of

documenting the hours expended and must submit evidence supporting those hours and the rates claimed. *Id.* Accordingly, in determining the appropriate lodestar amount, a court should exclude from the fee request any hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. In addition to setting the reasonable number of hours, the court must also determine a reasonable hourly rate, "considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Evidence that counsel typically charges the requested billing rate and that the market generally supports such a rate is sufficient to demonstrate the reasonableness of a requested billing rate. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."); *see also Johnson v. GDF, Inc.*, 2012 WL 456484, at *4 (7th Cir. Feb. 13, 2012) ("The best evidence of an attorney's market rate is his or her actual billing rate for similar work.")

      In approving the settlement agreement, this Court previously applied the lodestar method, but did not make an explicit determination of the lodestar figure. Rather, based on its own analysis, the Court determined that the lodestar figure "substantially exceeds" the $800,000 Defendants agreed to pay to Class Counsel for its legal fees, notwithstanding certain questionable time entries submitted by Class Counsel. In response to the Ninth Circuit's ruling that an explicit determination of the lodestar figure is required to evaluate the reasonableness of the settlement agreement, this Court has instructed Defendants to "point out issues to the Court that may impact the [lodestar] and

2

DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

suggest an appropriate [lodestar]."[1]  Accordingly, the Defendants have undertaken a thorough review of Class Counsel's submitted legal fees and made an independent determination of the appropriate lodestar figure in this case.

Each of the seven law firms representing the Plaintiffs submitted a declaration in support of its respective request for payment of its legal fees and expenses.[2]  During the period covered by such declarations—April 1, 2006 through July 31, 2009—Class Counsel billed a total of $1,663,853 in legal fees and $98,660.09 in expenses for a total of $1,762,513.09.  After reviewing Class Counsel's declarations, relevant case law, and general principles regarding the reasonableness of attorneys' fees, the Defendants concluded that while the hours expended in the litigation by Class Counsel and billing rates of Class Counsel were generally reasonable,[3] there were certain billing practices that warrant reduction of time or billing rate.

### A. Reasonableness Of Billing Rate

With respect to reductions in billing rate, the Defendants identified the following categories of practices that warrant a reduction in Class Counsel's requested fees: (a) frequent billing rate changes; (b) inefficient delegation of tasks; and (c) time billed for clerical and administrative tasks.  These categories are discussed in turn below.

#### 1. Frequent billing rate changes

While it is customary for law firms to increase their billing rates annually,[4] Pearson, Simon, Warshaw & Penny, LLP ("PSWP") increased billing

---

[1] Dkt. No. 337 (Oct. 17, 2011 Status Conference Tr.) at 4.

[2] *See* Dkt. Nos. 145, 146, 147, 148, 149, 150, 152, 268, 269, 270, 271, and 272.

[3] Except as discussed herein, the Defendants have no reason to doubt the representations contained in the declarations that the billing rates reported in the declaration are those regularly charged by the attorneys in other matters as well as generally supported by the market based on the Defendants' knowledge of the firms and the legal markets within which they operate.

[4] The National Law Journal reports that, prior to 2009, law firms typically

3
DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

rates for two partners several times and by significant percentages during the course of the litigation. Specifically, between 2007 and 2009, the billing rate of two senior partners of the firm was increased from $500 an hour to $750 an hour—a 50% increase. In the first year of litigation, the partners' billing rate increased from $500 an hour to $650 an hour and less than six months later, the rate was again increased from $650 an hour to $750 an hour. Because the Defendants do not believe the rate increases can be justified by elevation within the firm or market increases in billing rates generally, the Defendants recommend that the rate increase from $650 an hour to $750 an hour be ignored for purposes of calculating the lodestar figure. *See Johnson*, 2012 WL 456484, at *4 (when applicant fails to meet its burden to establish its market rate, "the district court may make its own rate determination."). This results in a $3,827.50 reduction of Class Counsel's legal fees for purposes of calculating the lodestar figure.[5]

### 2. Inefficient delegation of tasks

The tasks involved in the prosecution and defense of major multi-party litigation such as this litigation vary in complexity and difficulty and require different skill sets and levels of experience, and law firms have an obligation to match the requirements of the task to the skill sets and experience of the individuals performing the work in a cost-effective and efficient manner. *See*

---

raised billing rates six to eight percent each year. *See* The National Law Journal, "The 2011 Law Firm Billing Survey" Dec. 19, 2011, available at http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202535946626&The__Law_Firm_Billing_Survey&slreturn=1.

[5] The fees charged as a result of the billing-rate increase actually total $13,610, however, only $3,827.50 should be deducted on account of frequent rate changes since $9,332.50 in fees for the same entries is recommended to be deducted on account of block billing, $910 in fees for the same entries is recommended to be deducted on account of inappropriate delegation of tasks, and $750 for the same entries is recommended to be deducted on account of work performed on the motion for attorneys' fees and costs, as discussed further herein.

4
DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

*Bluetooth*, 654 F.3d at 942 n.7 (identifying "the skill requisite to perform the legal service properly" and "the experience, reputation, and the ability of the attorneys" as two of the "twelve factors relevant to a determination of reasonable attorneys' fees").  In certain instances, Class Counsel billed time for services performed by more senior attorneys that could have—and should have—been performed by an individual within the firm at a less senior level of experience and lower hourly billing rate.  One obvious example of inefficient delegation of tasks was an attorney at PSWP spending 1.1 hours and charging a billing rate of $455 an hour to "prepare hearing binder for motion to dismiss hearing."  That is work more appropriately performed by an administrative assistant or a paralegal.  More typically, time was billed by mid-level attorneys for legal and factual research that could have been performed by a junior associate or even a paralegal.  For example, attorneys at Segal, McCambridge, Singer & Mahoney, Ltd. ("SMSM") billed over 10 hours at a rate of $400 an hour to monitor and review consumer report websites and blogs for complaints on Bluetooth headset devices.  In total, the Defendants found 136 instances of inefficient delegation of tasks totaling 304.5 hours billed and $147,200.50 in legal fees.  To the extent the invoices reflected the availability of individuals billing a lower hourly rate, the billing rate of such billers should be applied to the number of hours spent on the tasks.  To the extent that the invoices do not reflect the availability of individuals billing a lower hourly rate, a 30% reduction to the respective charges seems reasonable.   The Defendants recommend a $79,794 reduction of such fees for purposes of calculating the lodestar figure—an aggregate reduction of approximately 54% of fees requested for such tasks.

### 3. Time billed for clerical and administrative tasks

As a general matter, law firms should not bill a client for the performance of clerical or administrative tasks, such as opening a database, organizing the case file, calendaring case deadlines, or retrieving documents from a case docket. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."); *Hamrick v. Aqua Glass, Inc.*, 2010 WL 935478, at *7 (D. Or. Mar. 12, 2010) ("Clerical costs are typically considered overhead expenses that are reflected in the hourly billing and are not reimbursable."). In total, Class Counsel billed a total of 58.8 hours for clerical and administrative tasks, resulting in $11,805.50 in legal fees. Fifty one of the hours were spent by an associate of SMSM revising and inputting comments to a PowerPoint presentation. Given that these types of tasks should have been delegated to clerical staff or other non-billing individuals, the Defendants recommend the Court reduce Class Counsel's fees by $11,805.50.

### B. Reasonableness Of Number Of Hours Billed

With respect to the reasonableness of the number of hours billed, the Defendants identified the following categories of practice that warrant a reduction of Class Counsel's requested fees: (a) block-billed time entries; (b) vague time entries; (c) mistaken time entries; (d) multiple attendance at events; (e) unnecessary travel time; (f) overstaffing on tasks; (g) summer associate time; and (h) time spent preparing declarations in support of the motion for

payment of attorneys' fees and expenses.

### 1. Block-billed time entries

All but one of the Plaintiffs' law firms had instances of "block-billing," the practice of lumping two or more tasks into a single billing entry for which the total amount of time for all tasks is indicated. For example, an entry submitted by PSWP for a total of 3.2 hours read: "Legal research regarding case management; review proposed joint Case Management Conference Statement; e-mails and telephone conference with Steve Garcia regarding same." In *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), the Ninth Circuit affirmed the authority of the district court to reduce block-billed time entries on the basis that it made it difficult, if not impossible, to analyze the reasonableness of the time billed for each task. The court cited a California State Bar Arbitration Advisory Opinion which concluded that block billing "may increase time by 10% to 30%." *Id.* (citing The State Bar of California Committee on Mandatory Fee Arbitration, *Arbitration Advisory 03-01* at 7 (2003)). In the aggregate, the Defendants identified 586.6 hours of block-billed time entries totaling $257,310.50 in legal fees. Applying a 30% reduction to such fees, the Defendants recommend the Court reduce Class Counsel's requested fees by $77,193.15 for purposes of calculating the lodestar figure.

### 2. Vague time entries

A party requesting payment of its legal fees must present time recorded in sufficient detail so that the work performed or task accomplished is clearly described or precisely communicated in a meaningful way. *See Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). A number of invoices submitted by Class Counsel made it difficult or impossible to determine the nature of the task performed, whether the proper amount of time was billed for the task, and

7

DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

whether the work was performed at an appropriate billing rate. Perhaps most notably, Wyly-Rommel, PLLC ("WR") failed to indicate in its declaration the level of experience of each billing attorney. Instead, WR appears to have billed two partners at $650 an hour and all associates—irrespective of level of experience—at $450 an hour. Moreover, *none* of the time entries submitted by WR contained a description of the tasks performed. Instead, WR simply provided the aggregate time billed by each attorney to one of ten task descriptions. Without a description of the tasks performed for each time entry, it is impossible to evaluate the reasonableness of the time incurred. *See Welch,* 480 F.3d at 948. Defendants thus recommend a 30% across-the-board reduction of WR's requested fees (after elimination of time incurred in preparation of WR's fee motion and certain overhead expenses), resulting in a total fee reduction of $62,289.75. *See Fisher v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (a court may make an across-the-board reduction of "poorly documented" fees); *Mogck v. Unum Life Ins. Co. of Am.,* 289 F. Supp. 2d 1181, 1195 (S.D. Cal. 2003) (reducing attorneys' fees by 10% to account for vague billing entries).

      The Garcia Law Firm ("GLF") also submitted five time entries that were so vague it was impossible to ascertain the reasonableness of the time incurred in connection with the task performed. For example, 18 minutes were billed at $300 an hour under the bare description "Legal Research." The Defendants recommend a 30% reduction of fees incurred for the five vague time entries submitted by GLF, totaling a $465.90 reduction in fees. The Defendants do not recommend reduction of other Class Counsel fees because of vague time entries because such entries fell into another category that already warranted either a 30% reduction of the fees or elimination of the fees entirely.

8

DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

### 3. Mistaken time entries

In reviewing the invoices submitted by Class Counsel, the Defendants found four types of mistaken time entries: (a) time entries without narratives; (b) repeated time entries in the same day that should have only been entered once; (c) entries for correspondence or meetings with other attorneys that only one attorney billed for; and (d) miscalculations in the overall charges incurred. In total, Class Counsel submitted mistaken entries resulting in $6,588.75 in excess legal fees. Given the erroneous nature of these entries, the Defendants recommend subtracting $6,588.75 from Class Counsel's legal fees for purposes of calculating the lodestar figure.

### 4. Multiple attendance at events

It is unreasonable to charge a client for the legal fees of two or more lawyers for the performance of a task that can and should be completed by one competent attorney. *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004) ("[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do."). While the Defendants understand that seven law firms represent different members of the class and that representatives needed to be present at certain litigation-related events, it was unreasonable to send multiple attorneys from the same firm to non-dispositive conferences or hearings, especially since certain law firms did not send any attorneys to such events. For example, PSWP participated in a May 29, 2007 conference by telephone, while GLF sent two attorneys to attend in person. In total, four firms sent two attorneys to non-dispositive conferences, hearings, or mediations where one attorney could have competently handled the matter. The Defendants believe it is appropriate in calculating the lodestar figure to disallow

9

DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

duplicative fees incurred by the attorney with the lower hourly billing rate that attended the event. Here, following that calculation, the Defendants recommend a reduction in Class Counsel lodestar of $28,588.50.

### 5. Unnecessary travel time

The Defendants believe it is unreasonable for attorneys to incur legal fees and expenses to attend brief meetings or non-dispositive court conferences if in-person attendance is not required. In this matter, an attorney from SMSM incurred 19 hours of unnecessary travel time for an initial conference with the Defendants' counsel to discuss case management and 15 hours of unnecessary travel time for a Rule 26 discovery conference. In today's technologically advanced world, where both telephone and video conference capabilities exist precisely to foster cost-efficient billing practices, incurring $13,600 in legal fees for 34 hours of travel to attend two non-dispositive conferences is not reasonable. As such, the Defendants recommend the Court reduce Class Counsel's fees by $13,600 for purposes of calculating the lodestar figure.

### 6. Overstaffing on tasks

The invoices submitted by Class Counsel reveal certain instances of overstaffing on particular matters. For example, the law firm of Wasserman Comden & Casselman, L.L.P. ("WCC") utilized several associates with no clear or recurring connection to the case who performed research assignments that seemed to duplicate work already being performed by other attorneys. For example, an associate from the law firm of Kirtland & Packard LLP billed 0.8 hours to "review file regarding status and conference with Heather re assignment"; yet the same associate did not bill time for working on or completing the assignment. In total, Class Counsel billed 11.1 hours on seemingly unnecessary tasks resulting in a total of $7,415.00 in legal fees. Because these charges provided no value to the Plaintiffs in the course of

litigation, the Defendants recommend deducting all such time in its entirety for purposes of calculating the lodestar figure. *Cruz v. Alhambra School Dist.*, 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) ("Billed time that includes unnecessary duplication of effort should be excluded from the lodestar.")

### 7.  Summer associate time

WCC was the only Plaintiffs' law firm that charged for work performed by summer associates. Specifically, the firm charged for 84.2 hours of work performed by summer associates, totaling $8,420 in legal fees. While certain courts have allowed summer associates to bill time to clients on the basis that their billing rates already reflect a low level of experience, *see, e.g., James H. Matthews & Co.*, 682 F.2d at 840, here, the work performed by the summer associates seemed largely duplicative of work performed by other attorneys. For example, an associate from WCC billed four hours for conducting legal research and writing a memorandum regarding "different types of classes and notice costs." And on the same day, another associate billed six hours to prepare a memorandum on notice costs. Because the work performed by the summer associates appears to have been performed more as a training mechanism rather than to provide a benefit for the Plaintiffs, the Defendants recommend writing off the entire $8,420 in legal fees billed by summer associates from Class Counsel's requested fees.

### 8.  Time spent preparing declaration in support of motion for attorneys' fees and expenses

Four of the Plaintiffs' law firms submitted legal fees incurred with preparing the motion for payment of attorneys' fees and expenses and their respective declarations filed in support of the motion.[6] For example, WCC purportedly spent 47.1 hours preparing its declaration, resulting in a total of

---

[6] *See* Dkt. Nos. 145, 146, 147, 148, 149, 150, 152, 268, 269, 270, 271, and 272.

11

DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

$11,035 in legal fees, and PSWP purportedly spent 34.1 hours preparing its declaration, resulting in a total of $19,301 in legal fees. In preparing their declarations, the law firms presumably had little more to do than recycle standard forms likely submitted in other matters and attach the time reports they already keep in their ordinary practice. For that reason, and because preparation of the declarations did not confer any benefit on the Plaintiffs,[7] the Defendants recommend reducing Class Counsel's fees by the entire $33,679.75 that was billed on account of preparing the motion and declarations for attorneys' fees and expenses. *See generally Webb v. Sloan*, 330 F.3d 1158, 1170 (9th Cir. 2003) (holding a reduction in hours is appropriate if the court reasonably concludes that preparation of a motion "demanded little of counsel's time."); *see also Hyland v. Indicator Lites, Inc.*, 160 F. Supp. 2d 981, 986 (N.D. Ill. 2001) (holding that reduction in hours billed by prevailing party's attorney for drafting complaint was warranted where complaint contained standard formulations and was drafted using "cutting and pasting").

As described above, the Defendants recommend that the Court reduce Class Counsel's requested fees by $333,667.80 for purposes of calculating the lodestar figure to account for certain billing practices that warrant reduction.[8]

//
//

---

[7] In common fund cases, the time spent attempting to recover attorneys' fees is not compensable because it does not benefit the plaintiff class. *Wash. Public Power Supply Sys. Secur. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). While not a common fund case, this reasoning should nevertheless be applied here because the Ninth Circuit instructed this Court to "ensure that the fee award is reasonable considering, *inter alia*, …[the] benefit to the class." *Bluetooth*, 654 F.3d at 945.

[8] Attached hereto as Exhibit 1 is a summary chart detailing the recommended fee reductions on a firm-by-firm and category-by-category basis.

12

DEFENDANTS' BRIEF IN SUPPORT OF LODESTAR ANALYSIS

The Defendants therefore believe the appropriate lodestar figure to apply to Class Counsel's fees is $1,330,185.20.

Dated: February 21, 2012        MCBREEN & SENIOR

By: /s/ Ann K. Tria
    DAVID A. SENIOR
    ANN K. TRIA

    Attorneys for Defendants
    *GN Netcom Inc.; Motorola Inc.;
    and Plantronics Inc.*