UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| Case No. | 07-ML-1822 DSF (Ex) | Date | 7/31/12 |
|---|---|---|---|
| Title | In re Bluetooth Headset Products Liability Litigation | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order re Settlement Approval and Attorneys' Fees After Remand

    This matter is here on remand from the Ninth Circuit Court of Appeals with instructions for this Court to "conduct a more searching inquiry into the fairness of the negotiated distribution of funds, as well as consider the substantive reasonableness of the attorneys' fee request in light of the degree of success attained." In re Bluetooth Headset Products Liability Litig., 654 F.3d 935, 938 (9th Cir. 2011) (Bluetooth).  The Circuit did not order that this Court reach a different result, but rather that it take certain steps, and then exercise its discretion in accordance with the principles outlined in the opinion. Id. at 950.  The Circuit has identified several concerns that this Court is to address in performing its task.[1]

## Reasonableness of Attorneys' Fee Request

    As the Circuit recognized, the objections previously filed were "motivated by the same issue: what [Objectors] claim are excessive attorneys' fees, negotiated unfairly by class counsel and ultimately awarded unreasonably" by this Court. Id. at 940.  Therefore, the Court first considers – as directed by the Circuit, id. at 946 –  the reasonableness of the fees requested by Plaintiffs' counsel.  Here, the Circuit identified four tasks for this Court:

---

[1] To the degree that the Court's previous findings as to the fairness of the settlement were not questioned by the Circuit, id. at 947, the Court sees no reason to revisit them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

> On remand, the district court should (1) decide whether to treat the settlement as a common fund; (2) choose the lodestar or percentage method for calculating a reasonable fee and make explicit calculations; (3) ensure that the fee award is reasonable considering, inter alia, the degree of success in the litigation and benefit to the class; and (4) if standard calculations yield an unjustifiably disproportionate award, adjust the lodestar or percentage accordingly.

Id. at 945.

Based on the evidence and supplemental argument from the parties, the Court concludes that the settlement should not be treated as a common fund. While there was some relatively minimal monetary cy pres recovery, the primary achievement of the settlement was injunctive relief. It is uncontroverted that Defendants did not include hearing loss warnings in their products at the time the underlying lawsuits were filed. Although they added warnings during the course of the litigation, it is also uncontroverted that they altered those warnings in response to the settlement of this case. As the injunctive relief implies, there was a public interest aspect to this case beyond the private interests of the various class members. In the Court's view of the case, the argument for general injunctive relief – i.e., warnings regarding hearing loss – was significantly stronger in a class action setting than the argument for any monetary relief for past purchasers of the devices at issue. This is because it is relatively easy to see the potential for problems with hearing loss and the potential need for warnings, but it would be difficult to prove that a past purchaser suffered any meaningful level of economic harm from a failure to warn.

As the settlement is not a common fund, the Court again concludes that the lodestar method is a more appropriate method of calculating a reasonable fee. See Bluetooth, 654 F.3d at 941. While the Court had previously recognized its obligation to insure that the fee award was reasonable, it did not explain the steps it performed in a manner that would provide the Circuit a sufficient basis for review. Perhaps most importantly, although the Court spent a significant number of hours performing a line by line review of the billings of numerous law firms, it stopped too soon. Instead of using a substantial sample to determine that the lodestar amount "substantially exceed[ed]" the $800,000 provided for in the clear sailing agreement, it should have "done more to assure itself – and [the Circuit] that the amount awarded was not unreasonably excessive in light of the results achieved." Id. at 943. In order to do so the Circuit suggests the Court should have made (1) an explicit calculation of a reasonable lodestar amount; (2) a comparison between the settlement's attorneys' fee award and the benefit to the class or degree of success in the litigation; and (3) a comparison between the lodestar amount and a reasonable percentage award. See id. at 943.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

## Calculation of a Reasonable Lodestar Amount[2]

On remand, to address this first requirement and recognizing the existence of the clear sailing agreement[3], the Court nevertheless ordered Defendants to review Plaintiffs' counsel's fee submissions, and provide a lodestar calculation.[4] Defense counsel did so - concluding that the "reasonable lodestar is no more than $1,330,185.20." (Defs' Br. in Support of Lodestar Analysis at 1.) Plaintiffs' counsel objected to various aspects of that calculation,[5] but noted that the calculation amply supported the fee request and the Court's prior finding that the lodestar amount substantially exceeded the $800,000 requested by Plaintiffs' counsel.

"The 'lodestar' figure is calculated by multiplying the number of hours the prevailing party *reasonably* expended on the litigation (as supported by adequate documentation) by a *reasonable* hourly rate for the region and for the experience of the lawyer." Bluetooth, 654 F.3d 941 (emphasis added). In its October 22, 2009 Order Setting Class Counsel's Attorneys' Fees and Costs, and Incentive Award, the Court raised numerous concerns about the billing statements, including excessive charges for most of the categories of services and duplicative entries, a substantial amount of "block billing," and a unilateral determination to charge then-current rates rather than employing a prime enhancement. In accordance with this Court's order at the April 16, 2012 hearing, the defense dutifully addressed those issues. First, Defendants' review of the billing statements identified unjustified increases in billing rates and proposed a reduction of $3,827.50. Plaintiffs do not object to this category and the Court's review of the

---

[2] The Court here considers only the reasonableness of the fees billed in light of the services performed, not in relation to the results achieved.

[3] The clear sailing provision provided: "Defendants agree that the attorneys' fees, costs, and incentive awards, as set forth in Paragraphs 3.5-3.7 are reasonable, and thus will not object to or oppose an award of attorneys' fees, costs, and incentive awards for the Representative Plaintiffs, provided the amounts sought do not exceed that provided for by Paragraphs 3.5-3.7." (Dkt. No. 61 at 15 (¶ 5.10).) Paragraph 3.6 provided for attorney's fees not to exceed $800,000. Defendants did not object - and still have not objected - to an award in that amount.

[4] Plaintiffs' counsel contend the lodestar is $1,663,853, in addition to $98,660.09 in expenses.

[5] Notably, Objectors provided no assistance in this regard - remaining steadfast in their contention that the settlement was a common fund. This position appears to result from Objectors' desire to have a fund from which they too can seek attorneys' fees. (Renewed Obj. to Proposed Settlement at 19:16-18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

billings supports the reduction.  The purported lodestar is therefore reduced by $3,827.50.

Next the defense proposes reduction for inefficient delegation of tasks.  Based on its seventeen years of experience as a civil litigator and its more than fifteen years as a bench officer evaluating fees, the Court agrees with Plaintiffs' counsel that tasks performed by more experienced attorneys are often performed more efficiently and are more cost-effective than tasks performed by junior attorneys or paralegals.  That said, the Court finds no such efficiency here.  As noted previously, the hours billed and the fees incurred for a number of tasks are - based on this Court's extensive experience - excessive.  No reasonable paying client, and certainly not a sophisticated client paying out of its own pocket, would pay the amount of fees billed for some of the tasks performed in this case.[6]  Even less convincing is the excuse that neither Pearson, Simon Warshaw & Penny, LLP (PSWP) nor Wasserman Comden & Casselman, L.L.P. (WCC) had lower level attorneys to assist them.  (Pls' Resp. to Defs' Br. in Supp. of Lodestar Analysis at n.3.)  Had the Court known that neither firm had the proper staffing available, it likely would not have found them to be appropriate as class counsel.  Certainly no reasonable paying client would find this to be justification for billing a partner rate for paralegal or secretarial work.  The Court's review of the billing statements confirms the propriety of the recommended reduction.  The purported lodestar is reduced by $79,794.

Defense counsel also recommends a reduction for time billed for clerical and administrative tasks, citing Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989).  Plaintiffs' counsel do not dispute this reduction and the Court, after review of the billing statements, finds it somewhat generous to Plaintiffs' counsel, but reasonable.  The purported lodestar is reduced by $11,805.50.

---

[6] In Moreno v. City of Sacramento, 534 F.3d 1106 (9th Cir. 2008), the Circuit evaluated a fee award in a civil rights case.  To the extent that case is relevant, it supports the reduction recommended by the defense.  Moreno makes clear that the number of hours *reasonably* expended is multiplied by the "prevailing rate for an attorney of the skill required to perform the litigation." Id. at 1111.  Moreover, '[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." Id.  Indeed, the flaw in some of the logic applied to fee evaluation in cases such as this results from the fact that class representatives do not retain class counsel in the same way as other clients do.  They presumably do not interview prospective counsel, do not require an RFP (request for proposal), do not negotiate a reduced rate, do not provide guidance or supervision to counsel concerning what tasks they are - or are not - willing to pay for, and do not review, critique, and reduce the amounts charged by the attorneys.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Finally, the defense evaluated the reasonableness of the number of hours billed and identified eight categories that warranted reduction: (1) block-billed time entries, (2) vague time entries, (3) mistaken time entries, (4) multiple attendance at events, (5) unnecessary travel time, (6) overstaffing on tasks, (7) summer associate time, and (8) time spent preparing declarations in support of the motion for payment of attorneys' fees and expenses. Plaintiffs' counsel challenges only some of these reductions.[7] The Court generally finds the challenges unpersuasive.

For example, the defense contends that Plaintiffs' counsel had too many attorneys present in person for certain meetings, etc. Plaintiffs' counsel respond that defense counsel regularly traveled to and attended meetings in person. But that is not particularly relevant. The Court is not evaluating the reasonableness of defense counsel's fees. That is a task for Defendants. And there is no evidence that Defendants actually paid for such travel and attendance - which would be a more appropriate analogy, or even that defense counsel billed the client for these events. Plaintiffs' counsel object to a reduction for the work of summer associates, but do not establish that it is customary in the relevant community for law firms to bill for summer associate work. (See Defs' Reply to Pls' Resp. to Defs' Br. in Supp. of Lodestar Analysis at 2.) Moreover, they admit that at least some aspect of the summer associates' work was training. (Pls' Resp. to Defs' Br. in Supp. of Lodestar Analysis at 6. ( "The summer associate work performed in this case was substantive and was not done solely as a 'training mechanism.'").) No reasonable paying client will pay for "training" summer associates.

Defense counsel recommend a 30% across the board reduction of the fees billed by Wyly-Rommel, PLLC (WR)[8] for various reasons, including "that *none* of the time entries submitted by WR contained a description of the tasks performed." The total recommended reduction is $62,289.75. (Defs' Br. in Supp. of Lodestar Analysis at 8.) Plaintiffs' counsel argue that WR "submitted a declaration pursuant to this Court's October 17, 2011 order that included 61 pages of detailed time entries with descriptions of tasks performed. See Declaration of Daniel L. Warshaw, ¶ 3." (Pls' Resp. to Defs' Br. in Supp. of Lodestar Analysis at 3.) This is the same fee submission previously provided to the Court as docket number 305. (Id.) Having made a line-by line review of WR's

---

[7] Plaintiffs' counsel admit that "[c]arefully scrutinizing billing records from seven law firms and dozens of attorneys will undoubtedly reveal some inconsistencies, duplicative efforts, and faulty time entries," and "do not challenge Defendants' analysis in those areas." (Pls' Resp. to Defs' Br. in Supp. of Lodestar Analysis at n.3.)

[8] The billing statements for WR appear to include fees billed by Emerson-Poynter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

"detailed" billing statements, the Court concludes even a 30% reduction is generous. No reasonable paying client would pay the amount billed by WR. That firm seems to have billed a total of 411.3 hours[9], which includes more than 500 separate entries substantially or solely for telephones calls, conferences, or review or preparation of emails or correspondence - some of which provide details as to subject matter and some of which do not. There are numerous days in which the manner of billing clearly increased the fees incurred over the time actually spent. For example, on December 20, 2006, timekeeper "SFR" billed .25 hours for each of the following three tasks: (1) "Receipt and review of e-mail regarding MDL hearing"; (2) "Receipt and review of e-mail regarding MDL motion"; (3) "Receipt and review of e-mail regarding MDL and Oklahoma case." On February 12, 2007, timekeeper "JTP" billed the following: (1) .30 hours for "Telephone conference with Scott Poynter regarding complaint"; (2) another .30 hours for "Telephone conference with Scott Poynter regarding complaint"; (3) .50 hours for "Telephone conference with Scott Poynter regarding status"; (4) .30 hours for "Telephone conference with J. Wyly regarding status"; and (5) .30 hours for "E-mail correspondence from Scott Poynter with attached pleadings." Days with similar billing strings appear regularly throughout WR's statements. Just as block billing can improperly result in increased billing, billing separately to take advantage of the inherent overstatement of billing in tenths of an hour when less than 6, 12, or 18 minutes (for example) is spent on any individual task, can result in significant overbilling.[10] In addition, its appears that at least JTP bills an entirely inappropriate minimum of .30 hours no matter what the actual amount of time spent was. For example, on May 17, 2007, timekeeper "JCW" billed .1 hour for reviewing each of two emails from "SG," while JTP appears to have billed .30 hours for reviewing each of those two emails. This would also explain why JTP bills .30 hours for leaving a message. (See, e.g., 2/13/07 and 2/21/07 entries.) Other entries are cryptic, to say the least, and seem to provide no value to the class. (See, e.g., 2/23/07 and 2/26/07 JCW entries of 1 hour each for "Contingent fee.") Not only is the time spent by JTP excessive, it appears that James Wyly's conclusion in his declaration that the fees are reasonable and necessary is simply unsupportable. Other examples of inappropriate billing abound and defense counsel's across the board reduction of only 30% is generous.

---

[9] Exhibit A to the Declaration of James C. Wyly detailing the tasks performed states a total of 411.30 hours, but the chart contained in the Declaration indicates a total of 414.25 hours.

[10] If an attorney spends two minutes reading each of ten emails, the client would expect to pay for 20 minutes of the attorney's time. However, billing for reading each email separately at the minimum increment of one-tenth of an hour would result in billing for one hour.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The Court agrees with the analysis made by defense counsel as to categories (1) - (7) and reduces the purported lodestar figure attributable to these categories by $206,061.05.[11]

The Court finds there is some merit to Plaintiffs' objections to the reduction in fees expended on their attorneys' fee requests. The Court has determined that this is not a common fund case, and counsel are entitled to *reasonable* fees for preparation of their fee requests. See In re Conservatorship of Whitley, 50 Cal. 4th 1206, 1226 n.5 (2010). However, the amounts billed were not reasonable. The Court found Plaintiffs' counsel's original submission to be substantially lacking and required a submission that would allow the Court to comply with its obligations under Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003). Thus the portion of the original billing submissions that eventually proved worthless or that attempted to convince the Court that greater scrutiny was unwarranted was not reasonable and cannot be compensated. In addition, the Court finds the amount of fees billed generally for the fee submission task was excessive based on this Court's experience with such applications.[12] Recognizing that this category has already been reduced by some small amount for the reasons previously stated, the Court reduces the purported lodestar by $2,679.75.

While some of defense counsel's proposed reductions address excessive billing, they do not adequately address the extraordinary amounts of time charged by Plaintiffs' counsel for some tasks. In response to the Court's request for supplemental information concerning the billings, Plaintiffs' counsel developed a method for all counsel to submit their time sorted by 11 categories: (1) investigation/due diligence; (2) preparation of complaint (pre-MDL transfer); (3) MDL briefing and hearing; (4) court appearances and case administration; (5) formal/informal discovery; (6) preparation of consolidated amended complaints; (7) experts; (8) motion to dismiss; (9) settlement and mediation; (10) approval of settlement; and (11) attorneys' fee briefing. While the amounts billed in each of the categories appears at least somewhat excessive, the Court focuses on only the

---

[11] The defense deducted all of the fees charged for preparation of the fee brief declaration. Because the Court concludes WR is entitled to some portion of its fees for that declaration, the Court deducts less from the WR billings than the defense recommends.

[12] The Court finds no merit in the argument that the attorneys' fees applications benefitted the class because they achieved a $12,000 incentive award for the nine class representatives. Only a few hours at most were attributable to that effort and no private client would have paid the amount charged ($33,679.75) to obtain this result.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

five most egregious: categories (2), (4), (6), (9), and (10).[13] [14]

With regard to pre-MDL preparation of complaint, WCC billed 91.1 hours, for a total of $45,550.[15] The McHugh Fuller Law Group, PLLC (MFLG) billed 78.6 hours, for a total of $27,150.[16] Segal, McCambridge, Singer & Mahoney, Ltd. (SMSM) billed 22.4 hours, for a total of $9,027.[17] Kirtland & Packard, LLP (K&P) billed 70.7 hours, for a total of $32,522.[18] Collectively, these firms billed 262.8 hours, for a total of $114,249.

With regard to preparation of the consolidated amended complaints, WCC billed 81.9 hours, for a total of $40,950. WR billed 191.1 hours, for a total of $95,275. PSWP billed 51.65 hours, for a total of $22,361.25. MFLG billed 20.5 hours, for a total of $7,275. SMSM billed 20.2 hours, for a total of $8,140.60. The Garcia Law Firm (GLF) billed 79.6 hours, for a total of $34, 997.50. Collectively, these firms billed 444.95 hours, for a total of $208,999.35.

With regard to Court Hearings/Case Administration, WCC billed 302.5 hours, for a total of $119,790. WR billed 54.8 hours, for a total of $26,560. PSWP billed 63.95 hours, for a total of $32,306.25. SMSM lumps this time into other categories, preventing

---

[13] Not all firms used these precise categories, making the Court's mandated analysis more difficult.

[14] The Court addressed the attorneys' fee briefing earlier in this Order.

[15] WCC calculates the hours spent, but not the fees charged, for each of the categories. Plaintiffs' counsel has the burden of presenting its billings in a manner that permits the Court to calculate the lodestar properly. The overwhelming majority of entries for most categories are billed at $500 per hour and the Court uses that rate for all but the Court Hearings/Case Administration category, for which it uses a blended rate - which it determined to be $396.

[16] MFLG totaled the fees, but not the hours, leaving the Court to perform the calculations for it. In addition, MFLG described some items as "Investigation/Due Diligence" that clearly should have been placed in the "pre-MDL preparation of complaint" category.

[17] Like WCC, SMSM provided the total number of hours but not the total dollar amount. The Court applies a blended rate of $403. The Court's analysis of the rates charged by these timekeepers indicates this blended rate is appropriate for all categories.

[18] Like WCC, K&P provided the total number of hours but not the total dollar amount. The Court applies a blended rate of $460 per hour. The Court's analysis of the rates charged by these timekeepers indicates this blended rate is appropriate for all categories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

the Court from performing a complete analysis. On review of the billing statements, the Court estimates this amount to be 10 hours, for a total of $4,030. GLF billed 112.05 hours, for a total of $45,986.25. Collectively, these firms billed 543.30 hours, for a total of $228,672.50.

With regard to Settlement/Mediation, WCC billed 75.6 hours, for a total of $37,800. WR billed 99.4 hours, for a total of $51,070. PSWP billed 179.5 hours, for a total of $120,265. MFLG billed 14.25 hours, for a total of $5,087.50. SMSM billed 199.1 hours, for a total of $80,237.30. K&P billed 30.1 hours for a total of $13,846.[19] GLF billed 261.3 hours, for a total of $110,302.50. Collectively, these firms billed 859.25 hours, for a total of $418,608.30.

With regard to Approval of Settlement, WCC billed 116.6 hours, for a total of $58,300. PSWP billed 116.7 hours, for a total of $73,136. GLF billed 37.25 hours, for a total of $18,268.75. Collectively, these firms billed 270.55 hours, for a total of $149,704.75.

To the extent other firms billed time in the same categories, it was relatively small and would not substantially change the analysis of these categories.

In the Court's experience, the total amounts billed in these categories is excessive and no reasonable client actually responsible for payment of fees would find them acceptable. With regard to the pre-MDL preparation of the Complaint, WCC's fees clearly exceed that of the other firms that prepared comparable complaints, and are unreasonable. That is especially true because WCC billed an additional 104.2 hours for investigation and due diligence. K&P's fees, while more reasonable, are still excessive. K&P spent an additional 12.3 hours on initial investigation and research. Taking into account that the overall amounts billed by some of these firms have already been reduced for the reasons described above, the Court reduces the fees in this category by $24,249.

$ 208,999.35 and 444.95 hours for the preparation of the consolidated amended complaints - which took three attempts even to get to the motion to dismiss stage (Stipulation and Proposed Order re Extension of Time to File Second Amended

---

[19] Because the Court will later be performing a comparison between the attorneys' fee award and the benefit to the class or degree of success in the litigation, it will reduce this number here solely on the grounds that the number of hours spent is unreasonable without any adjustment for the relatively minimal result achieved.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Consolidated Complaint and to Answer or Otherwise Plead to Such Complaint, Doc. #17) - is unconscionable, especially considering they were prepared by law firms billing at these rates and purporting to be skilled in the field of class actions. One need only review the Second Amended Consolidated Class Action Complaint (SACCAC) (only part of which would have survived a motion to dismiss) to conclude reaching this point was worth significantly less than the sums billed. (And these law firms had already billed $114,249 to come up with a number of initial complaints. They should have been well on their way to having a viable consolidated complaint before any additional fees were incurred.) Again recognizing that the overall amounts billed by some of these firms have already been reduced to some extent, the Court reduces the fees in this category by $100,000.

WCC's billings for "Court Hearings/Case Administration" are clearly excessive, considering that WCC billed an additional 50.8 hours relating to the MDL - especially when compared to the amounts billed by the other firms involved in this litigation. Recognizing that WCC was involved from the beginning of the litigation, and that some of this time may already have been eliminated, the Court reduces WCC's billings in this category by $59,400. GLF's billings are also excessive, especially in light of the fact that GLF billed an additional 153.37 hours, for a total of $56,052.25 relating to the MDL. The Court reduces GLF's fees in this category by $20,000.

The total hours and fees billed in connection with the settlement conference is exorbitant, even putting aside any analysis of the results achieved.[20] The Court reduces these fees by $175,000.[21] (As noted previously, the Court will later evaluate the actual lodestar separately in relation to the results achieved.)

Finally, the amount billed for the approval of the settlement was excessive. This is especially true because the fee application aspect of the approval was billed in a separate category. It was Plaintiffs' burden to convince the Court to approve the settlement - and it did so. Additionally, the presence of the Objectors increased the amount of work required. Nevertheless, the Court concludes that some of the briefing and research was boilerplate likely used before and certainly able to be used again. Attorneys with the

---

[20] The Court notes that fees relating to working with the experts - though much of the work was done in connection with the settlement conference - were billed separately.

[21] It appears Plaintiffs' counsel billed for negotiating their own fees - an effort that provided no benefit to the Plaintiffs. If they did not bill for this effort, they have not pointed that out to the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

degree of experience and skill touted by those here are well able to present such a motion for significantly less time and money than was charged here. The Court reduces the amount by $50,000.

Therefore, the Court concludes a reasonable lodestar amount is $931,036.20.

### Comparison Between the Settlement's Attorneys' Fee Award and the Benefit to the Class or Degree of Success in the Litigation

Though the lodestar analysis itself would seem to justify the Court's previous fee award, as the Circuit correctly stated, this Court "conflated the Rule 23(e) standard for approval of a settlement agreement (which requires consideration of whether the settlement agreement offers Plaintiffs more than they were likely to achieve at trial) with the requirement that the fee award be 'reasonable in relation to the results obtained.'" Bluetooth, 654 F.3d at 944, quoting Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). While some success was obtained in this case, it was minimal and did not match the level of time and effort that Plaintiffs' counsel put into the case. The actual results certainly fell far short of the original goals of the case both for monetary and injunctive relief. Plaintiffs' counsel's assertion that "[t]he primary objective of this lawsuit was obtaining injunctive relief," (Pls' Suppl. Br. at 9.), is belied by all of the initial underlying lawsuits - as well as the SACCAC itself. Plaintiffs in these actions sought virtually every type of damages available under the law - in addition to restitution and disgorgement - for at least five million purchasers of Bluetooth headsets. (See, e.g., SACCAC at Prayer for Relief.) But the settlement provides for no monetary relief for the class at all, and the cy pres award is minimal. Even the injunctive relief is basic and less than was originally sought.[22] The success actually obtained could (and should) have been achieved at far lower cost. This is illustrated by Defendants' "voluntary" addition of hearing loss warnings prior to settlement. The Court recognizes that this action was likely, at least in part, the result of this litigation and Plaintiffs' counsel deserve some credit for it.[23]

---

[22] The SACCAC seeks, in addition to warnings, that the Court enjoin Defendants from "[s]elling, marketing, or advertising the Headsets without a mechanism by which the user can readily and easily determine the decibel levels being emitted by the Headsets and thereby be made aware of the safe time limits (if any) for the use of the Headsets at higher volume settings." (SACCAC, Prayer for Relief at 6(c).)

[23] While the United States Supreme Court has rejected the "catalyst theory" on federal statutory interpretation grounds, Buckhannon Bd. and Care Home Inc. v. West Virginia, 532 U.S. 598 (2001), the California Supreme Court has explicitly found that the catalyst theory can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

However, the extended suit provided very little benefit beyond that "voluntary" action, which implies that a substantial portion of counsel's effort provided little benefit. As the Circuit pointed out, "where the plaintiff has achieved 'only limited success' counting all hours expended on the litigation – even those reasonably spent – may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead award only that amount of fees that is reasonable in relation to the results obtained.'" 654 F.3d at 942 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

In light of the above, the Court finds that the lodestar should be reduced to account for the limited usefulness of the fees reasonably expended.[24] Therefore, the Court finds a reasonable fee award for Plaintiffs' counsel is 25% of the lodestar, or $232,759.05.

### Fairness of the Settlement

This Court is faced now - as it was originally - with a meritless or near meritless lawsuit: the type of lawsuit decried by Objectors and substantial portions of the public. Indeed, the vast majority of potential class members who opted out, or otherwise communicated with the Court, did so because they wanted to express their views about the settlement - which ranged from annoyance to outrage that the litigation had been filed at all. Those few who concluded the settlement was inadequate generally did so because they did not understand that they retained the right to sue for any alleged personal injuries they might claim to suffer. Objectors claim that this type of lawsuit has the potential for more harm to the public than good, because the expense of defending an unjustified lawsuit may increase the cost of the product. (Obj. to Proposed Settlement at 11-12.) Considering that even Plaintiffs admit virtually no one can be without a Bluetooth headset these days, if the litigation were in fact ultimately to result in an increased cost of headsets, the public would be harmed, not benefitted. But - as the Court has repeated - that is a matter for the legislature to address - not the courts. To the extent this is a viable

---

provide a basis for attorney's fees under California Code of Civil Procedure § 1021.5. Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553 (2005).

[24] It is the Court's understanding of the mandate that it is not required to calculate a precise value of the settlement if the settlement is not properly treated as a common fund. Here, it would be very difficult to put a precise dollar amount on the injunctive relief obtained. This also counsels against treating the settlement as a common fund due to the excessive degree to which various assumptions about the value of the injunctive relief can manipulate the attorney's fee award. In such a situation, the lodestar method appropriately adjusted in light of the general degree of success is a much more reliable method for calculating fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

consideration, it dictates approving a settlement that resolves the matter early. This is especially true where the litigation has little or no merit, but can not be completely resolved on a motion to dismiss, and will likely survive class certification as least as to some claims. This will minimize the cost to the Defendants (and perhaps future consumers)[25] while achieving some benefit for the Plaintiff class and the public.

With this as a backdrop, beyond the calculation of fees, the Circuit instructed this Court to reevaluate the settlement in light of three identified warning signs, to ensure that there was no collusion between Defendants and Plaintiffs' counsel. Those factors are (1) a fee award agreement that is disproportionate to the monetary relief to the class, (2) a "clear sailing" agreement by which Defendants agreed not to contest Plaintiffs' counsel's fee request, and (3) an agreement by which fees denied by the Court revert to Defendants instead of being given to the class. 654 F.3d at 947. Admittedly, all three factors exist here - though both Plaintiffs' counsel and Defendants have lost the benefit of the clear sailing agreement.

The proposed disproportionate fee award is addressed by noting that to the extent some aspects of the case had arguable merit on a class basis, those aspects involved more public forms of injunctive relief – not private monetary relief. The claims for monetary relief would have been difficult – if not impossible – to establish, for some claims were highly individualized,[26] and arguably bordered on frivolous. It is not terribly surprising that Defendants did not agree to substantial monetary relief in this context. (See, e.g., Dee Decl. in Support of Final Approval at ¶13 (Doc. # 348-2).) In fact, though Defendants were facing possible certification of a class of millions of members potentially claiming economic damages alone of between $70 and $150 for each headset purchased, (SACCAC ¶ 25), it took – according to Plaintiffs' counsel – "at least fifteen separate telephonic and in person negotiation sessions between February and May of

---

[25] Objectors' contention that the Court could simply dismiss the case in its entirety is groundless under the present state of the law.

[26] For example, a major theory of monetary recovery was that class members were unable to use the Bluetooth devices for the time advertised because they would suffer hearing loss, and therefore did not receive the full value promised by Defendants. But the amount of time any individual class member could use the device would vary with the conditions in which the device was used and the volume at which the device was set. For instance, an individual who consistently used the Bluetooth device at low volumes in a quiet environment would likely receive more hearing loss-free use than someone who consistently used the device in a loud sports car on a freeway.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

2008," for Plaintiffs' counsel to obtain even this settlement package. (Garcia Decl. in Support of Supp. Br. at ¶ 3).[27] And defense counsel negotiated a maximum fee and cost award of only $850,000, knowing Plaintiffs' counsel contended they had expended far more, and after additional negotiations with the assistance of the mediator. In light of this, the clear sailing and reversion agreements are less troubling. From the Defendants' point of view, they had already expended their own attorneys' fees to defend claims that they steadfastly – and reasonably – contended were meritless. Although they were willing to continue to defend their position, business reasons (including the cost of litigation), suggested that Defendants consider settlement. (See, e.g., Dee Decl. in Support of Final Approval at ¶2 (Doc. # 348-2).)[28]

Defendants did not want the unawarded fees to revert to the class (which would have been completely impracticable in any event) because, in their view, the class was not entitled to monetary relief. If no one was damaged by Defendants' actions, it is reasonable for Defendants to insist that they not be seen as paying damages. Moreover, from the parties' standpoint, having any portion of the unawarded fees added to the cy pres award would improperly intermingle the merits settlement with the fees. This also made no sense, as the parties (correctly) did not view this as a common fund case. (See, e.g., Dee Decl. in Support of Final Approval at ¶14 (Doc. # 348-2).)

Although the Court recognizes that the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," Bluetooth, 654 F.3d at 948 (quoting Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 525 (1st Cir. 1991)), the Court finds that no such betrayal occurred here. While Defendants did, in fact, agree to add warnings, the Court agrees with the Objectors and the defense that there was no real likelihood of any monetary benefit to the class. That Defendants were willing to spend a certain number of dollars to resolve the litigation may, but does not necessarily, mean that Defendants were willing to allocate those dollars differently from the allocation in the proposed settlement. And here defense counsel declare that Defendants were not willing to do so. (See Garganta Decl. in Support of Final Approval ¶ 11; Cramer Decl. in Support of Final Approval ¶ 13; Dee Decl. in Support of Final Approval ¶¶ 13, 15.) Even if they had been willing to do so, distributing unawarded fees to the purchasers of millions of Bluetooth devices (or even to

---

[27] The Court certainly does not suggest that other counsel could have achieved more.

[28] This Court has engaged in more than a hundred settlement conferences, both as an attorney and a judge, and the cost of litigation is almost always a substantial reason that cases - even frivolous cases - settle.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

the smaller number of class members who might have submitted a claim for what could only have been predicted to be pennies at most) would not be feasible.

In every fee-shifting case, it is true at some level that a settlement dollar that goes to counsel is a dollar that could have, theoretically, gone to the plaintiff (or the plaintiff class). However, that does not mean that it is unfair or unjust for counsel to be paid. Fee-shifting statutes recognize the public benefit to cases brought under those statutes and compensation of counsel takes this into account.

The Court finds no evidence of collusion in the negotiation of this settlement - and even Objectors reject the suggestion of collusion. In any event, as suggested by the Circuit, the parties have now substantiated their "bald assertions with corroborating evidence": declarations from the negotiators of the settlement as well as the retired judge who mediated the settlement. All testify that fee discussions were handled separately and after the discussion of substantive relief. In short, there is no evidence in the record of any collusion between Defendants and Plaintiffs' counsel, and the Court finds there was none. The suspicious aspects of the settlement are far less so once the imbalance between the merits of the public/injunctive aspects and the private/monetary aspects of the case is identified.

The Court agrees with the parties that the terms of the settlement are fair to the class: the class members had virtually no hope of ultimately obtaining any monetary relief (and certainly no significant monetary relief) even if this matter had proceeded past class certification, past summary judgment, and through a lengthy and expensive trial. The injunctive relief was quite possibly more than the class could have achieved.[29] Nor do Objectors contend otherwise. Thus, Objectors agree the class obtained more benefit than if the matter had gone to trial. But they suggest the Court's proper course was to dismiss the claims. (E.g., Brennan Objectors' Memorandum of Points and Authorities in Opp. to Mot. for Final Approval of Class Settlement and in Opp. to Unopposed Mot. for Attorneys' Fees and Costs at 10:15-16.) Indeed, Objectors themselves complain that substantial expenditures by Defendants might harm consumers by causing Defendants to raise the cost of headsets. (See Obj. to Proposed Settlement at 11-12.) But there are no grounds to reject a settlement that provides a class with more than it would otherwise achieve for the sole purpose of making a statement to Plaintiffs' counsel that is better made by the legislature.

---

[29] Because the matter settled before the hearing on the motion to dismiss, the Court did not rule on Defendants' claim that Plaintiffs lacked standing to pursue injunctive relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Although the Court recognizes that unreasonably high fees suggest that the Defendants obtained an economically beneficial concession in the form of lower monetary payments to class members or less injunctive relief than the class could otherwise have obtained, see Bluetooth, 654 F.3d at 947, the Court finds that is not the case here. Moreover, Objectors now curiously claim that Plaintiffs may have obtained too much relief - because they may now be "overwarned." (Renewed Obj. to Proposed Settlement at 3.) The Objections point to the frivolous nature of the suit, not the paucity of the relief to the class. (E.g., Renewed Obj. to Proposed Settlement at 21:18.) Because the suit could not be dismissed and might well have survived both class certification and summary judgment, yet had relatively little likelihood of achieving anything more than injunctive relief, the Court concludes the settlement was fair, adequate, and reasonable.

## Conclusion

There is no evidence (or even any serious argument) that the class had any realistic possibility of achieving a better result than that obtained by Plaintiffs' counsel. Therefore, for the reasons previously stated, the Court concludes that the settlement was fair, adequate, and reasonable, and the settlement is approved. However, the results achieved were minor compared to the claims made and the fees requested. Therefore, the Court awards Plaintiffs' counsel $232,729.05 in fees and $50,000 in costs for a total of $282,729.05.

IT IS SO ORDERED.